UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
GERARD CAMPBELL, individually on behalf of himself
 and all others similarly situated,

                              Plaintiff,

                  - against -

FRESHBEV LLC, WHOLE FOODS MARKET GROUP,
INC. and WHOLE FOODS MARKET INC.,

                              Defendants.
-------------------------------------------------------------------X

1:16-cv-07119 (FB)(ST)

**FIRST AMENDED**
**COMPLAINT**

        Plaintiff GERARD CAMPBELL ("Plaintiff"), individually and on behalf of all others

similarly situated, by his attorneys, alleges the following upon information and belief, except for

those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

        1.      Plaintiff brings this action against FRESHBEV LLC ("Defendant

Freshbev"), WHOLE FOODS MARKET GROUP, INC. ("Defendant WFMG") and

WHOLE FOODS MARKET INC. ("Defendant WFM") (together, the "Whole Foods

Defendants") (collectively, "Defendants"), on behalf of himself and a class consisting of all

consumers nationwide who purchased any products of the Defendants at any time during

the applicable statute of limitations period up to and including the present (the "Class

Period").

## FACTS AND BACKGROUND

        2.      Defendant Freshbev is a producer of juices.

        3.      Defendant Freshbev produces and sells the following juices under its own

name:  Ripe Craft Juice (12 ounces) ("Ripe Craft Juice 12"), Ripe Craft Juice (12.2 ounces)

("Ripe Craft Juice 12.2") and Ripe Bar Juice (collectively, the "Ripe Juices").

4.    Defendant Freshbev produces a product named Fresh Juice for Defendant Whole Foods (the "Whole Foods Juices", and together with the Ripe Juices, the "Products").

5.    Defendant WFM is a leading natural and organic foods retailer.

6.    Upon information and belief, Defendant WFM owns and operates its supermarkets through its wholly owned subsidiary Defendant WFMG.

7.    Defendant WFMG distributes the Whole Foods Juices, at the direction and under the control of Defendant WFM, through its supermarkets.

8.    Ripe Craft Juice 12, Ripe Craft Juice 12.2, Ripe Bar Juice and Fresh Juice are sold in various flavors/blends.

9.    The Ripe Juices have similar packaging, labeling and advertising.

10.    Defendant Freshbev represents that all products within the Fresh Juice, Ripe Bar Juice and Ripe Craft Juice 12 product line are "Never Heated."

11.    Defendants represent that all products within the Fresh Juice product line are "Never Heated."

12.    Defendant Freshbev represents that all Ripe Craft Juice 12.2 products consist of "juice that isn't heated, ever."

13.    Defendant Freshbev represents that all products within the Ripe Juice product line are "Unpasteurized."

14.    Defendants represent that all the Products are "Unpasteurized."

15.    Defendants' juice products are manufactured by using cold-press juicers to hydraulically extract juice from the produce to which it is applied.

16.     Defendant Freshbev then subjects the juice to "high pressure processing" ("HPP").

17.     To utilize HPP, the juice bottles are loaded into a cylindrical pressure vessel.

18.     The cylinder is then loaded into a high-pressure chamber.

19.     Water is added to the cylindrical pressure vessel and the vessel is closed.

20.     The contents of the juice bottles are pressurized at levels up to 87,000 pounds per square inch ("psi") (600) megapascal ("MPa").

21.     Once the maximum required pressure is achieved, it is sustained for a specified period.

22.     The pressure is then increased to the processing target pressure.

23.     The product is held at the target pressure for 3 to 10 minutes.

24.     The pressure is applied uniformly in all directions simultaneously.

25.     The act of compression during this process raises the temperature of the juice products approximately 3 °C for every 100 MPa.

26.     This increase in temperature results in the juice products becoming hotter.

27.     After the pressure holding time, the pressure is released.

28.     Juices which are subject to high pressure processing after being cold-pressed have a shelf life ranging from 30 to 45 days.

29.     Juices which are only produced through the use of a cold-press have a shelf-life from 72 to 96 hours.

30.     High pressure processing is a pasteurization method which renders the Products safer for human consumption than if the Products were only cold-pressed.

31.     Pasteurization is a form of food processing in which the Products are treated in a way that is reasonably certain to achieve destruction or elimination of the most resistant microorganisms of public health significance within them.

32.     Where a juice product has not been pasteurized, it is required by law to bear a warning label informing the consumer of risks associated with its consumption.

33.     Defendants' Products do not contain a warning label.

34.     Defendants present the Products as cold-pressed yet do not disclose their products are pasteurized and heated.

35.     Defendants' representations of its products as unpasteurized and unheated imply that its products contain a greater number of pathogenic microorganisms than they actually possess.

36.     Defendants do not inform consumers that by using high pressure processing, its products are pasteurized and heated.

37.     Defendants market their products to the public as unpasteurized and not heated.

38.     Defendants label their products as unpasteurized and not heated because consumers associate such a designation as indicative of a product which has not been treated beyond being cold-pressed.

39.     As a result of being treated through high pressure processing, Defendants' Products are not consistent with the claims, representations and warranties displayed on the Products.

40.     Juice which is only cold-pressed is more expensive than juice which is treated beyond being cold-pressed.

41.     Consumers seek juice products which are not treated beyond being cold-pressed and therefore contain a greater number of pathogenic microorganisms.

42.     Consumers pay a premium price for unpasteurized and unheated juice because they desire a product that has been as minimally processed and treated as possible.

43.     By prolonging the expiration date of the product, high pressure processing can remove the volatility from a low-margin business, because entire batches of cold-pressed juices would no longer need to be discarded after three days.

44.     Defendants possess superior knowledge vis-à-vis consumers of the processes by which its products are made.

45.     Consumers cannot discover the true nature of Defendants' products from reading the labels on the Products.

## JURISDICTION and VENUE

46.     Jurisdiction is proper pursuant to 28 USC § 1332(d)(2).

47.     Upon information and belief, the aggregate amount in controversy is in excess of $5,000,000.00, exclusive of interests and costs.

48.     This Court has personal jurisdiction over defendants because Defendants conduct and transact business in the State of New York, contract to supply goods within the State of New York, and supply goods within the State of New York.

49.     Venue is proper because Plaintiff and many class members reside in the Eastern District of New York and Defendants have, at all relevant times, been doing business in the Eastern District of New York, and throughout the state.

50.     A substantial part of the events or omissions which give rise to the claims occurred in the Eastern District of New York.

**PARTIES**

51.     Plaintiff is a citizen of the State of New York in the County of Kings.

52.     Defendant Freshbev, LLC is a limited liability company organized under the laws of Connecticut.

53.     Defendant Whole Foods Market, Inc., is a corporation formed under the laws of Texas.

54.     Defendant Whole Foods Market Group, Inc., is a corporation formed under the laws of Delaware.

55.     Upon information and belief, Defendant WFMG is a wholly-owned subsidiary of Defendant WFM.

56.     Upon information and belief, Defendant WFMG acts as the agent for Defendant WFM.

57.     Defendant WFM conducts business within this State and District through Defendant WFMG.

58.     Defendant WFMG is authorized to conduct business in the State of New York.

59.     In October 2016, Plaintiff purchased Ripe Craft Juice 12.2 and Fresh Juice in New York and paid a premium for the product because he saw and relied upon the product labeling, product advertising, and read the packaging which stated, inter alia, that the products were "not pasteurized," "unpasteurized," "never heated" and not "heated, ever."

60.     Before purchasing the Products, Plaintiff was exposed to Defendants' packaging and labeling, which failed to inform Plaintiff that the temperature of its products

increase as a result of the production process.

61.     These representations and omissions were material to Plaintiff's decision to make the purchases and buy the products at a premium.

62.     Plaintiff purchased the Ripe Craft Juice 12 and Fresh Juice for personal consumption.

63.     Plaintiff paid a premium for the Ripe Craft Juice 12 and Fresh Juice and opted against buying less expensive juices not purported to be, inter alia, unpasteurized and/or never heated.

64.     Plaintiff paid $4.99 for the Ripe Craft Juice 12.2, excluding tax.

65.     Plaintiff paid $7.99 for the Fresh Juice, excluding tax.

66.     As a result of purchasing the product at a premium price in reliance on advertising and representations that are false, Plaintiff and class members suffered an injury in fact.

67.     The members of the proposed class consist of men and women across the country who purchased the Products.

## SUBSTANTIVE ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

68.     Defendant Freshbev falsely advertises and misrepresents to its consumers, including Plaintiff and Class Members, that its products are "not pasteurized" and "never heated."

69.     Defendant Freshbev and the Whole Foods Defendants falsely advertise and misrepresent to its consumers, including Plaintiff and Class Members, that its products are "unpasteurized" and "never heated."

70.     The material misrepresentations and mislabeling induced Defendants'

consumers, including Plaintiff and Class Members, to purchase the product at a premium price.

71.     To their detriment, Plaintiff and Class Members relied on Defendants' false and misleading misrepresentations and mislabeling.

72.     Defendants' statements are false and its practices are deceptive and misleading because, inter alia, the Products are pasteurized and heated.

73.     The Products are not, therefore, unpasteurized and never heated.

## CLASS ALLEGATIONS

74.     Plaintiff brings this matter on behalf of himself and those similarly situated. As detailed at length in this complaint, defendants orchestrated deceptive marketing and labeling practices.   Defendants' customers were uniformly impacted by and exposed to this misconduct.   Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

75.     The class is defined as all consumers who purchased the products at any time during the period within the applicable statute of limitations.

76.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy.

77.     Class Members are so numerous that joinder of all members is impracticable.   Plaintiff believes that there are thousands of consumers who are Class Members as described above who have been damaged by, inter alia, Defendants' deceptive and misleading practices.

78.     The questions of law and fact common to the Class Members which

predominate over any questions which may affect individual Class Members include, but are not limited to:

  (a) Whether Defendants are responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased its Products;

  (b) Whether Defendants' misconduct set forth in this complaint demonstrates whether Defendants have engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

  (c) Whether Defendants' false and misleading statements concerning its Products and its concealment of material facts regarding the Products were likely to deceive reasonable consumers;

  (d) Whether Plaintiff and the Class are entitled to injunctive relief; and

  (e) Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

79. Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member, in that, every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendants' Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

80. Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent; his claims are common to all members of the Class and he has a strong interest in vindicating his rights; he has retained counsel competent and experienced in complex class action litigation and they intend to vigorously prosecute this action.  Plaintiff has no interests which conflict

with those of the Class.  The Class Members' interests will be fairly and adequately protected by Plaintiff and his counsel.  Defendants have acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members.  The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

81.    The Class is properly brought and should be maintained as a class action under Rule 23(b) because a class action is superior.   Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any other questions affecting only individual members of the class.  The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary, just a narrow focus on Defendants' deceptive and misleading product marketing and labeling practices.

82.    A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

(a) The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

(b) The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive-if not totally impossible-to justify individual actions;

(c) When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing,

discovery, and trial of all individual cases;

(d) This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of class claims;

(e) Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

(f) This class action will assure uniformity of decisions among Class Members; and

(g) The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation.

## INJUNCTIVE CLASS RELIEF

83.     Rules 23(b) (1), (2), and (3) contemplate a class action for purposes of seeking class-wide injunctive relief. Here, Defendants have engaged in conduct resulting in misleading consumers about ingredients in the Products.  Because Defendants' conduct has been uniformly directed at all consumers nationwide, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendants' continuing misconduct.

84.     The injunctive class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy.

85.     Numerosity: Individual joinder of the injunctive class members would be wholly impracticable. Defendants' products has been purchased by thousands of persons nationwide.

86.     Commonality: Questions of law and fact are common to members of the

class. Defendants' misconduct was uniformly directed at all consumers. Thus, all members of the class have a common cause against Defendants' to stop its misleading conduct through an injunction. Because the issues presented by this injunctive class deal exclusively with Defendants' misconduct, resolution of these questions would be necessarily common to the entire class.

87. Moreover, there are common questions of law and fact inherent in the resolution of an injunctive class, including, inter alia:

(a) Resolution of the issues presented in the 23(b)(3) class;

(b) Whether members of the class will continue to suffer harm by virtue of Defendants' deceptive product marketing and labeling; and

(c) Whether, on equitable grounds, Defendants' should be prevented from continuing to omit material information from its labeling.

88. Typicality: Plaintiff's claims are typical of the claims of the injunctive class because his claims arise from the same course of conduct (i.e. Defendants' deceptive and misleading product marketing, labeling, and practices). Plaintiff is a typical class representative, because, like all member of the injunctive class, he purchased Defendants' Products which were sold unfairly and deceptively to consumers nationwide.

89. Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the injunctive class. His consumer protection claims are common to all members of the injunctive class and he has a strong interest in vindicating his rights. In addition, Plaintiff and the Class are represented by counsel who is competent and experienced in both consumer protection and class action litigation.

90. The injunctive class is properly brought and should be maintained as a class

action under Rule 23(b) (2) because Plaintiff seeks injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive class. Certification under Rule 23(b)(2) is appropriate because Defendants' have acted or refused to act in a manner that applies generally to the injunctive class (i.e., Defendants' have marketed the Products using the same misleading and deceptive product labeling to all of the Class Members). Any final injunctive relief or declaratory relief would benefit the entire injunctive class as Defendants' would be prevented from continuing its misleading and deceptive product marketing practices and would be required to honestly disclose to consumers the true ingredients in its product.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

Violation of New York GBL § 349

Against all defendants

91.     Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

92.     Defendants represent that their Products are not pasteurized.

93.     Defendants' representations that its Products are not pasteurized is not limited to conduct with respect to Plaintiff and has a broader impact on consumers at-large.

94.     Defendants' acts or practices are not unique to the parties.

95.     All consumers purchasing Defendants' products are subject to the same representations of Defendants.

96.     Defendants' acts or practices are consumer-oriented.

97.     Defendants' representations that its Products are not pasteurized deceived

the public into believing its Products were not treated in a way that is reasonably certain to achieve destruction or elimination of the most resistant microorganisms of public health significance that are likely to occur in the juice.

98.    Defendants' representations that its Products are not pasteurized is likely to mislead a reasonable consumer acting reasonably under the circumstances.

99.    Plaintiff relied upon Defendants' representations.

100.    Defendants' representation that its Products are not pasteurized is material because whether or not a product is pasteurized effects a consumer's decision whether to purchase the Products.

101.    Plaintiff observed the representations that the Products were not pasteurized prior to purchasing the Products.

102.    As a result of Defendants' representations that its Products were not pasteurized, Plaintiff paid more for the Products than he would have paid had he known that the Products were pasteurized.

103.    As a result of Defendants' acts and practices, Plaintiff and class members are entitled to monetary damages, injunctive relief, restitution, disgorgement of all monies obtained by means of defendants' unlawful conduct, interest, and attorney's fees and costs.

**SECOND CAUSE OF ACTION**

Violation of New York GBL § 349

Against all defendants

104.    Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

105.    Defendants represent that their products are not heated.

106.    Defendants' representations that its Products are not heated are not limited to conduct with respect to Plaintiff and has a broader impact on consumers at-large.

107.    Defendants' acts or practices are not unique to the parties.

108.    All consumers purchasing Defendants' products are subject to the same representations of Defendants.

109.    Defendants' acts or practices are consumer-oriented.

110.    Defendants' representations that its Products are not heated deceived the public into believing the temperature of its Products does not increase.

111.    Defendants' representations that its Products are not heated are likely to mislead a reasonable consumer acting reasonably under the circumstances.

112.    Defendants' representation that its Products are not heated is material because whether or not a product is heated effects a consumer's decision whether to purchase the product.

113.    Plaintiff observed the representations that the Products were not heated prior to purchasing the Products.

114.    Plaintiff relied upon Defendants' representations.

115.    As a result of Defendants' representation that its Products were not heated, Plaintiff paid more for the Products than he would have paid had he known that the Products were heated.

116.    As a result of Defendants' acts and practices, Plaintiff and class members are entitled to monetary damages, injunctive relief, restitution, disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorney's fees and costs.

**THIRD CAUSE OF ACTION**

Violation of New York GBL § 349 by Omission

Against all defendants

117.    Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

118.    Defendants fail to reveal that the temperature of its Products increase as a result of the production process.

119.    Defendants' failure to reveal that the temperature of its Products increases is not limited to conduct with respect to Plaintiff and has a broader impact on consumers at-large.

120.    Defendants' acts or practices are not unique to the parties.

121.    All consumers purchasing Defendants' Products are subject to the same omissions of Defendants.

122.    Defendants' acts or practices are consumer-oriented.

123.    Defendants' omissions that its Products are subjected to an increase in temperature deceived the public into believing its Products are not heated.

124.    Defendants' omissions that its Products are subjected to an increase in temperature are likely to mislead a reasonable consumer acting reasonably under the circumstances.

125.    Defendants' omissions that the temperature of its Products increase is material because whether or not the Product is heated affects a consumer's decision whether to purchase the product.

126.    Plaintiff observed that the Products did not indicate the temperatures of the products increase prior to purchasing the Products.

127.    Plaintiff relied upon Defendants' omissions.

128.    As a result of Defendants' omissions that the temperature of the Products did not increase, Plaintiff paid more for the Products than he would have paid had he known that the Product is heated.

129.    As a result of Defendants' omissions that the temperature of their Products did not increase, Plaintiff paid more for the Products than he would have paid had he known that the Product are heated.

**FOURTH CAUSE OF ACTION**

Violation of New York GBL § 350

Against all defendants

130.    Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

131.    Defendants' labels indicate that their Products are not pasteurized.

132.    Defendants' labels that its Products are not pasteurized are not limited to conduct with respect to Plaintiff and have a broader impact on consumers at-large.

133.    Defendants' labeling practices are not unique to the parties.

134.    All consumers purchasing Defendants' Products are subject to the same labels of Defendants.

135.    Defendants' labeling is consumer-oriented.

136.    Defendants' labels that its Products are not pasteurized deceived the public into believing its products were not treated in a way that is reasonably certain to achieve destruction or elimination of the most resistant microorganisms of public health significance that are likely to occur in the juice.

137. Defendants' labels that its Products are not pasteurized is likely to mislead a reasonable consumer acting reasonably under the circumstances.

138. Defendants' labeling that its Products are not pasteurized is material because whether or not a Product is pasteurized effects a consumer's decision whether to purchase the Product.

139. Plaintiff observed the labels indicating that the Products were not pasteurized prior to purchasing the Products.

140. Plaintiff relied on Defendants' labels.

141. As a result of Defendants' labeling that its Products are not pasteurized, Plaintiff paid more for the Products than he would have paid had he known that the Products were pasteurized.

142. As a result of Defendants' labeling, Plaintiff and class members are entitled to monetary damages, injunctive relief, restitution, disgorgement of all monies obtained by means of defendants' unlawful conduct, interest, and attorney's fees and costs.

## FIFTH CAUSE OF ACTION

### Violation of New York GBL § 350

### Against all defendants

143. Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

144. Defendants' labels indicate that their Products are not heated.

145. Defendants' labels that its Products are not heated is not limited to conduct with respect to Plaintiff and has a broader impact on consumers at-large.

146. Defendants' labeling is not unique to the parties.

147.    All consumers purchasing Defendants' Products are subject to the same labels of defendants.

148.    Defendants' labeling is consumer-oriented.

149.    Defendants' representations that its Products are not heated deceived the public into believing the temperature of its Products does not increase.

150.    Defendants' labels stating that its Products are not heated is likely to mislead a reasonable consumer acting reasonably under the circumstances.

151.    Defendants' labeling that its Products are not heated is material because whether or not a product is heated effects a consumer's decision whether to purchase the Product.

152.    Plaintiff observed the labels indicating that the Products were not heated prior to purchasing the Products.

153.    Plaintiff relied on Defendants' labels.

154.    As a result of Defendants' labeling that its Products are not heated, Plaintiff paid more for the Products than he would have paid had he known that the products were heated.

155.    As a result of Defendants' labeling, Plaintiff and class members are entitled to monetary damages, injunctive relief, restitution, disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorney's fees and costs.

**SIXTH CAUSE OF ACTION**

Violation of New York GBL § 350 by Omission

Against all defendants

156.    Plaintiff repeats and realleges each and every allegation contained in all

foregoing paragraphs as if fully set forth herein.

157.    Defendants' labels fail to reveal that the temperature of its Products increase as a result of the production process.

158.    Defendants' labels, which fail to reveal that the temperature of its Products increase, is not limited to conduct with respect to Plaintiff and has a broader impact on consumers at-large.

159.    Defendants' labeling is not unique to the parties.

160.    All consumers purchasing Defendants' Products are subject to the same labels of Defendants.

161.    Defendants' labeling is consumer-oriented.

162.    Defendants' omissions that the temperature of their Products increase deceived the public into believing their Products are not heated.

163.    Defendants' omissions that the temperature of their Products increase is likely to mislead a reasonable consumer acting reasonably under the circumstances.

164.    Defendants' omissions that the temperature of their Products increase is material because whether or not the Product is heated effects a consumer's decision whether to purchase the Product.

165.    Plaintiff observed that the Products did not indicate the temperatures of the products increase prior to purchasing the Products.

166.    Plaintiff relied on Defendants' labels.

167.    As a result of Defendants' omissions that the temperature of their Products did not increase, Plaintiff paid more for the Products than he would have paid had he known that the Products are heated.

168.    As a result of Defendants' labeling, Plaintiff and class members are entitled to monetary damages, injunctive relief, restitution, disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorney's fees and costs.

## SEVENTH CAUSE OF ACTION

### Fraud

### Against all defendants

169.    Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

170.    Defendants represent that the Products are not pasteurized and not heated.

171.    Defendants' representations that their Products are not pasteurized and not heated are material because whether or not a product is pasteurized effects a consumer's decision whether to purchase the product.

172.    Defendants knew their representation that their Products were not pasteurized was false because Defendants did not include the applicable warning statement on its Products, which is required where a product is not pasteurized.

173.    Defendants intentionally represented that their Products were not pasteurized and not heated because consumers will pay a premium for products believed to be unpasteurized, minimally processed and not heated.

174.    Plaintiff had reason to rely upon Defendants' representations that its Products were not pasteurized and not heated.

175.    Plaintiff suffered injury as a result of Defendants' representations that their Products were not pasteurized and not heated.

176.    As a result of Defendants' fraud, Plaintiff and class members are entitled to

monetary damages, injunctive relief, restitution, disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorney's fees and costs.

## EIGHTH CAUSE OF ACTION

Breach of Express Warranty

Against all defendants

177.    Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

178.    Defendants provided the Plaintiff and Class Members an express warranty in the form of written and oral affirmations of fact promising and representing that their Products are not pasteurized and not heated.

179.    The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

180.    These affirmations of fact became part of the basis for the bargain and were material to the transaction for the Plaintiff's and Class Members' transactions.

181.    Plaintiff and Class Members reasonably relied upon Defendants' affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendants' Products.

182.    Upon information and belief, Defendants were given opportunities to cure its default but refused to do so.

183.    Contrary to Defendants' affirmations of fact, Defendants breached the express warranty because the Products are not unpasteurized and heated.

184.    As a result of the foregoing, Plaintiff and the Class Members have been damaged in the amount paid for Defendants' products, together with interest thereon from

the date of purchase.

## NINTH CAUSE OF ACTION

Breach of Implied Warranty of Merchantability

Against all defendants

185.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

186.    Defendants are is in the business of manufacturing, producing, distributing, and selling juice.

187. Under the Uniform Commercial Code's implied warranty of merchantability, Defendants warranted to the Plaintiff and the Class Members that the Products are not pasteurized and not heated.

188.    Defendants breached the implied warranty of merchantability in that the Products are pasteurized and heated.

189.    Defendants breached the implied warranty of merchantability in that the Products do not conform to the promises or affirmations of fact made on the Product containers or labels or literature. Any reasonable consumer would not accept the product if they knew that the product is pasteurized and heated.

190.    The inability of the product to meet the label description was wholly due to the Defendants' fault and without Plaintiff's fault or neglect, and was solely due to the Defendants' manufacture and distribution of the Products to the public.

191.    As a result of the foregoing, Plaintiff and the Class Members have been damaged in the amount paid for Defendants' products, together with interest thereon from the date of purchase.

**TENTH CAUSE OF ACTION**

Unjust Enrichment

Against all defendants

192.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

193.    Plaintiff, on behalf of himself and consumers nationwide, brings a common law claim for unjust enrichment.

194.    Defendants' conduct violated, inter alia, New York General Business Law 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label or other thing, containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article, which to their knowledge is falsely described or indicated upon any such package, or vessel containing the same, or label thereupon, in any of the particulars specified.

195.    Defendants' unlawful conduct as described in this complaint allowed Defendants to knowingly realize substantial revenues from selling their Product at the expense, and to the detriment and/or impoverishment, of the Plaintiff and Class Members, and to Defendants' benefit and enrichment. Defendants have thereby violated fundamental principles of justice, equity, and good conscience.

196.    Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendants for Products that were not as Defendants represented.

197.    Under common law principles of unjust enrichment, it is inequitable for

Defendants to retain the benefits conferred by Plaintiff and Class Members' overpayments.

198.    Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

JURY DEMAND

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment  as follows:

1. Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

2. Entering preliminary and permanent injunctive relief against defendants, directing defendants  to correct their practices and to comply with the law;

3. Awarding monetary damages, including treble damages, pursuant to GBL § 349 and GBL § 350, and punitive damages;

4. Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff s attorneys and experts, and reimbursement of Plaintiff s expenses; and

5. Granting such other and further relief as the Court may deem just and proper.

Dated:  January 19, 2016

Respectfully Submitted,

Levin Epstein & Associates, P.C.

By:     /s Joshua Levin Epstein
        Joshua Levin-Epstein, Esq.
        1 Penn Plaza
        Suite 2527
        New York, NY  10119

New York, NY  10119
Tel: (212) 792-0046
Fax: (212) 563-7108
Joshua@levinepstein.com

*Counsel for Plaintiff*


Sheehan & Associates, P.C.

By:    /s Spencer Sheehan          
        Spencer Sheehan, Esq.
        891 Northern Blvd
        Suite 201
        Great Neck, NY  11021
        New York, NY  10119
        Tel: (516) 303-0552
        Fax: (516) 234-7800
        Spencer@spencersheehan.com

*Counsel for Plaintiff*