**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------X
GERARD CAMPBELL, individually and on behalf of
himself and all others similarly situated,

                    Plaintiff,

          - against -

FRESHBEV LLC and WHOLE FOODS MARKET
GROUP, INC. ,

                    Defendants.
--------------------------------------------------------------------X

1:16-cv-07119 (FB)(ST)

**SECOND AMENDED**
**COMPLAINT**

          Plaintiff Gerard Campbell ("plaintiff"), individually and on behalf of all others similarly

situated, by his attorneys, alleges the following upon information and belief, except for those

allegations pertaining to plaintiff, which are based on personal knowledge:

          1.        Plaintiff brings this action against Freshbev LLC ("defendant Freshbev") and

Whole Foods Market Group, Inc. ("defendant Whole Foods") (collectively, "defendants"),

on behalf of himself and all others similarly situated who purchased certain products of

defendants during the applicable statute of limitations period up to and including the present

(the "class period").

<u>Facts and Background</u>

          2.        Defendant Freshbev is a manufacturer of juice products.

          3.        Defendant Freshbev manufactures juice products which it sells under its own

brand names and for third-parties, who sell it under their own brand names.

          4.        Defendant Freshbev manufactures and sells for itself products with the brand

name "Ripe," including "Ripe Craft Juice" and "Ripe Bar Juice" (the "Ripe Juice Products").

          5.        Defendant Whole Foods is an operator of grocery stores.

6.     The Ripe Juice Products are sold in the stores of defendant Whole Foods and other brick and mortar locations.

7.     The Ripe Juice Products are sold to consumers from the websites of defendant Freshbev and third-party companies.

8.     The Ripe Juice Products sold in retail locations are identical to those sold online.

9.     Defendant Freshbev manufactures a private-label line of juices made exclusively for defendant Whole Foods.

10.     This private-label line of products is designated by its brand name "Fresh Juice" (the "Whole Foods Products" or the "Fresh Juice Products," and together with the Ripe Juice Products, the "Products").

11.     The Fresh Juice Products indicate that they are manufactured for defendant Whole Foods by defendant Freshbev.

12.     The Fresh Juice Products are sold only in the stores of defendant Whole Foods.

13.     Ripe Craft Juice is sold in sizes of 12 ounces ("Ripe Craft Juice 12") and 12.2 ounces ("Ripe Craft Juice 12.2") (collectively, "Ripe Craft Juice").

14.     Ripe Bar Juice is sold in a size of 33.8 ounces ("Ripe Bar Juice").

15.     The Whole Foods Products are sold in a size of 16 ounces.

16.     The Products are sold in transparent plastic bottles.

17.     The Products are sold in in various flavors and blends, based on the ingredients used.

18.     The names of the Ripe Craft Juice 12 Products include Cranberry Apple,

Cranberry Northeast Blend, Cranberry Unsweetened, Red Grapefruit and Whole Cranberry Apple.

19.     The names of the Ripe Craft Juice 12.2 Products include Founder's Blend Red Grapefruit, Northeast Blend Cranberry Apple, Unsweetened Cranberry and Whole Milled Cranberry Apple.

20.     The names of the Ripe Bar Juice Products include Agave Lemon Sour, Bajan Punch, Agave Margarita, Agave Mojito, Classic Cosmopolitan, Cranberry Cocktail and San Marzano Bloody Mary.

21.     The names of the Fresh Juice Products include Apple, Carrot & Lemon, Pineapple, Spicy Lemonade and Watermelon Blend.

22.     Defendant Freshbev employs two production processes to manufacture the Ripe Juice and the Fresh Juice.

23.     The first production process is the hydraulic extraction of aqueous liquid from the fruits and vegetables ("cold-pressing").

24.     The resultant expressed aqueous liquid is bottled by defendant Freshbev into the bottle size for the product (i.e., 12, 12.2, 16 or 33.8 ounces).

25.     After bottling, the second production process is high pressure processing.

26.     The bottles are placed into a cylindrical pressure vessel, which is loaded into a high-pressure chamber.

27.     Water is added to the cylindrical pressure vessel and the vessel is closed.

28.     The bottles are pressurized at levels up to 87,000 pounds per square inch ("psi")/600 megapascal ("MPa").

29.     The bottles are held at the target pressure for up to ten (10) minutes.

30.     The pressure is applied uniformly, and in all directions simultaneously.

31.     This compression increases the temperature of the contents of the bottles by approximately 3 °C for every 100 MPa.

32.     After the pressure holding time, the pressure is released.

33.     Having been subjected to two separate and successive production processes, the Ripe Juice and the Fresh Juice are then offered for sale to consumers.

34.     Defendant Freshbev represents that the Ripe Juice is manufactured through being "Cold-Pressed."

35.     Defendant Freshbev represents the Ripe Craft Juice 12 and Ripe Bar Juice as being "Cold-Pressed Daily" on the front label.

36.     Defendant Freshbev represents the Ripe Craft Juice 12 and Ripe Bar Juice as being "Cold-Pressed" on the front label.

37.     Defendant Freshbev represents the Ripe Craft Juice 12 and Ripe Bar Juice as being "cold-pressed" and "always COLD-PRESSED," through descriptive and evocative text in multiple locations on the label.

38.     Defendant Freshbev represents Ripe Craft Juice as being manufactured only through being cold-pressed, describing them as "100% Cold-Pressed."

39.     Defendant Whole Foods represents Fresh Juice as manufactured through being "Cold-Pressed."

40.     Defendant Freshbev represents Ripe Juice as never heated during the manufacturing process, describing Ripe Craft Juice 12 and Ripe Bar Juice as "Never Heated" and Ripe Craft Juice 12.2 as "juice that isn't heated, ever."

41.     Defendant Whole Foods represents Fresh Juice as "Never Heated" during the

manufacturing process.

42.     Defendant Freshbev represents Ripe Craft Juice as not subjected to a process of pasteurization during the manufacturing process by stating it is "Unpasteurized."

43.     Defendant Whole Foods represents Fresh Juice as not subjected to a process of pasteurization during the manufacturing process by stating it is "Unpasteurized."

44.     The labeling, packaging and advertising of the Products contain representations, claims, information and statements with respect to the production processes used to manufacture the Products which is false, deceptive and misleading.

45.     Following the initial cold-pressing, the juice product has not been processed, pasteurized, preserved, heated or subjected to an increase in temperature, or treated.

46.     Expressed juice which exists after this first production process (cold-pressed), and has not been subjected to any subsequent production process, is available to consumers for purchase and consumption.

47.     This type of juice, marketed as cold-pressed juice, commands a premium price.

48.     The Ripe Juice and Fresh Juice are represented as cold-pressed juice, even though cold-pressing is the first production process applied to the fruits and vegetables, prior to high pressure processing.

49.     The Products experience a process of pasteurization as a result of the application of high pressure, in that this intervention achieves a food safety effect.

50.     Defendant Freshbev's managing member described the production process through which Ripe Juice and Fresh Juice are manufactured as "High pressure pasteurization ('HPP'), also known as high pressure processing and ultra-high pressure processing, [is] used

to preserve foods and beverages by applying an elevated pressure."

51.     Defendant Freshbev's managing member described this production process as "[A] method of pasteurizing a consumable material" and stated "HPP is used to pasteurize foods at elevated pressures."

52.     Defendant Freshbev uses the machines of Hiperbaric, S.A. ("Hiperbaric"), a company which manufactures equipment that performs high pressure processing.

53.     Hiperbaric described high pressure processing as "cold pasteurization."

54.     Prior to defendant Whole Foods' introduction of Fresh Juice, its parent company, Whole Foods, Inc., promoted juices of third-party companies which were carried by defendant Whole Foods, describing such products as produced through having been "high pressure pasteurized."

55.     Whole Foods, Inc., provides forms to third-party vendors seeking to have their products carried by defendant Whole Foods, which include required disclosures of whether the products are manufactured through "high pressure pasteurization."

56.     Whole Foods Market, Inc., has touted in-house juice bars present within the stores of defendant Whole Foods, which offer "Cold-Pressed Raw Juice," that is "made fresh in our store" and immediately available to consumers following its production.

57.     In promoting this "cold-pressed and unpasteurized" juice which is available within the stores of defendant Whole Foods, Whole Foods Market, Inc., emphasized the production process of cold-pressed juice, stating, "Why cold-press? Juicers that grind or blend can expose produce to heat and oxygen."

58.     This cold-pressed method, applied within stores of defendant Whole Foods, is able to "extract juice without adding heat."

59.     In describing this cold-pressed juice, Whole Foods, Inc., was referring to juice which was not subjected to an additional production process after being cold-pressed.

60.     These cold-pressed juice products contain warning labels indicating risks of their consumption, due to not having been subjected to a food safety treatment.

61.     Defendants' representations about their Products are intended to mislead consumers who seek to purchase juice products which are made only as a result of being cold-pressed and not subjected to an additional process beyond being cold-pressed.

62.     Defendants represent their Products as unpasteurized, conveying a message to consumers that the Products are not subjected to a process beyond being cold-pressed.

63.     Defendants attempt to further confuse consumers by indicating that the purportedly unpasteurized products are not heated and do not experience an increase in temperature as a result of being processed by high pressure.

64.     Defendants' failure to provide information with respect to the accurate production process of the Products is misleading to reasonable consumers.

65.     As a result of the second production process – high pressure processing – the cold-pressed juice is processed, preserved, pasteurized, heated or subjected to an increase in temperature or treated.

66.     The labeling, packaging and advertising of and on the Products contain representations, claims, information and statements which are false, deceptive and misleading, with respect to the attributes, qualities, and characteristics of the Products.

67.     Defendant Freshbev represents Ripe Craft Juice as fresh, through packaging, labeling and advertising, describing Ripe Craft Juice 12 as "the freshest [Cranberry Apple, Cranberry, etc.] Juice out there," and Ripe Craft Juice 12.2 as "Beyond Fresh."

68.     Defendant Whole Foods represents Fresh Juice as "fresh" through its brand name, "Fresh Juice."

69.     21 CFR § 101.95 defines the circumstances under which "fresh" can be used on or in the labeling of a food product.

70.     The term "fresh" is one of the most desirable food labeling claims among consumers and is consistent with a trend towards a desire for minimally processed foods.

71.     In making food choices, "fresh" has long been material to consumers.

72.     The use of "fresh" in labeling or in the brand name in a manner that suggests or implies that the food has not been subjected to processing or preservation, is misleading.

73.     The use of the word "fresh" is particularly applicable where processed and unprocessed forms of the food labeled "fresh" available to consumers.

74.     With respect to juice, products are available to consumers which have not been treated, processed, preserved, heated or pasteurized following extraction from fruits and vegetables as a result of being cold-pressed.

75.     Defendants' Products are subjected to high pressure processing following the point where they could otherwise be offered for sale to consumers.

<u>Jurisdiction and Venue</u>

76.     Jurisdiction is proper pursuant to 28 USC § 1332(d)(2).

77.     Upon information and belief, the aggregate amount in controversy is in excess of $5,000,000.00, exclusive of interests and costs.

78.     This Court has personal jurisdiction over defendant Freshbev because defendant Freshbev conducts and transacts business in New York, contracts to supply goods within New York, and supplies goods within New York.

79.     This Court has personal jurisdiction over defendant Whole Foods because defendant Whole Foods conducts and transacts business in New York, contracts to supply goods within New York, and supplies goods within New York.

80.     Venue is proper because plaintiff and many class members reside in the Eastern District of New York and defendants have, at all relevant times, been doing business in the Eastern District of New York, and throughout the state.

81.     A substantial part of the events or omissions which give rise to the claims occurred in the Eastern District of New York.

**PARTIES**

82.     Plaintiff is a citizen of New York in the County of Kings.

83.     Defendant Freshbev, LLC is a Connecticut limited liability company.

84.     Defendant Whole Foods Market Group, Inc., is a Delaware corporation.

85.     In October 2016, plaintiff purchased Ripe Craft Juice 12.2 Northeast Blend at a grocery store bearing the name of defendant Whole Foods, located within the Eastern District of New York.

86.     Plaintiff paid no less than $4.99, excluding tax, for Ripe Craft Juice 12.2 Northeast Blend.

87.     Plaintiff paid a premium for Ripe Craft Juice 12.2 Northeast Blend because prior to purchasing it, he saw and relied upon its labeling, packaging and advertising, which described the production process through which it was made as "100% Cold-Pressed."

88.     Plaintiff paid a premium for Ripe Craft Juice 12.2 Northeast Blend because prior to purchasing it, he saw and relied upon its labeling, packaging and advertising, which stated it was not subjected to a process of pasteurization, by labeling it "unpasteurized."

89.     Plaintiff paid a premium for Ripe Craft Juice 12.2 Northeast Blend because prior to purchasing it, he saw and relied upon its labeling, packaging and advertising, which stated it was "beyond fresh," reasonably believing it was fresh, not processed nor preserved.

90.     Prior to purchasing Ripe Craft Juice 12.2 Northeast Blend, plaintiff saw and relied upon its labeling, packaging and advertising, which stated it was "juice that isn't heated, ever", reasonably believing it was not heated or subjected to an increase in temperature as a result of the production process.

91.     Plaintiff's observance and reliance upon Ripe Craft Juice 12.2 Northeast Blend's representations as not having been heated or subjected to an increase in temperature contributed to his reliance on its claims that it was made only through being cold-pressed and had not been subjected to a pasteurization process.

92.     In October 2016, plaintiff purchased Ripe Craft Juice 12 Cranberry Unsweetened at a grocery store bearing the name of defendant Whole Foods, located within the Eastern District of New York.

93.     Plaintiff paid no less than $3.50, excluding tax, for Ripe Craft Juice 12 Cranberry Unsweetened.

94.     Plaintiff paid a premium for Ripe Craft Juice 12 Cranberry Unsweetened because prior to purchasing it, he saw and relied upon its labeling, packaging and advertising, which described the production process through which it was made as "cold-pressed daily," resulting in it being "100% Cold-Pressed Juice."

95.     Plaintiff paid a premium for the Ripe Craft Juice 12 Cranberry Unsweetened because prior to purchasing this Product, he saw and relied upon the labeling, packaging and advertising which described this Product as not having been made through a process of

pasteurization by labeling it as "unpasteurized."

96.     Plaintiff paid a premium for the Ripe Craft Juice 12 Cranberry Unsweetened because prior to purchasing this Product, he saw and relied upon the labeling, packaging and advertising of the Product, which described the Product as "the freshest Cranberry Juice out there," reasonably believing this Product was fresh and not processed.

97.     Prior to purchasing this Product, plaintiff saw and relied upon the labeling, packaging and advertising of this Product, which described it as "never heated."

98.     Plaintiff's observance and reliance upon this Product's representations as not having been heated or subjected to an increase in temperature contributed to plaintiff's reliance on the Product's claims that it was made only through being cold-pressed and had not been subjected to a pasteurization process.

99.     In October 2016, plaintiff purchased Fresh Juice Pineapple at a grocery store bearing the name of defendant Whole Foods, located within the Eastern District of New York.

100.    Plaintiff paid no less than $7.99, excluding tax, for the Fresh Juice Pineapple.

101.    Plaintiff paid a premium for Fresh Juice Pineapple because prior to purchasing it, he saw and relied upon its labeling, packaging and advertising, which described it as being made through being "Cold-Pressed" daily.

102.    Plaintiff paid a premium for Fresh Juice Pineapple because prior to purchasing this Product, he saw and relied upon the labeling, packaging and advertising of the Product, which described it as not having been made through a process of pasteurization by labeling this Product as "unpasteurized."

103.    Plaintiff paid a premium for Fresh Juice Pineapple because prior to

purchasing this Product, he saw and relied upon its labeling, packaging and advertising, which through its brand name stated it was "Fresh Juice," reasonably believing this Product was fresh.

104.    Prior to purchasing Fresh Juice Pineapple, plaintiff saw and relied upon its labeling, packaging and advertising, which described it as "Never Heated," and reasonably believed it was not heated or subjected to an increase in temperature as a result of the production process.

105.    Plaintiff's observance and reliance upon Fresh Juice Pineapple's representations as never having been heated or subjected to an increase in temperature contributed to plaintiff's reliance on its claims that it was made only through being cold-pressed and had not been subjected to a pasteurization process.

106.    Plaintiff purchased Ripe Craft Juice 12.2 Northeast Blend, Ripe Craft Juice 12 Cranberry Unsweetened and Fresh Juice Pineapple for personal consumption.

107.    Plaintiff opted against buying less expensive juice products not purported to be unpasteurized, fresh and never heated.

108.    To their detriment, plaintiff and class members relied on the defendants' false and misleading advertising, misrepresentations, mislabeling and material omissions.

109.    As a result of purchasing the Products at a premium price in reliance on advertising, labeling and representations that are false, misleading and deceptive, and contained material omissions, plaintiff and class members suffered an injury in fact.

110.    The members of the proposed class consist of men and women nationwide who purchased the Products.

**CLASS ALLEGATIONS**

111. Defendants orchestrated labeling, advertising and packaging practices for their Products is false, misleading and deceptive.

112. Defendants' customers were uniformly impacted by and exposed to this misconduct. Accordingly, this complaint is uniquely situated for class-wide resolution, including injunctive relief.

113. The class is defined as all consumers, in all states, who purchased any of the Ripe Products or Fresh Juice Products, at any time during the period within the applicable statute of limitations.

114. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as this case meets the criteria required by Rule 23 of the Federal Rules of Civil Procedure.

115. The class is so numerous that joinder of all members, whether otherwise permitted, is impracticable.

116. Plaintiff believes there are thousands of consumers who are class members who have been damaged by defendants' deceptive and misleading practices.

117. Questions of law or fact common to the class predominate over any questions affecting only individual members and include:

(a) Whether defendants are responsible for the conduct alleged which was uniformly directed at all consumers who purchased the Products;

(b) Whether defendants' misconduct demonstrates whether defendants have engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of their Products;

(c) Whether defendants' false and misleading statements and concealment of

material facts regarding the Products were likely to deceive reasonable consumers acting reasonably under the circumstances;

(d)  Whether plaintiff and class members are entitled to injunctive relief; and

(e)  Whether plaintiff and class members are entitled to money damages under the same causes of action as other class members.

118.   Plaintiff is a member of the class.  Plaintiff's claims are typical of the claims of each class member, in that, every member of the class was susceptible to the same deceptive, misleading conduct and purchased the Products.  Plaintiff is entitled to relief under the same causes of action as other class members.

119.   Plaintiff is an adequate class representative because his interests do not conflict with the interests of class members he seeks to represent.  Plaintiff's claims are common to all members of the class and plaintiff has a strong interest in vindicating his rights.  Plaintiff has retained counsel competent and experienced in complex class action litigation of consumer protection issues and they intend to vigorously prosecute this action and will adequately and fairly protect class members' interests.  Defendants have acted in a manner generally applicable to the class, making relief appropriate with respect to plaintiff and class members.  The prosecution of separate actions by individual class members would create a risk of inconsistent adjudications.

120.   A class action is superior to other available methods for fairly and efficiently adjudicating the controversy, as common issues of law and fact predominate over any other questions affecting only individual class members.

121.   The class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary, just a narrow focus on defendants' deceptive

and misleading marketing and labeling practices.

122.    A class action is superior because individual claims of the class members may be relatively modest compared with the expense of litigating the claim, making it impracticable, unduly burdensome, and expensive to impossible to justify individual actions.

123.    A class action is superior because when defendants' liability has been adjudicated, all class members' claims can be determined by the Court and administered efficiently in a less burdensome and expensive manner than through filing, discovery, and trial of all individual cases.

124.    A class action is superior because it will promote orderly, efficient, expeditious, uniform and appropriate adjudication and administration of claims.

125.    A class action is superior because the class is readily definable and will eliminate the possibility of repetitious litigation.

126.    Rule 23(b)(1)-(3) contemplates a class action for purposes of seeking class-wide injunctive relief. Here, defendants have engaged in conduct resulting in misleading consumers about the processes by which its Products are manufactured and the attributes and characteristics of the Products themselves.

127.    Because defendants' conduct has been uniformly directed at all consumers nationwide, and the conduct continues, injunctive relief on a class-wide basis is a suitable solution to remedy defendants' misconduct.

128.    The injunctive class is properly brought and should be maintained as a class action under Rule 23(a).

129.    The class is so numerous that individual joinder of injunctive class members would be impracticable.

130.    Commonality exists as there are questions of law and fact common to class members.  Defendants' misconduct was uniformly directed at all consumers.  Thus, all class members have a common cause against defendants' to stop its misleading conduct through an injunction.   Because the issues presented by this injunctive class deal exclusively with defendants' misconduct, resolution of these questions would be common to the entire class.

131.    There are common questions of law and fact in the resolution of an injunctive class, including issues presented in the Rule 23(b)(3) class, whether class members will continue to suffer harm from defendants' deceptive practices and whether, on equitable grounds, defendants should be prevented from continuing to provide false, deceptive and misleading information about its Products through their labeling, advertising and packaging.

132.    Plaintiff's claims are typical of the claims of the injunctive class because his claims arise from the same course of conduct.

133.    Plaintiff is a typical class representative, because, like all injunctive class members, he purchased defendants' Products which were sold unfairly and deceptively to consumers nationwide.

134.    Plaintiff is an adequate class representative and will fairly represent and protect the interests of the injunctive class.  His claims are common to all injunctive class members and he has a strong interest in vindicating his rights.

135.    The injunctive class is properly brought and should be maintained as a class action under Rule 23(b)(2) because plaintiff seeks injunctive relief on behalf of class members on grounds generally applicable to the entire injunctive class.

136.    Certification under Rule 23(b)(2) is appropriate because defendants' have acted or refused to act in a manner that applies generally to the injunctive class.

137.     Any final injunctive or declaratory relief would benefit the entire injunctive class as defendants would be prevented from continuing their false, misleading and deceptive product marketing practices and would be required to honestly disclose to consumers the production processes and attributes of the Products.

Causes of Action

First – Violation of New York General Business Law § 349

138.     Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

139.     Defendants' acts or practices of representing their Products as cold-pressed, fresh, not subjected to a process of pasteurization and not being heated or experiencing an increase in temperature, are not unique to the parties and have a broader impact on consumers.

140.     Defendants' representations of their Products as manufactured through being cold-pressed is consumer-oriented.

141.     The representations of defendant Freshbev include describing its Products as "always COLD-PRESSED," "100% Cold-Pressed," and "Cold-Pressed Daily."

142.     The representations of defendant Whole Foods include describing its Products as "Cold-Pressed & Crafted Daily."

143.     Defendants' representations of their Products as not being heated or experiencing an increase in temperature as a result of the production process is consumer-oriented.

144.     The representations of defendant Freshbev include describing its Products as "Never Heated" and "juice that isn't heated, ever."

145.    The representations of defendant Whole Foods include describing its Products as "Never Heated."

146.    Defendants' representations of their Products as not being subjected to a process of pasteurization are consumer-oriented.

147.    The representations of defendant Freshbev include describing Ripe Craft Juice as "Unpasteurized."

148.    The representations of defendant Whole Foods include describing Fresh Juice as "Unpasteurized."

149.    Defendants' representations of their Products as fresh is consumer-oriented.

150.    The representations of defendant Freshbev include describing Ripe Craft Juice 12 as "the freshest [Cranberry Apple, Cranberry, etc.] Juice out there" and Ripe Craft Juice 12.2 as "Beyond Fresh."

151.    The representations of defendant Whole Foods include representing its Products as "fresh" through the brand name, "Fresh Juice."

152.    Defendants' representations of the Products as made through being cold-pressed, not heated and unpasteurized are material since consumers increasingly seek out information regarding the processes used in the production of their foods, including the conditions under which their food was produced.

153.    Defendants' representations about the processes through which the Products were manufactured are material since consumers' decisions about what products to purchase and consume is affected by qualities and characteristics not limited to the intrinsic attributes of the products.

154.    Defendants' representations of the Products as fresh is material because

consumers increasingly value food products which are not preserved, either through chemicals, substances or processes.

155. Defendants' representations of the Products as made as a result of being cold-pressed is material since juice products are available to consumers which are not treated or processed beyond being cold-pressed, and such products are more expensive.

156. Whether or not a product is made as a result of being cold-pressed and not subjected to additional processes or treatments beyond being cold-pressed is a material element in a consumer's purchasing decision.

157. Defendants representations of their Products as fresh was misleading in a material respect because such a description implies that the Products are not processed even though the Products are processed with high pressure.

158. Defendants' representations of their Products as fresh was misleading in a material respect because juice products exist and are available to consumers which have not been processed.

159. Specifically, juice products exist and are available which are only made through being cold-pressed prior to being offered for sale to consumers.

160. Defendants' representations of their Products as cold-pressed was misleading in a material respect because juice products are available to consumers which have not been processed beyond being cold-pressed.

161. Defendants' representations that the Products are cold-pressed is misleading in a material respect, since the Products are subjected to an additional production process after being cold-pressed.

162. Defendants' representations that the Products are cold-pressed is misleading

in a material respect since the Products emphasize the cold-pressed process vis-à-vis other production processes utilized to manufacture the Products.

163.    Defendants' representations of their Products as cold-pressed was misleading in a material respect since the cold-pressing of the fruits and vegetables was an intermediate production process in the manufacturing of the Products.

164.    Defendants' representations of their Products as cold-pressed was misleading in a material respect because consumers associate a juice made as a result of being cold-pressed with a juice that is not subjected to an additional production process after being extracted from the fruits and vegetables.

165.    Defendants' representations of their Products as cold-pressed was misleading in a material respect because consumers associate a juice made as a result of being cold-pressed with a juice that was more recently expressed from fruits and vegetables.

166.    Juice products which are produced only through being cold-pressed have a significantly shorter shelf-life than juice products which undergo an additional process.

167.    Defendants' representations of their Products as not having been heated or experiencing an increase in temperature was misleading in a material respect because it implies that the Products are not subjected to a process of pasteurization.

168.    Defendants' representations of their Products as not having been heated or experiencing an increase in temperature was misleading in a material respect because the application of high pressure increases the temperature of the Products.

169.    As consumers are generally not aware that a product can be subjected to a process of pasteurization through means other than the application of thermal energy, defendants' representations that its Products are made without heat cause consumers to

believe its products are not pasteurized in any way.

170.    Defendants' representations of their Products as not having been subjected to a process of pasteurization was misleading in a material respect because the Products were pasteurized as a result of the application of high pressure as opposed to thermal treatment.

171.    Though defendants' Products may not be subjected to a process of pasteurization through thermal means, its Products are nevertheless subjected to a process of non-thermal pasteurization through the application of pressure.

172.    Defendants' representations of their Products as not having been subjected to a process of pasteurization was misleading in a material respect because consumers associate a product which has not been pasteurized with a product that has not been treated with a food safety technology to reduce health risks that may be caused by consumption of the product.

173.    Defendants' material misrepresentations and mislabeling induced plaintiff and class members to purchase the Products at a premium price.

174.    Defendants' separate representations of the Products – cold-pressed, not heated, fresh and unpasteurized – are false, deceptive and misleading, when viewed apart from each other, and each constitutes a separate violation of GBL § 349.

175.    When these representations are viewed together by a reasonable consumer, they create the impression that the Products are akin to juice products which are not processed, treated, pasteurized, preserved or heated following the extraction of expressed juice from fruits and vegetables.

176.    The representations of defendants reinforce each other and are designed to take advantage of consumer awareness of certain terms and their associations of such terms.

177.    Plaintiff and class members relied on defendants' representations that the

Products were cold-pressed, never heated or experienced an increase in temperature, fresh and not subjected to a process of pasteurization.

178.    As a result of defendants' representations, plaintiff paid more for the Products than he otherwise would have paid had he known the Products were not cold-pressed, were heated and experienced an increase in temperature, were not fresh and were subjected to a process of pasteurization.

179.    As a result of defendants' acts and practices, plaintiff and class members are entitled to monetary damages, injunctive relief, restitution, disgorgement of all monies obtained by means of the unlawful conduct, interest, and attorney's fees and costs.

Second – Violation of New York General Business Law § 350

180.    Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

181.    Defendants' false advertising, including labeling their Products as produced from being cold-pressed, fresh, not subjected to a process of pasteurization and not being heated or experiencing an increase in temperature, are not unique to the parties and have a broader impact on consumers.

182.    Defendants' labeling of their Products as manufactured through being cold-pressed is consumer-oriented.

183.    The labeling and packaging of defendant Freshbev include describing its Products as "always COLD-PRESSED," "100% Cold-Pressed," and "Cold-Pressed Daily."

184.    The labeling and packaging of defendant Whole Foods include describing its Products as "Cold-Pressed & Crafted Daily."

185.    Defendants' labeling of their Products as not being heated or experiencing an

increase in temperature as a result of the production process is consumer-oriented.

186.    The labeling of defendant Freshbev includes describing its Products as "Never Heated" and "juice that isn't heated, ever."

187.    The labeling of defendant Whole Foods includes describing its Products as "Never Heated."

188.    Defendants' labeling of their Products as not being subjected to a process of pasteurization are consumer-oriented.

189.    The labeling of defendant Freshbev includes describing Ripe Craft Juice as "Unpasteurized."

190.    The labeling of defendant Whole Foods include describing Fresh Juice as "Unpasteurized."

191.    Defendants' labeling of their Products as fresh is consumer-oriented.

192.    The labeling of defendant Freshbev includes describing Ripe Craft Juice 12 as "the freshest [Cranberry Apple, Cranberry, etc.] Juice out there" and Ripe Craft Juice 12.2 as "Beyond Fresh."

193.    The labeling of defendant Whole Foods includes representing its Products as "fresh," through the brand name, "Fresh Juice."

194.    Defendants' labeling the Products as made through being cold-pressed, not heated and unpasteurized are material since consumers increasingly seek out information regarding the processes used in the production of their foods, including the conditions under which their food was produced.

195.    Defendants' labeling about the processes through which the Products were manufactured are material since consumers' decisions about what products to purchase and

consume is affected by qualities and characteristics not limited to the intrinsic attributes of the products.

196.     Defendants' labeling of the Products as fresh is material because consumers increasingly value food products which are not processed or preserved, either through chemicals, substances or processes.

197.     Defendants' labeling of the Products as made as a result of being cold-pressed is material since juice products are available to consumers which are not treated, preserved or processed beyond being cold-pressed, and such products cost more than juice products which have been treated, preserved or processed following their extraction from fruits and vegetables.

198.     Whether or not a product is made as a result of being cold-pressed and not subjected to additional processes or treatments beyond being cold-pressed is a material element in a consumer's purchasing decision.

199.     Defendants' labeling of their Products as fresh was misleading in a material respect because such a description implies that the Products are not processed even though the Products are processed with high pressure.

200.     Defendants' labeling of their Products as fresh was misleading in a material respect because juice products are available to consumers which have not been processed.

201.     Specifically, juice products exist and are available which are only made through being cold-pressed prior to being offered for sale to consumers.

202.     Defendants' labeling of their Products as cold-pressed was misleading in a material respect because juice products are available to consumers which have not been processed beyond being cold-pressed.

203.   Defendants' labeling that the Products are cold-pressed is misleading in a material respect, since the Products are subjected to an additional production process after being cold-pressed.

204.   Defendants' labeling that the Products are cold-pressed is misleading in a material respect since the Products emphasize the cold-pressed process vis-à-vis other production processes utilized to manufacture the Products.

205.   Defendants' labeling of their Products as cold-pressed was misleading in a material respect since the cold-pressing of the fruits and vegetables was an intermediate production process in the manufacturing of the Products.

206.   Defendants' labeling of their Products as cold-pressed was misleading in a material respect because consumers associate a juice labeled to have been made as a result of being cold-pressed with a juice that is not subjected to an additional production process after being expressed from the fruits and vegetables.

207.   Defendants' labeling of their Products as cold-pressed was misleading in a material respect because consumers associate a juice made as a result of being cold-pressed with a juice that was more recently expressed from fruits and vegetables as opposed to a juice product that is subjected to an additional process after being cold-pressed.

208.   Juice products which are produced only through being cold-pressed have a significantly shorter shelf-life than juice products which undergo an additional process.

209.   Defendants' labeling of the Products as not having been heated or experiencing an increase in temperature was misleading in a material respect because it implies that the Products are not subjected to a process of pasteurization.

210.   Defendants' representations that the Products have not been heated or

experienced an increase in temperature was misleading in a material respect because the application of high pressure heats and increases the temperature of the Products.

211.    As consumers may not generally be aware that a product can be subjected to a process of pasteurization through means other than the application of thermal energy, defendants' labeling that the Products are made without heat create the impression in consumers that its Products are not pasteurized in any way.

212.    Defendants' labeling of their Products as not having been subjected to a process of pasteurization was misleading in a material respect because the Products were pasteurized as a result of the application of high pressure as opposed to by thermal treatment.

213.    Defendants' advertising failed to reveal that though the Products may not have been subjected to thermal pasteurization, the Products could be, and were, subjected to a process of non-thermal pasteurization through the application of high pressure.

214.    Defendants' advertising of their Products as not having been subjected to a process of pasteurization was misleading in a material respect because consumers associate a product which has not been pasteurized with a product that has not been treated with a food safety technology to reduce health risks that may be caused by consumption of the product.

215.    Defendants' material misrepresentations and mislabeling induced plaintiff and class members to purchase the Products at a premium price.

216.    Defendants' separate representations of the Products – cold-pressed, not heated, fresh and unpasteurized – are false, deceptive and misleading, when viewed apart from each other, and constitute separate violations of GBL § 350.

217.    Each of the separate representations are misleading in a material respect.

218.    However, when these representations are viewed together by a reasonable

consumer, they create the impression that the Products are akin to juice products which are not processed, not treated, not pasteurized, not heated nor preserved following the extraction of expressed juice from fruits and vegetables.

219.    Defendants' representations reinforce each other and are designed to take advantage of consumers' awareness of certain terms and their association of such terms.

220.    Defendants' labels are misleading to a reasonable consumer acting reasonably under the circumstances.

221.    Plaintiff and class members relied on defendants' advertising that the Products were cold-pressed, never heated or experienced an increase in temperature, fresh and not subjected to a process of pasteurization.

222.    As a result of defendants' false advertising, plaintiff paid more for the Products than he otherwise would have paid had he known the Products were not cold-pressed, were heated and experienced an increase in temperature, were not fresh and were subjected to a process of pasteurization.

223.    As a result of defendants' false advertising, plaintiff and class members are entitled to monetary damages, injunctive relief, restitution, disgorgement of all monies obtained by means of the unlawful conduct, interest, and attorney's fees and costs.

<u>Third – Fraud</u>

(Only directed to representations that Products are not subjected to a process of pasteurization)

224.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

225.    Defendant Freshbev represents Ripe Craft Juice as not subjected to a process of pasteurization by labeling it "unpasteurized."

226. Defendant Whole Foods represents Fresh Juice as not subjected to a process of pasteurization by labeling it "unpasteurized."

227. Defendants' representations that the Products are not subjected to a process of pasteurization are material since consumers increasingly seek out information regarding the processes used in the production of their foods, including the conditions under which their food was produced.[1]

228. Defendants' representations that the Products are not subjected to a process of pasteurization are material since consumers increasingly value food products which are not preserved, either through chemicals, substances or processes.

229. Defendants' representations that the Products are not subjected to a process of pasteurization are material since consumers increasingly value food products which are not subjected to processes or treatments beyond the point where the products could be consumed.

230. Defendants' representations of the Products as unpasteurized was false.

231. The process applied by defendant Freshbev through the application of high pressure achieves a food safety effect, so the Products can be consumed without risk or harm.

232. Specifically, the process applied by defendant Freshbev achieves a reduction in the most resistant harmful contents of the Products after the cold-press process is completed, such that the Products need not bear a warning label advising consumers of the risks associated with its consumption.

233. Defendants intended to deceive reasonable consumers that its Products were not subjected to a process of pasteurization because pasteurization is associated with a

---

[1] In this section, "Products" shall refer to the Ripe Craft Juice Products and the Whole Foods Products.

product that is less money and produced on a larger scale than a juice product which is not subjected to a process of pasteurization.

234.   Defendants intended to deceive reasonable consumers that the Products were not subjected to a process of pasteurization, since products which are not pasteurized following being expressed from fruits and vegetables are fresh.

235.   Defendants intended to deceive reasonable consumers that its Products were not subjected to a process of pasteurization since defendants each knew that its Products had been pasteurized as a result of the application of high pressure.

236.   Defendant Freshbev knew Ripe Juice was subjected to a process of pasteurization since defendant Freshbev, by and through its managing member, stated pasteurization can be carried out by high pressure and that "HPP is used to pasteurize foods at elevated pressures."

237.   Defendant Whole Foods knew Fresh Juice was subjected to a process of pasteurization since it operates grocery stores which contain juice bars.

238.   In operating its juice bars, defendant Whole Foods affixes a sticker upon the final juice product before it is provided to the consumer.

239.   This sticker contains a warning label which advises of risks associated with consuming a product which has not been pasteurized.

240.   Fresh Juice does not contain any warning label.

241.   Defendant Whole Foods therefore knew that representing Fresh Juice as unpasteurized was false.

242.   Defendants intended to, and did deceive reasonable consumers that the Products were not subjected to a process of pasteurization through labeling the Products as

made without being heated or experiencing an increase in temperature.

243.    Defendants intended to, and did deceive reasonable consumers by stating that the Products were not subjected to a process of pasteurization, implying to consumers that thermal pasteurization is the only form of pasteurization.

244.    Defendants knew that in the context of juice products, pasteurization could be carried out by non-thermal means.

245.    Defendant Whole Foods knew enough about the differences between products which were pasteurized and unpasteurized that when it had two products – the juice bar juice and the Fresh Juice – it applied the required warning label to the juice bar juice.

246.    If defendant Whole Foods believed Fresh Juice was not subjected to a process of pasteurization, it would have applied warning labels to them.

247.    Plaintiff and class members had reason to rely, and did rely, on the representations of defendants, that the Products had not been subjected to a process of pasteurization.

248.    Plaintiff and class members suffered an injury in fact as a result of payment of a premium amount of money for the Products, on account of representations that were false and intended to deceive them, which resulted in their reasonable reliance.

249.    As a result of defendants' fraud with respect to its representations of the Products as not subjected to a process of pasteurization, plaintiff and class members are entitled to monetary damages, injunctive relief, restitution, disgorgement of all monies obtained by means of defendants' unlawful conduct, interest and costs.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, plaintiff, on behalf of himself and all others similarly situated, prays for judgment as follows:

1.  Declaring this a proper class action and certifying plaintiff as representative of the class;

2.  Entering preliminary and permanent injunctive relief against defendants, directing defendants to correct their practices and to comply with the law;

3.  Awarding monetary damages, including treble damages, pursuant to GBL §§ 349 and 350, and punitive damages;

4.  Awarding plaintiff and class members costs and expenses incurred in this action, including reasonable allowance of fees for plaintiff's attorneys and experts; and

5.  Such other and further relief as the Court may deem just and proper.

Dated:  May 4, 2017

Respectfully Submitted,

Levin-Epstein & Associates, P.C.

By:      /s Joshua Levin-Epstein
          Joshua Levin-Epstein
          1 Penn Plaza, Suite 2527
          New York, NY 10119
          Tel: (212) 792-0046
          Fax: (212) 563-7108
          joshua@levinepstein.com

          *Counsel for Plaintiff*

          Sheehan & Associates, P.C.

By:      /s Spencer Sheehan
          Spencer Sheehan
          891 Northern Blvd., Suite 201
          Great Neck, NY 11021
          Tel: (516) 303-0552
          Fax: (516) 234-7800
          spencer@spencersheehan.com

          *Counsel for Plaintiff*

1:16-cv-07119 (FB)(ST)
United States District Court
Eastern District of New York

Gerard Campbell, individually on behalf of himself and all others similarly situated,

        Plaintiff,

    - against -

Freshbev LLC and Whole Foods Market Group, Inc.,

        Defendants.

# Second Amended Complaint

**Levin-Epstein & Associates, P.C.**
**1 Penn Plaza**
**Suite 2527**
**New York, NY 10119**
**Tel: (212) 792-0046**
**Fax: (212) 563-7108**
**joshua@levinepstein.com**

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  May 4, 2017
     New York, New York

                 /s Joshua Levin-Epstein
                 Joshua Levin-Epstein