UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X  1:16-cv-07119 (FB)(ST)

GERARD CAMPBELL, individually and on behalf of
himself and all others similarly situated,

                      Plaintiff,

                                                     THIRD AMENDED
       - against -                                       COMPLAINT

FRESHBEV LLC and WHOLE FOODS MARKET
GROUP, INC.,

                      Defendants.
-----------------------------------------------------------------------X

      Plaintiff Gerard Campbell ("plaintiff"), individually and on behalf of all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to plaintiff, which are based on personal knowledge:

      1.     Plaintiff brings this action against Freshbev LLC ("defendant Freshbev") and Whole Foods Market Group, Inc. ("defendant Whole Foods") (collectively, "defendants").

Defendants' Products

      2.     Defendant Freshbev is a manufacturer of juice products.

      3.     Defendant Freshbev manufactures juice products which it sells under its own brand names and for third-parties, who sell it under their own brand names.

      4.     Defendant Freshbev manufactures and sells for itself products with the brand name "Ripe Craft Juice" in 12 and 12.2 ounces (the "Ripe Juice Products" or "Ripe Products").

      5.     Defendant Whole Foods is an operator of grocery stores.

      6.     The Ripe Juice Products are sold in the stores of defendant Whole Foods and other brick and mortar locations.

7. The Ripe Products are sold to consumers from the websites of defendant Freshbev and third-parties, and the products sold online are identical to those sold in retail stores.

8. The Ripe Products sold in retail locations are identical to those sold online.

9. Defendant Freshbev manufactures a private-label line of juices exclusively for defendant Whole Foods and sold only in the stores of defendant Whole Foods.

10. This private-label line of products is designated by its brand name "Fresh Juice" (the "Whole Foods Products" or the "Fresh Juice Products," together with the Ripe Juice Products, the "Products").

11. The Fresh Juice Products are 16 ounces and indicate that they are manufactured for defendant Whole Foods by defendant Freshbev.

12. The differences between the Ripe Craft Juice 12 and Ripe Craft Juice 12.2, and between the variations of the Fresh Juice Products, differ to the extent of the ingredients, such as the fruits and vegetables, and the labeling, packaging and representations are substantially similar or identical with respect to the material information on them.

13. The Ripe Craft Juice 12 Products include Cranberry Apple, Cranberry Northeast Blend, Cranberry Unsweetened, Red Grapefruit and Whole Cranberry Apple.

14. The names of the Ripe Craft Juice 12.2 Products include Founder's Blend Red Grapefruit, Northeast Blend Cranberry, Northeast Blend Cranberry Apple, Unsweetened Cranberry and Whole Milled Cranberry Apple.

15. The names of the Fresh Juice Products include Apple, Carrot & Lemon, Pineapple, Spicy Lemonade and Watermelon Blend.

16. The representations and identifications in the images below are similar or

identical to all products within the product line. The labels below have graphics and statements applicable to all products within that product line.

17. The principal display panel (front label) for the products is in the second column and the information panel is in the third column, and is what plaintiff observed and acted in reliance upon:

| | | |
|---|---|---|
| Ripe Craft Juice 12 Cranberry Unsweetened |  |  |
| Ripe Craft Juice 12.2 Northeast Blend Cranberry Apple |  |  |

Fresh Juice Pineapple




18. Defendant Freshbev employs two main steps to manufacture the Products.

19. The first step is cold-pressing. This entails the shredding of fruits and vegetables into a pulp, using a steel rotating disc. The fruits and vegetables are loaded into a large hopper feeding tube and falls into a filter bag. Multiple tons of hydraulic pressure are applied to the shredded produce. This causes juice and water from the produce to drip into a collection tray, while fiber and pulp remains in the filter bag. This liquid is bottled and labeled depending on the specific product type.

20. The second step is high pressure processing. The bottles are placed into a cylindrical vessel and pressurized at levels up to 87,000 pounds per square inch ("psi"). The increase in pressure causes an increase in the temperature of the contents of the bottles.

21. The pressure reduces the most resistant microorganism of public health concern in the juice by at least 100,000 fold and extends the shelf life of the product from 3-5 days to 6 weeks.

22. Having been subjected to two production steps, the Products are sold at prices ranging from $2.99 to $8.99, a premium price compared to other juice products which are

subjected to at least one additional process after being cold-pressed.

### Defendants' Misrepresentations

23. Defendants' misrepresentations include identifying the Products as cold-pressed juice, misleading with respect to the presence of cranberries, not providing accurate, truthful and/or complete information pertaining to the effects of cold-pressing and high pressure on the composition of the Products, including the reduction in microorganisms, enzymatic and cellular activity and nutrients, representing the Products as fresh, not being heated or experiencing an increase in temperature and not having been subjected to a process of pasteurization.

24. Cranberries are the characterizing ingredient in all defendant Freshbev's products and have a material bearing on the price of the products, since they are more expensive than apples and other juices used in defendant Freshbev's products.

25. Defendant Freshbev's promotion of all Ripe Products are centered around the presence of cranberry juice, including but not limited to the following statements on the labels: (i) Crafted with Ocean Spray Cranberries, (ii) "America's Native Super Fruit," (iii) "From Bog to Bottle" and (iv) "*Cleansing and Purifying Power of the Cranberry*."

26. Ripe Juice 12 Cranberry Apple, Ripe Juice 12 Whole Cranberry Apple, Ripe Juice 12.2 Whole Milled Cranberry Apple and Ripe Juice 12.2 Northeast Blend Cranberry Apple (the "Cranberry Apple Ripe Products") all represent that cranberry juice is the predominant juice in the products through its being named prior to "Apple."

27. The labels for these products are false, deceptive and misleading since the ingredient statements all indicate that apple juice is the predominant juice.

28. The labels of defendant Freshbev create and contribute to an erroneous

impression that cranberry juice is present in an amount greater than is actually the case.

29. The labels represent the products are fresh, such as Ripe Craft Juice 12, "Get fresh and get quenching," Ripe Craft Juice 12.2, "Beyond Fresh" and the brand name, Fresh Juice.

30. The use of "fresh" in labeling in a manner that suggests or implies the food has not been processed or preserved is misleading, especially where processed and unprocessed forms of that food are available to consumers.

31. The principal display panels of the Ripe 12 identify them as "cold-pressed 100% Juice," while the Ripe 12.2 are identified as "100% Cold-Pressed Juice."

32. The use of cold-pressed in this way is false, deceptive and misleading because (1) "Cold-Pressed" is not a component or ingredient, (2) cold-pressed juice is not a common or usual name and (3) it is not an appropriate descriptive and modifying term for this juice since cold-pressing is only an intermediate production step.

33. Since consumers can purchase juice products that have only been cold-pressed, defendant Freshbev's labeling is deceptive and misleading.

34. That defendant Freshbev's labeling is misleading and deceptive to reasonable consumers is apparent based on the way competitors, such as Starbucks and Bolthouse Farms, label their products, as indicated in the below table:

**Defendant Freshbev**





**Bolthouse Farms**



**Starbucks**



35. Defendant Freshbev's Products are identified as 100% Cold-Pressed Juice and Cold-Pressed 100% Juice, while Bolthouse's are identified as "100% Vegetable and Fruit Juice Blend High Pressure Processed" and Starbucks' are identified as "High Pressure Processed Vegetable and Fruit Juice Blend."

36. The representations of the Products as unpasteurized is false or misleading because no relevant regulation defines pasteurization for this type of juice product.

37. Pasteurization was first used to refer to the application of heat to make a product safe for human consumption. Today, the term pasteurization or pasteurized is used to advise consumers that a treatment or process may be described or referred to as pasteurization, if that treatment or process obtains the same food safety effect as currently understood traditional thermal treatment.

38. In the context of defendants' products, pasteurization refers to a process or treatment which achieves at least a 100,000 fold reduction of the most resistant microorganism of public health concern under normal conditions of distribution and storage.

39. While defendants use high pressure to achieve this specific objective, other microorganisms, along with enzymatic and biological activity, will be impacted and reduced.

40. This occurs because the high pressure causes structural changes to cell membranes, inactivates enzyme systems which are responsible for control of metabolic reactions within the products and reduces the overall nutrient content.

41. The high pressure treatment renders the final product distinct from the cold-press juice which had not been subjected to high pressure treatment, and the resulting changes are material to reasonable consumers.

42. Reasonable consumers, including plaintiff, are not aware defendants' products can be pasteurized without heat. This means that when they see labels stating "cold-pressed," "never heated" and "fresh," they will pay a price premium for such products, believing they have not been treated after being cold pressed.

43. Consumers and plaintiff intended to purchase products which had not been

subjected to a process which is the equivalent of pasteurization, because they are materially distinct from products which have been pasteurized in that the former possess a greater number of microorganisms, enzymes, bacteria, intact cellular activity and nutrient content than the latter, which have undergone an additional treatment process.

44. Below are the labels for cold-pressed juice products:

**Bolthouse Farms**



**Starbucks**

then shared.

We start with our favorite fruits and veggies.

Then they are pressed, squeezed and bottled cold.

We apply ginormous pressure (instead of heat pasteurizing).

**Ripe Juice 12**



**Ripe Juice 12.2**



**Fresh Juice**



45. Bolthouse Farms and Starbucks do not claim their products are "never heated" or "not pasteurized." Instead, they accurately represent their products as "not heat pasteurized" (Bolthouse) and by using a method of high pressure "instead of heat pasteurizing" (Starbucks), since the products are pasteurized through high pressure.

46. There are up to several hundred companies which produce juice through cold-pressing followed by high pressure treatment. The products of Bolthouse, Starbucks and Freshbev are available for purchase in the same stores and plaintiff was aware of the

representations of their products in the manner described here.

47. Defendants' failure to accurately and non-deceptively label its products, while its competitors do, misleads consumers through implication.

48. The combination of defendants' claims (in violation of regulations and statutes) and the lack of excessive and unlawful claims on competitors' products make defendants' labeling likely to mislead reasonable consumers into believing its products are higher quality than its competitors'.

49. If a consumer sees two or more juice products on a shelf and the first one (defendants) has been represented as cold-pressed, unpasteurized and never heated while the others make no similar claims and are cheaper, a likely inference is that the first product will be viewed as higher quality, explaining why it costs more.

50. Reasonable consumers believe that if the products had been of the same quality, competitive pressures would have driven the maker of the other products (not defendants) to use the same attractive labels used by defendants. Consumers make quality judgments before purchase, based on what they see on labels.

51. In a market of perfect information where everyone knows the actual value of each product, Bolthouse, Starbucks and defendants will reach a price equilibrium, because the products are equivalent and made through the same production steps.

52. The juice products of Bolthouse and Starbucks are priced between $2.99 and $5.99, significantly less than defendants' products.

53. When everyone plays by the rules, consumers will not be misled. When multiple companies comply with the law and do not make misleading and excessive claims to entice consumers, while its competitors do, the normal assumptions are no longer valid.

Jurisdiction and Venue

54. Jurisdiction is proper pursuant to 28 USC § 1332(d)(2).

55. Upon information and belief, the aggregate amount in controversy is in excess of $5,000,000.00, exclusive of interests and costs.

56. This Court has personal jurisdiction over defendants because each conducts and transacts business, contracts to supply and supplies goods, within New York.

57. Venue is proper because plaintiff and many class members reside in this District and defendant has been doing business in this District and in New York.

58. A substantial part of events/omissions giving rise to the claims occurred in this District.

**PARTIES**

59. Plaintiff is a citizen of Kings County, New York.

60. Defendant Freshbev, LLC is a Connecticut limited liability company.

61. Defendant Whole Foods Market Group, Inc., is a Delaware corporation.

62. In October 2016, plaintiff purchased Ripe Craft Juice 12.2 Northeast Blend Cranberry Apple, Ripe Craft Juice 12 Cranberry Unsweetened and Fresh Juice Pineapple for no less than $4.99, $3.50 and $7.99, respectively, excluding tax, at a grocery store bearing the name of defendant Whole Foods, located within the Eastern District of New York.

63. Plaintiff paid a premium for the Products because prior to purchasing them, he saw and relied upon their representations as cold-pressed juice, a process he understood to involve the use of significant pressure and which referred to the final consumable product.

64. Plaintiff paid a premium for the Products because prior to purchasing them, he saw and relied upon their representations as unpasteurized, never heated, fresh and the

representation that Ripe Craft Juice 12.2 Northeast Blend Cranberry Apple was predominantly cranberry juice.

65.   Plaintiff purchased the Products for personal consumption and opted against buying less expensive juice products not represented like defendants'.

## CLASS ALLEGATIONS

66.   Defendants' labeling, advertising and packaging of the Products is false, misleading and deceptive and uniformly impacts consumers of its Products.

67.   The class is all consumers, in all states, who purchased any of the Products, at any time during the period within the applicable statute of limitations.

68.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as this case meets the criteria of Rule 23 of the F.R.C.P.

69.   The class is so numerous that joinder of all members, if otherwise permitted, is impracticable.  Plaintiff believes thousands of consumers are class members who have been damaged by defendants' practices.

70.   Questions of law or fact common to the class predominate and include whether:

> (a) Defendants are responsible for the conduct uniformly directed at all consumers who purchased the Products;
>
> (b) Whether the false and misleading labeling and omissions of material facts were likely to deceive reasonable consumers acting reasonably under the circumstances;
>
> (c) Whether plaintiff and class members are entitled to money damages under the same causes of action as other class members.

71.   Plaintiff is a member of the class, whose claims are typical of the claims of

each class member, in that every member was susceptible to the same deceptive, misleading conduct and purchased the Products.  Plaintiff is entitled to relief under the same causes of action as other class members.

72.     Plaintiff is an adequate class representative because his interests do not conflict with those of class members he seeks to represent.  Plaintiff's claims are common to all members of the class and plaintiff has a strong interest in vindicating his rights.

73.     Plaintiff has retained counsel competent and experienced in complex class action litigation of consumer protection issues and they intend to vigorously prosecute this action and adequately and fairly protect class members' interests.

74.     Defendants have acted in a manner generally applicable to the class, making the relief sought appropriate.  Separate actions by individual class members would create a risk of inconsistent adjudications.

75.     Common issues of law and fact predominate because no inquiry into individual conduct is necessary, only a focus on defendants' practices.

76.     Individual claims are modest compared with the expense of litigating them, making it impracticable and unduly burdensome to justify individual actions.

77.     The class is readily definable and ascertainable and will eliminate repetitious litigation in favor of expeditious and fair adjudication of claims.

## Causes of Action

### First – Violation of New York General Business Law § 349

78.     Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

79.     Defendants' acts or practices are material, not unique to the parties and have

a broader impact on the public and consumers.

80. Plaintiff and class members relied on defendants' representations that its Products were cold-pressed juice, fresh, were not heated or experienced an increase in temperature and not subjected to a process of pasteurization.

81. Plaintiff and class members relied on defendant Freshbev's representations that its Cranberry Apple products were predominantly made with cranberry juice.

82. Relying on these representations, plaintiff and class members paid more for the Products than they would have paid.

83. As a result, plaintiff and class members are entitled to monetary damages, injunctive relief, restitution, disgorgement of all monies obtained by the unlawful conduct, interest, and attorney's fees and costs.

## Second – Violation of New York General Business Law § 350

84. Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

85. Defendants' false advertising is material to consumers, not unique to the parties and has a broader impact on the public at large.

86. Plaintiff and class members relied on defendants' representations that its Products were cold-pressed juice, fresh, were not heated or experienced an increase in temperature and were unpasteurized.

87. Defendants failed to inform plaintiff and class members that its products were subjected to an additional and distinct production step after they were cold pressed. Through omission, defendants misled and deceived plaintiff and class members.

88. Plaintiff and class members relied on defendant Freshbev's representations

that its Cranberry Apple products were predominantly cranberry juice.

89.  As a result, plaintiff and class members are entitled to monetary damages, injunctive relief, restitution, disgorgement of all monies obtained by means of the unlawful conduct, interest, and attorney's fees and costs.

### Third – Fraud

(only directed to representations that Products are unpasteurized)

90.  Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

91.  The products are represented as unpasteurized, a material fact that is false.

92.  Defendant Freshbev knew its products were not unpasteurized since its managing member, M. Boissy, in recent patent applications, stated that "High pressure pasteurization ('HPP'), also known as high pressure processing and ultra-highpressure processing, [is] used to preserve foods and beverages by applying an elevated pressure," "HPP is used to pasteurize foods at elevated pressures" and that high pressure processing is "[A] method of pasteurizing a consumable material."

93.  The products are manufactured using the machines of the company Hiperbaric, S.A. ("Hiperbaric"), which describes high pressure processing as "cold pasteurization."

94.  Whole Foods, Inc., the parent corporation of defendant Whole Foods, provides forms to third-party vendors seeking to have their products carried by defendant Whole Foods, which include required disclosures of whether the products are manufactured through "high pressure pasteurization."

95.  Defendant Whole Foods knew Fresh Juice was not unpasteurized since many

of its stores have juice bars inside. The juice bars produce juice for customers and then affix a sticker with a warning label to the product, indicating it had not been pasteurized. These juices have a shelf-life of several days.

96. Defendant Whole Foods knew that representing its products as unpasteurized was false, since Fresh Juice does not contain a warning label, despite being labeled as unpasteurized. Defendant Whole Foods knew Fresh Juice was treated to reduce microorganisms and pathogens, since there could be no other explanation for why the products would have a shelf-life of up to six weeks.

97. Defendants' actions give rise to and support a strong inference of fraudulent intent.

98. Defendants intended to, and did deceive reasonable consumers by representing the products as unpasteurized, which was relied upon by plaintiff and class members, who paid a premium for the products and were injured.

99. As a result of defendants' fraud, plaintiff and class members are entitled to monetary damages, injunctive relief, restitution, disgorgement of all monies obtained by means of defendants' unlawful conduct, interest and costs.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, plaintiff, on behalf of himself and all others similarly situated, prays for judgment:

1. Declaring this a proper class action and certifying plaintiff as representative of the class;
2. Awarding monetary, including treble damages, pursuant to GBL §§ 349, 350, and punitive damages;

3. Awarding plaintiff and class members costs and expenses incurred, including reasonable allowance of fees for plaintiff's attorneys and experts; and

4. Such other and further relief as the Court may deem just and proper.

Dated:  June 22, 2017

              Respectfully Submitted,

              Levin-Epstein & Associates, P.C.

        By:  /s Joshua Levin-Epstein
            Joshua Levin-Epstein
            1 Penn Plaza, Suite 2527
            New York, NY 10119
            Tel: (212) 792-0046
            Fax: (212) 563-7108
            joshua@levinepstein.com

            *Counsel for Plaintiff*

            Sheehan & Associates, P.C.

        By:  /s Spencer Sheehan
            Spencer Sheehan
            891 Northern Blvd., Suite 201
            Great Neck, NY 11021
            Tel: (516) 303-0552
            Fax: (516) 234-7800
            spencer@spencersheehan.com

            *Counsel for Plaintiff*

1:16-cv-07119 (FB)(ST)
United States District Court
Eastern District of New York

Gerard Campbell, individually on behalf of himself and all others similarly situated,

          Plaintiff,

  - against -

Freshbev LLC and Whole Foods Market Group, Inc.,

          Defendants.

## Third Amended Complaint

**Levin-Epstein & Associates, P.C.**
1 Penn Plaza
Suite 2527
New York, NY 10119
Tel: (212) 792-0046
Fax: (212) 563-7108
joshua@levinepstein.com

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  June 22, 2017
        New York, New York

                                    /s Joshua Levin-Epstein
                                  Joshua Levin-Epstein