# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X      Civil Action No.
GERARD CAMPBELL, individually on behalf of himself
 and all others similarly situated,

                              Plaintiff,

                 - against -                                    **COMPLAINT**

DRINK DAILY GREENS, LLC,

                              Defendant.
------------------------------------------------------------------X

        Plaintiff GERARD CAMPBELL ("Plaintiff"), individually and on behalf of all others

similarly situated, by his attorneys, alleges the following upon information and belief, except for

those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

        1.      Plaintiff brings this action against DRINK DAILY GREENS, LLC

("Defendant") on behalf of himself and a class consisting of all consumers nationwide who

purchased any products of Defendant identified herein at any time during the applicable

statute of limitations period up to and including the present (the "Class Period").

## FACTS AND BACKGROUND

        2.      Defendant is a producer and seller of juices bearing the name "Daily

Greens."

        3.      Defendant produces at least two product lines, identified as "Green Juices"

and "Half Pints" (collectively, the "Products").

        4.      Defendant's Green Juices are available in various flavors and blends, with

the following names:  Harmony – Sweet Greens, Morning Greens – Orange + Probiotics,

Elevate – Smooth Greens, Renew – Hydrating Greens and Vitality – Spicy Greens.

5.     The Green Juices are sold in 12 ounce bottles.

6.     Defendant's Half Pint Juices are available in various flavors and blends, with the following names:  Dragon Power, Green Thing and Carrot Kick.

7.     The Half Pint Juices are sold in 8 ounce bottles.

8.     Defendant's Products are sold to consumers at traditional brick-and-mortar retail locations throughout the country.

9.     Defendant's Products are sold directly to consumers by Defendant from its website.

10.     The Products sold in retail locations are identical to those sold from Defendant's website.

11.     The Green Juices and the Half Pint Juices have similar packaging, labeling and advertising with respect to material information disclosed thereupon.

12.     Defendant represents that all Products are "Never heated to preserve freshness and nutritional value."

13.     Defendant represents that all Products are "High Pressure Processed."

14.     Defendant's website states that "High pressure processing (HPP) is an alternative to pasteurization."

15.     Defendant's website states that "High pressure applied to the outside of the bottle eliminates any harmful bacteria without ever heating the juice inside."

16.     Defendant's website states "Our product is not pasteurized, but it is pressurized through a unique technology known as high pressure processing (HPP)."

17.     Defendant's Products are manufactured by using cold-press juicers to hydraulically extract juice from the produce to which it is applied.

18.   The Products are then subjected to high pressure processing.

19.   To utilize high pressure processing, the juice bottles are loaded into a cylindrical pressure vessel.

20.   The cylinder is then loaded into a high-pressure chamber.

21.   Water is added to the cylindrical pressure vessel and the vessel is closed.

22.   The contents of the juice bottles are pressurized at levels up to 87,000 pounds per square inch ("psi") (600) megapascal ("MPa").

23.   Once the maximum required pressure is achieved, it is sustained for a specified period.

24.   The pressure is then increased to the processing target pressure.

25.   The product is held at the target pressure for 3 to 10 minutes.

26.   The pressure is applied uniformly in all directions simultaneously.

27.   The act of compression during this process increases the temperature of the products approximately 3 °C for every 100 MPa.

28.   This increase in temperature results in the juice products becoming hotter.

29.   After the pressure holding time, the pressure is released.

30.   Juices which undergo high pressure processing after being cold-pressed have a shelf life ranging from 30 to 45 days.

31.   Juices which are only produced through the use of a cold-press have a shelf-life from 72 to 96 hours.

32.   In the context of juice products, pasteurization is a processing method that is reasonably certain to achieve destruction or elimination of the most resistant microorganisms of public health significance within the juice product.

33.     Defendant's Products are pasteurized through the application of high pressure.

34.     As a result of being pasteurized through the application of high pressure, Defendant's Products are rendered safer for human consumption than if the Products were only cold-pressed.

35.     Pasteurization of juice products can be carried out by causing a direct increase of the temperature of a juice product such that it is reasonably certain to achieve destruction or elimination of the most resistant microorganisms of public health significance within the juice product.

36.     Consumers are not generally aware of methods of pasteurization which are not based on causing a direct increase in the temperature of the juice products.

37.     By describing their products as "never heated," Defendant is taking advantage of consumers who associate the absence of a process which causes a direct increase in temperature of the Products with the non-occurrence of pasteurization.

38.     By describing their products as "not pasteurized," Defendant is taking advantage of consumers who lack awareness of other methods of pasteurization which are not based on causing a direct increase in the temperature of the products.

39.     Where a juice product has not been pasteurized, it is required by law to bear a warning label informing the consumer of risks associated with its consumption.

40.     Defendant has knowledge that its Products are pasteurized since its products do not contain a warning label which would be required if its products were not pasteurized.

41.     Defendant's representations of its Products as never heated gives consumers

the impression its products are not pasteurized.

42.    Defendant does not inform consumers that by using high pressure processing, the temperature of its Products increases, and the Products are not, therefore, "never heated."

43.    Defendant labels their Products as "never heated" because consumers associate such a designation as indicative of a product which has not been pasteurized.

44.    As a result of being pasteurized through the application of high pressure, Defendant's Products are not consistent with the claims, representations and warranties provided by Defendant.

45.    Defendant presents the Products as cold-pressed yet does not disclose their Products are pasteurized and heated.

46.    Defendant's representations of its Products as not pasteurized and never heated imply that its Products contain a greater number of pathogenic microorganisms than they actually possess.

47.    Defendant does not inform consumers that by using high pressure processing, its Products are pasteurized and heated.

48.    Defendant markets their Products to the public as unpasteurized and not heated.

49.    Defendant labels their Products as unpasteurized and not heated because consumers associate such a designation as indicative of a product which has not been treated beyond being cold-pressed.

50.    Consumers seek out juice products that are not pasteurized because they desire a product that has been as minimally processed and treated as possible.

51.     Consumers pay a premium price for juice products that are not pasteurized due in part to its limited shelf-life.

52.     Consumers seek juice products which are not treated beyond being cold-pressed and therefore contain a greater number of pathogenic microorganisms.

53.     Consumers pay a premium price for unpasteurized and unheated juice because they desire a product that has been as minimally processed and treated as possible.

54.     By prolonging the expiration date of the product, high pressure processing can remove the volatility from a low-margin business, because entire batches of cold-pressed juices would no longer need to be discarded after three days.

55.     Defendant possesses superior knowledge vis-à-vis consumers of the processes by which its products are made.

56.     Consumers cannot discover the true nature of Defendant's Products from reading the labels on the Products.

57.     Consumers seek juice products which are not subjected to an increase in temperature as a result of the production process, beyond the initial cold-pressing of the juice.

58.     Defendant possesses superior knowledge vis-à-vis consumers of the processes by which its products are made.

59.     Consumers cannot discover the true nature of Defendant's Products from reading the labels on the Products.

## JURISDICTION and VENUE

60.     Jurisdiction is proper pursuant to 28 USC § 1332(d)(2).

61.     Upon information and belief, the aggregate amount in controversy is in

excess of $5,000,000.00, exclusive of interests and costs.

62.    This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of New York, contracts to supply goods within the State of New York, and supplies goods within the State of New York.

63.    Venue is proper because Plaintiff and many class members reside in the Eastern District of New York and Defendant has, at all relevant times, been doing business in the Eastern District of New York, and throughout the state.

64.    A substantial part of the events or omissions which give rise to the claims herein occurred in the Eastern District of New York.

## PARTIES

65.    Plaintiff is a citizen of the State of New York in the County of Kings.

66.    Defendant Drink Daily Greens, LLC is a limited liability company formed under the laws of Texas with its principal place of business in Austin, Texas.

67.    In August 2016, Plaintiff purchased a Product from Defendant in New York and paid a premium for the product because he saw and relied upon Defendant's website, product packaging, product labeling and product advertising, which stated the product was not pasteurized and never heated.

68.    Before purchasing the Product, Plaintiff saw and relied upon Defendant's website, product packaging, product labeling and product advertising, which failed to inform Plaintiff that the temperature of its product increases as a result of the production process.

69.    These representations and omissions were material to Plaintiff's decision to make the purchase and buy the product.

70.     Plaintiff purchased the Product for personal consumption.

71.     Plaintiff paid a premium for the Product and opted against buying less expensive juices not purported to be not pasteurized and never heated.

72.     Plaintiff paid no less than $4.99 for the Juice Product, excluding tax.

73.     As a result of purchasing the Product at a premium price in reliance on advertising and representations that are false, misleading and deceptive, and material omissions, Plaintiff and class members suffered an injury in fact.

74.     The members of the proposed class consist of men and women across the country who purchased the Products.

## SUBSTANTIVE ALLEGATIONS COMMON
## TO ALL CAUSES OF ACTION

75.     Defendant falsely advertises and misrepresents to its consumers, including Plaintiff and Class Members, through its Products' packaging, labeling and website, including Plaintiff and Class Members, that its Products are not pasteurized and never heated.

76.     These material misrepresentations, mislabeling and omissions induced Defendant's consumers, including Plaintiff and Class Members, to purchase the Products at a premium price.

77.     To their detriment, Plaintiff and Class Members relied on Defendant's false and misleading misrepresentations, mislabeling and omissions.

78.     Defendant's statements and practices are false, deceptive and misleading because the Products are not never heated and are pasteurized.

## CLASS ALLEGATIONS

79.     Plaintiff brings this matter on behalf of himself and those similarly situated.

As detailed in this complaint, Defendant orchestrated deceptive marketing and labeling practices. Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

80.     The class is defined as all consumers who purchased the Products at any time during the period within the applicable statute of limitations.

81.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy.

82.     Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members as described above who have been damaged by, inter alia, Defendant's deceptive and misleading practices.

83.     The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

    (a) Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased its Products;

    (b) Whether Defendant's misconduct set forth in this complaint demonstrates whether Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

    (c) Whether Defendant's false and misleading statements concerning its Products and its concealment of material facts regarding the Products were

likely to deceive reasonable consumers;

(d) Whether Plaintiff and the Class are entitled to injunctive relief; and

(e) Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

84.     Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member, in that, every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendants' Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

85.     Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent; his claims are common to all members of the Class and he has a strong interest in vindicating his rights; he has retained counsel competent and experienced in complex class action litigation and they intend to vigorously prosecute this action.  Plaintiff has no interests which conflict with those of the Class.  The Class Members' interests will be fairly and adequately protected by Plaintiff and his counsel.  Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members.  The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

86.     The Class is properly brought and should be maintained as a class action under Rule 23(b) because a class action is superior.  Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any other questions affecting only individual members of the class.  The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary, just a narrow focus on Defendant's

deceptive and misleading product marketing and labeling practices.

87.      A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

(a) The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

(b) The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive-if not totally impossible-to justify individual actions;

(c) When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

(d) This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of class claims;

(e) Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

(f) This class action assures uniformity of decisions among Class Members; and

(g) The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation.

**INJUNCTIVE CLASS RELIEF**

88.     Rules 23(b) (1), (2), and (3) contemplate a class action for purposes of seeking class-wide injunctive relief.  Here, Defendant has engaged in conduct resulting in misleading consumers about the methods and processes through which its Products have been produced.

89.     Because Defendant's conduct has been uniformly directed at all consumers nationwide, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendant's continuing misconduct.

90.     The injunctive class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy.

91.     Numerosity: Individual joinder of the injunctive class members would be wholly impracticable. Defendant's  products have been purchased by thousands of persons nationwide.

92.     Commonality: Questions of law and fact are common to members of the class.  Defendant's misconduct was uniformly directed at all consumers.   Thus, all members of the class have a common cause against Defendant to stop its misleading conduct through an injunction.   Because the issues presented by this injunctive class deal exclusively with Defendant's misconduct, resolution of these questions would be necessarily common to the entire class.

93.     Moreover, there are common questions of law and fact inherent in the resolution of an injunctive class, including, inter alia:

(a) Resolution of the issues presented  in the 23(b)(3) class;

(b) Whether members of the class will continue to suffer harm by virtue of

Defendant's deceptive product marketing and labeling; and

(c) Whether, on equitable grounds, Defendant should be prevented from continuing to provide false and misleading information on its Products and website;

(d) Whether, on equitable grounds, Defendant should be prevented from continuing to omit material information from its Products and website.

94.     Typicality: Plaintiff's claims are typical of the claims of the injunctive class because his claims arise from the same course of conduct (i.e. Defendant's deceptive and misleading product marketing, labeling, and practices). Plaintiff is a typical class representative, because, like all member of the injunctive class, he purchased Defendant's Products which were sold unfairly and deceptively to consumers nationwide.

95.     Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the injunctive class.  His consumer protection claims are common to all members of the injunctive class and he has a strong interest in vindicating his rights. In addition, Plaintiff and the Class are represented by counsel who is competent and experienced in both consumer protection and class action litigation.

96.     The injunctive class is properly brought and should be maintained as a class action under Rule 23(b) (2) because Plaintiff seeks injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive class. Certification under Rule 23(b)(2) is appropriate because Defendant has acted or refused to act in a manner that applies generally to the injunctive class (i.e., Defendant marketed the Products using the same misleading and deceptive product descriptions, through its website and through the

labeling on the products, to all of the Class Members). Any final injunctive relief or declaratory relief would benefit the entire injunctive class as Defendant would be prevented from continuing its misleading and deceptive product marketing practices and would be required to honestly disclose to consumers the true effects of the method of production by which its products are made and the accurate description of those production processes.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

Violation of New York GBL § 349

97.     Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

98.     Defendant represents through its website and on its Products that their products are never heated.

99.     Defendant's representations that its Products are never heated are not limited to conduct with respect to Plaintiff and has a broader impact on consumers at-large.

100.    Defendant's acts or practices are not unique to the parties.

101.    All consumers purchasing Defendant's products are subject to the same representations of Defendant.

102.    Defendant's acts or practices are consumer-oriented.

103.    Defendant's representations that its Products are never heated deceived the public into believing the temperature of its Products does not increase.

104.    Defendant's representations that its Products are never heated are likely to mislead a reasonable consumer acting reasonably under the circumstances.

105.   Defendant's representation that its Products are never heated is material because whether or not a product is heated effects a consumer's decision whether to purchase the product.

106.   Plaintiff observed the representations that the Products were never heated prior to purchasing the Products.

107.   Plaintiff relied upon Defendant's representations.

108.   As a result of Defendant's representation that its Products were never heated, Plaintiff paid more for the Products than he would have paid had he known that the Products were heated and experienced an increase in temperature as a result of the production process.

109.   As a result of Defendant's acts and practices, Plaintiff and class members are entitled to monetary damages, injunctive relief, restitution, disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorney's fees and costs.

## SECOND CAUSE OF ACTION

### Violation of New York GBL § 349

110.   Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

111.   Defendant represents that their products are not pasteurized.

112.   Defendant represent through their website and on the Products that their products are not pasteurized.

113.   Defendant's representations that its Products are not pasteurized is not limited to conduct with respect to Plaintiff and has a broader impact on consumers at-large.

114.   Defendant's acts or practices are not unique to the parties.

115.    All consumers purchasing Defendant's products are subject to the same representations of Defendant.

116.    Defendant's acts or practices are consumer-oriented.

117.    Defendant's representations that its Products are not pasteurized deceived the public into believing its Products were not treated in a way that is reasonably certain to achieve destruction or elimination of the most resistant microorganisms of public health significance that are likely to occur in the juice.

118.    Defendant's representations that its Products are not pasteurized is likely to mislead a reasonable consumer acting reasonably under the circumstances.

119.    Plaintiff relied upon Defendant's representations.

120.    Defendant's representations that its Products are not pasteurized is material because whether or not a product is pasteurized effects a consumer's decision whether to purchase the Products.

121.    Plaintiff observed the representations on the website of defendant and on the Product of defendant that the Product was not pasteurized prior to purchasing the Product.

122.    As a result of Defendant's representations that its Products were not pasteurized, Plaintiff paid more for the Product than he would have paid had he known that the Product was pasteurized.

123.    As a result of Defendant's acts and practices, Plaintiff and class members are entitled to monetary damages, injunctive relief, restitution, disgorgement of all monies obtained by means of defendants' unlawful conduct, interest, and attorney's fees and costs.

**THIRD CAUSE OF ACTION**

Violation of New York GBL § 349 by Omission

124.    Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

125.    Defendant fails to reveal that the temperature of its Products increase as a result of the production process on their website and on the Products.

126.    Defendant's failure to reveal that the temperature of its Products increases is not limited to conduct with respect to Plaintiff and has a broader impact on consumers at-large.

127.    Defendant's acts or practices are not unique to the parties.

128.    All consumers purchasing Defendant's Products are subject to the same omissions of Defendant.

129.    Defendant's acts or practices are consumer-oriented.

130.    Defendant's omissions that its Products are subjected to an increase in temperature deceived the public into believing its Products are never heated and do not experience a rise in temperature during the production process.

131.    Defendant's omissions that its Products are subjected to an increase in temperature are likely to mislead a reasonable consumer acting reasonably under the circumstances.

132.    Defendant's omissions that the temperature of its Products increase as a result of the production process is material because whether or not the Product is heated or experiences a rise in temperature effects a consumer's decision whether to purchase the product.

133.    Prior to purchasing the product, Plaintiff observed that the representations on the website of defendant and on the Product of defendant did not indicate the

temperatures of the product increased.

134.    Plaintiff relied upon Defendant's omissions.

135.    As a result of Defendant's omissions that the temperature of the Product did not increase and that the product was not heated, Plaintiff paid more for the Product than he would have paid had he known that the Product is heated and that its temperature increases during the production process.

136.    As a result of Defendant's acts and practices, Plaintiff and class members are entitled to monetary damages, injunctive relief, restitution, disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorney's fees and costs.

### FOURTH CAUSE OF ACTION

Violation of New York GBL § 350

137.    Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

138.    Defendant's Product labels and advertising on their website indicate their products are never heated.

139.    Defendant's labels and advertising that its Products are never heated is not limited to conduct with respect to Plaintiff and has a broader impact on consumers at-large.

140.    Defendant's labeling and advertising is not unique to the parties.

141.    All consumers purchasing Defendant's Products are subject to the same labels and advertising of defendant.

142.    Defendant's labeling and advertising of its Products is consumer-oriented.

143.    Defendant's representations in its labels and advertising that its Products are never heated deceived the public into believing the temperature of its Products does not

increase.

144.     Defendant's labels and advertising stating that its Products are never heated is likely to mislead a reasonable consumer acting reasonably under the circumstances.

145.     Defendant's labeling and advertising that its Products are not heated is material because whether or not a product experiences a rise in temperature during the production process affects a consumer's decision whether to purchase the Product.

146.     Plaintiff observed the labels and advertising on defendant's website indicating that the Products were never heated prior to purchasing the Product.

147.     Plaintiff relied on Defendant's labels and advertising.

148.     As a result of Defendant's labeling and advertising that its Products are never heated, Plaintiff paid more for the Products than he would have paid had he known that the products were heated and that its temperature increases as a result of the production process.

149.     As a result of Defendant's labeling and advertising, Plaintiff and class members are entitled to monetary damages, injunctive relief, restitution, disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorney's fees and costs.

## FIFTH CAUSE OF ACTION

Violation of New York GBL § 350

150.     Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

151.     Defendant's Product advertising on their website indicate their products are not pasteurized.

152.   Defendant's advertising that its Products are not pasteurized is not limited to conduct with respect to Plaintiff and has a broader impact on consumers at-large.

153.   Defendant's labeling and advertising is not unique to the parties.

154.   All consumers purchasing Defendant's Products are subject to the same labels and advertising of defendant.

155.   Defendant's labeling and advertising of its Products is consumer-oriented.

156.   Defendant's representations in its advertising on its website that its Products are not pasteurized deceived the public into believing its products were not treated in a way that is reasonably certain to achieve destruction or elimination of the most resistant microorganisms of public health significance that are likely to occur in the juice.

157.   Defendant's advertising that its Products are not pasteurized is likely to mislead a reasonable consumer acting reasonably under the circumstances.

158.   Defendant's advertising that its Products are not pasteurized is material because whether or not a Product is pasteurized effects a consumer's decision whether to purchase the Product.

159.   Plaintiff observed the advertising on defendant's website indicating that the Products were not pasteurized prior to purchasing the Product.

160.   Plaintiff relied on Defendant's advertising that its Products are not pasteurized.

161.   As a result of Defendant's advertising that its Products are not pasteurized, Plaintiff paid more for the Products than he would have paid had he known that the products

162.   As a result of Defendant's labeling and advertising, Plaintiff and class

members are entitled to monetary damages, injunctive relief, restitution, disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorney's fees and costs.

### SIXTH CAUSE OF ACTION

Violation of New York GBL § 350 by Omission

163.     Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

164.     Defendant's labels and advertising on their website fail to reveal that the temperature of its Products increase as a result of the production process.

165.     Defendant's labels, which fail to reveal that the temperature of its Products increase, is not limited to conduct with respect to Plaintiff and has a broader impact on consumers at-large.

166.     Defendant's labeling is not unique to the parties.

167.     All consumers purchasing Defendant's Products are subject to the same labels of Defendant.

168.     Defendant's labeling is consumer-oriented.

169.     Defendant's omissions that the temperature of their Products increase deceived the public into believing their Products are never heated.

170.     Defendant's omissions that the temperature of their Products increase is likely to mislead a reasonable consumer acting reasonably under the circumstances.

171.     Defendant's omissions that the temperature of their Products increase is material because whether or not the Product is heated effects a consumer's decision whether to purchase the Product.

172.     Plaintiff observed that the Product's labels and advertising did not indicate the temperatures of the products increase prior to purchasing the Product.

173.     Plaintiff relied on Defendant's labels and advertising.

174.     As a result of Defendant's omissions that the temperature of their Products did not increase, Plaintiff paid more for the Products than he would have paid had he known that the Products are heated.

175.     As a result of Defendant's labeling and advertising, Plaintiff and class members are entitled to monetary damages, injunctive relief, restitution, disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorney's fees and costs.

## SEVENTH CAUSE OF ACTION

### Fraud

176.     Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

177.     Defendant represents that the Products are not pasteurized and never heated.

178.     Defendant's representations that their Products are not pasteurized and never heated is material because whether or not a product is pasteurized and heated effects a consumer's decision whether to purchase the product.

179.     Defendant knew their representation that their Products were not pasteurized was false because Defendant did not include the applicable warning statement on its Products, which is required where a product is not pasteurized.

180.     Defendant's claims that its Products are never heated are inconsistent with the increase in temperature experienced by the Products during the production process.

181.    Defendant does not inform consumers that by using high pressure processing, its products experience an increase in temperature, become hotter and are heated.

182.    Defendant believed that since their products were not pasteurized through a process which caused a direct increase in their product's temperature, it could accurately claim their products are never heated.

183.    Defendant knew that their Products were subjected to an increase in temperature as a result of pasteurization through the application of high pressure, as opposed to an alternative pasteurization methods, which relies upon causing a direct increase in a product's temperature.

184.    Consumers are unlikely to be aware of pasteurization methods which are not based on causing a direct increase in the temperature of the products.

185.    Defendant's claims that its products are never heated are made to mislead consumers to believe its products are not pasteurized.

186.    Defendant intentionally represented that their Products were not pasteurized and never heated because consumers will pay a premium for products purporting to be unpasteurized and never heated.

187.    Plaintiff had reason to rely, and did rely, upon Defendant's representations that its Products were not pasteurized and never heated.

188.    Plaintiff suffered injury through payment of a premium price for Defendant's product as a result of Defendant's representations that their Products were not pasteurized and never heated.

189.    As a result of Defendant's fraud, Plaintiff and class members are entitled to

monetary damages, injunctive relief, restitution, disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorney's fees and costs.

## EIGHTH CAUSE OF ACTION

Breach of Express Warranty

190.    Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

191.    Defendant provided the Plaintiff and Class Members an express warranty in the form of written and oral affirmations of fact, on their website and on the Products, promising and representing that their Products are not pasteurized and never heated.

192.    The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

193.    These affirmations of fact became part of the basis for the bargain and were material to the transaction for the Plaintiff's and Class Members' transactions.

194.    Plaintiff and Class Members reasonably relied upon Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

195.    Upon information and belief, Defendant was given opportunities to cure its default but did not.

196.    Contrary to Defendant's affirmations of fact, Defendant breached the express warranty because the Products are pasteurized through the application of high pressure and subjected to an increase in temperature as a result of the production process and are not "never heated."

197.    As a result of the foregoing, Plaintiff and the Class Members have been

damaged in the amount paid for Defendant's products, together with interest thereon from the date of purchase.

## NINTH CAUSE OF ACTION

### Breach of Implied Warranty of Merchantability

198.   Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

199.   Defendant is in the business of manufacturing, producing, distributing, and selling juice.

200.   Under the Uniform Commercial Code's implied warranty of merchantability, Defendant warranted to Plaintiff and the Class Members that the Products are not pasteurized and never heated.

201.   Defendant breached the implied warranty of merchantability in that the Products are not unpasteurized and not in fact, "never heated."

202.   Defendant breached the implied warranty of merchantability in that the Products do not conform to the promises or affirmations of fact made on the Product containers or labels or literature.  Any reasonable consumer would not accept the product if they knew that the product is pasteurized and not in fact, "never heated."

203.   The inability of the product to meet the label description was wholly due to Defendant's fault and without Plaintiff's fault or neglect, and was solely due to the Defendant's manufacture and distribution of the Products to the public.

204.   As a result of the foregoing, Plaintiff and the Class Members have been damaged in the amount paid for the products, together with interest thereon from the date of purchase.

## TENTH CAUSE OF ACTION

Unjust Enrichment

205.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

206.    Plaintiff, on behalf of himself and consumers nationwide, brings a common law claim for unjust enrichment.

207.    Defendant's conduct violated, inter alia, New York General Business Law 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label or other thing, containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article, which to their knowledge is falsely described or indicated upon any such package, or vessel containing the same, or label thereupon, in any of the particulars specified.

208.    Defendant's unlawful conduct as described in this complaint, including but not limited to the representation of its Products as not pasteurized and never heated, allowed Defendant to knowingly realize substantial revenues from selling their Product at the expense, and to the detriment and/or impoverishment, of the Plaintiff and Class Members, and to Defendant's benefit and enrichment. Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

209.    Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendant for Products that were not as Defendant represented.

210.    Under common law principles of unjust enrichment, it is inequitable for

Defendant to retain the benefits conferred by Plaintiff and Class Members' overpayments.

211.    Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

JURY DEMAND

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment as follows:

1. Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

2. Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to correct their practices and to comply with the law;

3. Awarding monetary damages, including treble damages, pursuant to GBL § 349 and GBL § 350, and punitive damages;

4. Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

5. Granting such other and further relief as the Court may deem just and proper.

Dated: December 30, 2016

Respectfully Submitted,

Levin Epstein & Associates, P.C.

By:    /s Joshua Levin Epstein
Joshua Levin-Epstein, Esq.
Spencer Sheehan, Esq.
1 Penn Plaza
Suite 2527

New York, NY  10119
New York, NY  10119
Tel: (212) 792-0046
Fax: (212) 563-7108
Joshua@levinepstein.com

*Counsel for Plaintiff*

Sheehan & Associates, P.C.

By:    /s Spencer Sheehan
       Spencer Sheehan, Esq.
       891 Northern Blvd
       Suite 201
       Great Neck, NY  11021
       New York, NY  10119
       Tel: (516) 303-0552
       Fax: (516) 234-7800
       Spencer@spencersheehan.com

*Counsel for Plaintiff*