# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
GERARD CAMPBELL, individually on behalf of himself
and all others similarly situated,

                            Plaintiff,

             - against -

JAMBA, INC., and JAMBA JUICE COMPANY,

                            Defendants.
-------------------------------------------------------------------X

Civil Action No.

**COMPLAINT**

Plaintiff GERARD CAMPBELL ("Plaintiff"), individually and on behalf of all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

1.      Plaintiff brings this action against JAMBA, INC. ("Defendant Jamba") and JAMBA JUICE COMPANY ("Defendant Jamba Juice") (collectively, "Defendants") on behalf of himself and a class consisting of all consumers nationwide who purchased any products of Defendant identified herein at any time during the applicable statute of limitations period up to and including the present (the "Class Period").

## FACTS AND BACKGROUND

2.      Defendant Jamba, through its wholly-owned subsidiary Defendant Jamba Juice, owns and franchises restaurant retail stores under the name "Jamba Juice."

3.      Jamba Juice stores offer food and beverage products under its own name, including fruit smoothies, juices and salads.

4.      There are over eight hundred (800) Jamba Juice stores within the United States.

5.      Defendant Jamba produces and sells a product line of "cold pressed juices" in 12 ounce bottles (the "Juice Products").

6.      The Products are offered for sale in various flavors and blends, based on the fruits and vegetables used for the specific juices.

7.      The Products have similar packaging, labeling and advertising.

8.      Defendant Jamba represents that all Products are made with organic fruits and vegetables.

9.      Defendant Jamba represents that all Products are "never heated" during the course of production.

10.     The products state "Our juices are never heated."

11.     Defendants' juice products are manufactured by using cold-press juicers to hydraulically extract juice from the produce to which it is applied.

12.     The Juice Products are then subjected to high pressure processing, also known as high pressure pasteurization.

13.     To utilize high pressure processing, the juice bottles are loaded into a cylindrical pressure vessel.

14.     The cylinder is then loaded into a high-pressure chamber.

15.     Water is added to the cylindrical pressure vessel and the vessel is closed.

16.     The contents of the juice bottles are pressurized at levels up to 87,000 pounds per square inch ("psi") (600) megapascal ("MPa").

17.     Once the maximum required pressure is achieved, it is sustained for a specified period.

18.     The pressure is then increased to the processing target pressure.

19.     The product is held at the target pressure for 3 to 10 minutes.

20.     The pressure is applied uniformly in all directions simultaneously.

21.     The act of compression during this process increases the temperature of the juice products approximately 3 °C for every 100 MPa.

22.     This increase in temperature results in the juice products becoming hotter.

23.     After the pressure holding time, the pressure is released.

24.     Juices which are subject to pasteurization as a result of high pressure processing after being cold-pressed have a shelf life ranging from 30 to 45 days.

25.     Juices which are only produced through the use of a cold-press have a shelf-life from 72 to 96 hours.

26.     Pasteurization is a type of food processing in which the Products are treated in a way that is reasonably certain to achieve destruction or elimination of the most resistant microorganisms of public health significance within them.

27.     Defendants' Juice Products are pasteurized through the application of high pressure.

28.     As a result of being pasteurized through the application of high pressure, the Juice Products are rendered safer for human consumption than if the Juice Products were only cold-pressed.

29.     Other pasteurization methods for juice products include causing the direct increase of a product's temperature such that it is reasonably certain to achieve destruction or elimination of the most resistant microorganisms of public health significance within them.

30.     Consumers are not generally aware of methods of pasteurization which are

not based on causing a direct increase in the temperature of the products.

31. By describing their products as "never heated," defendants are taking advantage of consumers who associate the absence of heat with the absence of pasteurization.

32. Where a juice product has not been pasteurized, it is required by law to bear a warning label informing the consumer of risks associated with its consumption.

33. Defendants have knowledge that its Juice Products are pasteurized since its products do not contain a warning label which would be required if its products were not pasteurized.

34. Defendants' representations of its products as never heated gives consumers the impression its products are not pasteurized.

35. Defendants do not inform consumers that by using high pressure processing, the temperature of its products increases, and the products are not, therefore, "never heated."

36. Defendants label their products as not heated because consumers associate such a designation as indicative of a product which has not been treated beyond being cold-pressed.

37. As a result of being subjected to high pressure processing, Defendants' Products are not consistent with the claims, representations and warranties displayed on the Products.

38. Juice which is only cold-pressed is more expensive than juice which is subjected to a method of production and treatment in addition to being cold-pressed.

39. Consumers seek juice products which are not subjected to an increase in

temperature as a result of the production process, beyond the initial cold-pressing of the juice.

40.     Consumers pay a premium price for unheated juice because they desire a product that has been as minimally processed and treated as possible.

41.     By prolonging the expiration date of the product, high pressure processing can remove the volatility from a low-margin business, because entire batches of cold-pressed juices would no longer need to be discarded after three days.

42.     Defendants possess superior knowledge vis-à-vis consumers of the processes by which its products are made.

43.     Consumers cannot discover the true nature of Defendants' products from reading the labels on the Products.

### JURISDICTION and VENUE

44.     Jurisdiction is proper pursuant to 28 USC § 1332(d)(2).

45.     Upon information and belief, the aggregate amount in controversy is in excess of $5,000,000.00, exclusive of interests and costs.

46.     This Court has personal jurisdiction over defendants because Defendants conduct and transact business in the State of New York, contract to supply goods within the State of New York, and supply goods within the State of New York.

47.     Venue is proper because Plaintiff and many class members reside in the Eastern District of New York and Defendants have, at all relevant times, been doing business in the Eastern District of New York, and throughout the state.

48.     A substantial part of the events or omissions which give rise to the claims occurred in the Eastern District of New York.

## PARTIES

49.    Plaintiff is a citizen of the State of New York in the County of Kings.

50.    Defendant Jamba is a corporation formed under the laws of Delaware with its principal place of business in Frisco, Texas.

51.    Defendant Jamba Juice Company is a corporation formed under the laws of California.

52.    In August 2016, Plaintiff purchased a Juice Product from defendant Jamba in New York and paid a premium for the product because he saw and relied upon the product labeling, product advertising, and read the packaging which stated the product was "never heated."

53.    Before purchasing the Product, Plaintiff was exposed to Defendants' packaging and labeling, which failed to inform Plaintiff that the temperature of its product increase as a result of the production process.

54.    This representation and omission was material to Plaintiff's decision to make the purchase and buy the product at a premium.

55.    Plaintiff purchased the Juice Product for personal consumption.

56.    Plaintiff paid a premium for the Juice Product and opted against buying less expensive juices not purported to be never heated.

57.    Plaintiff paid no less than $5.49 for the Juice Product, excluding tax.

58.    As a result of purchasing the Juice Product at a premium price in reliance on advertising and representations that are false, misleading and deceptive, Plaintiff and class members suffered an injury in fact.

59.    The members of the proposed class consist of men and women across the

country who purchased the Juice Products.

## SUBSTANTIVE ALLEGATIONS COMMON
## TO ALL CAUSES OF ACTION

60.     Defendant Jamba falsely advertises and misrepresents to its consumers, including Plaintiff and Class Members, that its products are "never heated."

61.     Defendant Jamba falsely advertises and misrepresent to its consumers, including Plaintiff and Class Members, that its products are "never heated."

62.     These material misrepresentations and mislabeling induced Defendants' consumers, including Plaintiff and Class Members, to purchase the Juice Products at a premium price.

63.     To their detriment, Plaintiff and Class Members relied on Defendants' false and misleading misrepresentations and mislabeling.

64.     Defendants' statements are false and its practices are deceptive and misleading because the Products are heated.

65.     The Products are not, therefore, never heated.

## CLASS ALLEGATIONS

66.     Plaintiff brings this matter on behalf of himself and those similarly situated. As detailed in this complaint, defendants orchestrated deceptive marketing and labeling practices. Defendants' customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

67.     The class is defined as all consumers who purchased the Juice Products at any time during the period within the applicable statute of limitations.

68.     The Class is properly brought and should be maintained as a class action

under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy.

69.     Class Members are so numerous that joinder of all members is impracticable.   Plaintiff believes that there are thousands of consumers who are Class Members as described above who have been damaged by, inter alia, Defendants' deceptive and misleading practices.

70.     The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

(a) Whether Defendants are responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased its Products;

(b) Whether Defendants' misconduct set forth in this complaint demonstrates whether Defendants have engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

(c) Whether Defendants' false and misleading statements concerning its Products and its concealment of material facts regarding the Products were likely to deceive reasonable consumers;

(d) Whether Plaintiff and the Class are entitled to injunctive relief; and

(e) Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

71.     Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member, in that, every member of the Class was susceptible to the same

deceptive, misleading conduct and purchased Defendants' Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

72.     Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent; his claims are common to all members of the Class and he has a strong interest in vindicating his rights; he has retained counsel competent and experienced in complex class action litigation and they intend to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiff and his counsel. Defendants have acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

73.     The Class is properly brought and should be maintained as a class action under Rule 23(b) because a class action is superior. Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any other questions affecting only individual members of the class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary, just a narrow focus on Defendants' deceptive and misleading product marketing and labeling practices.

74.     A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

        (a) The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

(b) The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive-if not totally impossible-to justify individual actions;

(c) When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

(d) This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of class claims;

(e) Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

(f) This class action will assure uniformity of decisions among Class Members; and

(g) The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation.

## INJUNCTIVE CLASS RELIEF

75.     Rules 23(b) (1), (2), and (3) contemplate a class action for purposes of seeking class-wide injunctive relief. Here, Defendants have engaged in conduct resulting in misleading consumers about ingredients in the Products. Because Defendants' conduct has been uniformly directed at all consumers nationwide, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendants' continuing misconduct.

76.     The injunctive class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy.

77.     Numerosity: Individual joinder of the injunctive class members would be wholly impracticable. Defendants' products have been purchased by thousands of persons nationwide.

78.     Commonality: Questions of law and fact are common to members of the class.  Defendants' misconduct was uniformly directed at all consumers.  Thus, all members of the class have a common cause against Defendants' to stop its misleading conduct through an injunction.   Because the issues presented by this injunctive class deal exclusively with Defendants' misconduct, resolution of these questions would be necessarily common to the entire class.

79.     Moreover, there are common questions of law and fact inherent in the resolution of an injunctive class, including, inter alia:

(a) Resolution of the issues presented in the 23(b)(3) class;

(b) Whether members of the class will continue to suffer harm by virtue of Defendants' deceptive product marketing and labeling; and

(c) Whether, on equitable grounds, Defendants' should be prevented from continuing to omit material information from its labeling.

80.     Typicality:  Plaintiff's claims are typical of the claims of the injunctive class because his claims arise from the same course of conduct (i.e. Defendants' deceptive and misleading product marketing, labeling, and practices). Plaintiff is a typical class representative, because, like all member of the injunctive class, he purchased Defendants'

Products which were sold unfairly and deceptively to consumers nationwide.

81.    Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the injunctive class. His consumer protection claims are common to all members of the injunctive class and he has a strong interest in vindicating his rights. In addition, Plaintiff and the Class are represented by counsel who is competent and experienced in both consumer protection and class action litigation.

82.    The injunctive class is properly brought and should be maintained as a class action under Rule 23(b) (2) because Plaintiff seeks injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive class. Certification under Rule 23(b)(2) is appropriate because Defendants' have acted or refused to act in a manner that applies generally to the injunctive class (i.e., Defendants' have marketed the Products using the same misleading and deceptive product labeling to all of the Class Members). Any final injunctive relief or declaratory relief would benefit the entire injunctive class as Defendants' would be prevented from continuing its misleading and deceptive product marketing practices and would be required to honestly disclose to consumers the true effects of the method of production by which its products are made.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

Violation of New York GBL § 349

Against all defendants

83.    Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

84.    Defendants represent that their products are never heated.

85.   Defendants' representations that its Products are never heated are not limited to conduct with respect to Plaintiff and has a broader impact on consumers at-large.

86.   Defendants' acts or practices are not unique to the parties.

87.   All consumers purchasing Defendants' products are subject to the same representations of Defendants.

88.   Defendants' acts or practices are consumer-oriented.

89.   Defendants' representations that its Products are never heated deceived the public into believing the temperature of its Products does not increase.

90.   Defendants' representations that its Products are never heated are likely to mislead a reasonable consumer acting reasonably under the circumstances.

91.   Defendants' representation that its Products are never heated is material because whether or not a product is heated effects a consumer's decision whether to purchase the product.

92.   Plaintiff observed the representations that the Products were never heated prior to purchasing the Products.

93.   Plaintiff relied upon Defendants' representations.

94.   As a result of Defendants' representation that its Products were never heated, Plaintiff paid more for the Products than he would have paid had he known that the Products were heated.

95.   As a result of Defendants' acts and practices, Plaintiff and class members are entitled to monetary damages, injunctive relief, restitution, disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorney's fees and costs.

**SECOND CAUSE OF ACTION**

Violation of New York GBL § 349 by Omission

Against all defendants

96.     Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

97.     Defendants fail to reveal that the temperature of its Products increase as a result of the production process.

98.     Defendants' failure to reveal that the temperature of its Products increases is not limited to conduct with respect to Plaintiff and has a broader impact on consumers at-large.

99.     Defendants' acts or practices are not unique to the parties.

100.    All consumers purchasing Defendants' Products are subject to the same omissions of Defendants.

101.    Defendants' acts or practices are consumer-oriented.

102.    Defendants' omissions that its Products are subjected to an increase in temperature deceived the public into believing its Products are never heated.

103.    Defendants' omissions that its Products are subjected to an increase in temperature are likely to mislead a reasonable consumer acting reasonably under the circumstances.

104.    Defendants' omissions that the temperature of its Products increase is material because whether or not the Product is heated affects a consumer's decision whether to purchase the product.

105.    Plaintiff observed that the Product did not indicate the temperatures of the product increaseS prior to purchasing the Products.

106.    Plaintiff relied upon Defendants' omissions.

107.    As a result of Defendants' omissions that the temperature of the Product did not increase, Plaintiff paid more for the Product than he would have paid had he known that the Product is heated.

108.    As a result of Defendants' omissions that the temperature of their Products did not increase, Plaintiff paid more for the Product than he would have paid had he known that the Product is heated.

## THIRD CAUSE OF ACTION

Violation of New York GBL § 350

Against all defendants

109.    Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

110.    Defendants' labels indicate that their Products are never heated.

111.    Defendants' labels that its Products are never heated is not limited to conduct with respect to Plaintiff and has a broader impact on consumers at-large.

112.    Defendants' labeling is not unique to the parties.

113.    All consumers purchasing Defendants' Products are subject to the same labels of defendants.

114.    Defendants' labeling is consumer-oriented.

115.    Defendants' representations that its Products are never heated deceived the public into believing the temperature of its Products does not increase.

116.    Defendants' labels stating that its Products are never heated is likely to mislead a reasonable consumer acting reasonably under the circumstances.

117.    Defendants' labeling that its Products are not heated is material because whether or not a product is heated effects a consumer's decision whether to purchase the Product.

118.    Plaintiff observed the labels indicating that the Products were never heated prior to purchasing the Product.

119.    Plaintiff relied on Defendants' labels.

120.    As a result of Defendants' labeling that its Products are never heated, Plaintiff paid more for the Products than he would have paid had he known that the products were heated.

121.    As a result of Defendants' labeling, Plaintiff and class members are entitled to monetary damages, injunctive relief, restitution, disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorney's fees and costs.

## FOURTH CAUSE OF ACTION

### Violation of New York GBL § 350 by Omission

### Against all defendants

122.    Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

123.    Defendants' labels fail to reveal that the temperature of its Products increase as a result of the production process.

124.    Defendants' labels, which fail to reveal that the temperature of its Products increase, is not limited to conduct with respect to Plaintiff and has a broader impact on consumers at-large.

125.    Defendants' labeling is not unique to the parties.

126.    All consumers purchasing Defendants' Products are subject to the same labels of Defendants.

127.    Defendants' labeling is consumer-oriented.

128.    Defendants' omissions that the temperature of their Products increase deceived the public into believing their Products are never heated.

129.    Defendants' omissions that the temperature of their Products increase is likely to mislead a reasonable consumer acting reasonably under the circumstances.

130.    Defendants' omissions that the temperature of their Products increase is material because whether or not the Product is heated effects a consumer's decision whether to purchase the Product.

131.    Plaintiff observed that the Products did not indicate the temperatures of the products increase prior to purchasing the Product.

132.    Plaintiff relied on Defendants' labels.

133.    As a result of Defendants' omissions that the temperature of their Products did not increase, Plaintiff paid more for the Products than he would have paid had he known that the Products are heated.

134.    As a result of Defendants' labeling, Plaintiff and class members are entitled to monetary damages, injunctive relief, restitution, disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorney's fees and costs.

### FIFTH CAUSE OF ACTION

Fraud

Against all defendants

135.    Plaintiff repeats and realleges each and every allegation contained in all

foregoing paragraphs as if fully set forth herein.

136. Defendants represent that the Products are never heated.

137. Defendants' representations that their Products are never heated is material because whether or not a product is heated effects a consumer's decision whether to purchase the product.

138. Defendants' claims that its Products are never heated are inconsistent with the increase in temperature experienced by the Products during the production process.

139. Defendants knew that their Products were subjected to an increase in temperature as a result of pasteurization through the application of high pressure, as opposed to an alternative pasteurization method, which relies upon causing a direct increase in a product's temperature.

140. Consumers are unlikely to be aware of pasteurization methods which are not based on causing a direct increase in the temperature of the products.

141. Defendants' claims that its products are never heated are made to mislead consumers to believe its products are not pasteurized.

142. Nevertheless, since pasteurization as a result of the application of high pressure causes an increase in the products' temperature, defendants' statements are false.

143. Where a juice product has not been pasteurized, it is required by law to bear a warning label informing the consumer of risks associated with its consumption.

144. Defendants have knowledge that its Juice Products are pasteurized since its products do not contain a warning label which would be required if its products were not pasteurized.

145. Defendants do not inform consumers that by using high pressure processing,

its products are heated.

146.    Defendants believed that since their products were not pasteurized through a process which caused a direct increase in their product's temperature, it could accurately claim the products are never heated.

147.    Defendants intentionally represented that their Products as never heated because consumers will pay a premium for products not subjected to an increase in temperature as a result of the production process, beyond the initial cold-pressing of the product.

148.    Plaintiff had reason to rely upon Defendants' representations that its Products were never heated.

149.    Plaintiff suffered injuries as a result of Defendants' representations that their Products were never heated.

150.    As a result of Defendants' fraud, Plaintiff and class members are entitled to monetary damages, injunctive relief, restitution, disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorney's fees and costs.

## EIGHTH CAUSE OF ACTION

Breach of Express Warranty

Against all defendants

151.    Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

152.    Defendants provided the Plaintiff and Class Members an express warranty in the form of written and oral affirmations of fact promising and representing that their Products are never heated.

153.    The above affirmation of fact was not couched as "belief" or "opinion," and was not a "generalized statement of quality not capable of proof or disproof."

154.    This affirmation of fact became part of the basis for the bargain and was material to the transaction for the Plaintiff's and Class Members' transactions.

155.    Plaintiff and Class Members reasonably relied upon Defendants' affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendants' Products.

156.    Upon information and belief, Defendants were given opportunities to cure its default but refused to do so.

157.    Contrary to Defendants' affirmations of fact, Defendants breached the express warranty because the Products are subjected to an increase in temperature as a result of the production process and are not "never heated."

158.    As a result of the foregoing, Plaintiff and the Class Members have been damaged in the amount paid for Defendants' products, together with interest thereon from the date of purchase.

## NINTH CAUSE OF ACTION

Breach of Implied Warranty of Merchantability

Against all defendants

159.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

160.    Defendants are in the business of manufacturing, producing, distributing, and selling juice.

161.    Under the Uniform Commercial Code's implied warranty of

merchantability, Defendants warranted to the Plaintiff and the Class Members that the Products are never heated.

162.    Defendants breached the implied warranty of merchantability in that the Products are not "never heated."

163.    Defendants breached the implied warranty of merchantability in that the Products do not conform to the promises or affirmations of fact made on the Product containers or labels or literature. Any reasonable consumer would not accept the product if they knew that the product is not "never heated."

164.    The inability of the product to meet the label description was wholly due to the Defendants' fault and without Plaintiff's fault or neglect, and was solely due to the Defendants' manufacture and distribution of the Products to the public.

165.    As a result of the foregoing, Plaintiff and the Class Members have been damaged in the amount paid for Defendants' products, together with interest thereon from the date of purchase.

## TENTH CAUSE OF ACTION

### Unjust Enrichment

### Against all defendants

166.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

167.    Plaintiff, on behalf of himself and consumers nationwide, brings a common law claim for unjust enrichment.

168.    Defendants' conduct violated, inter alia, New York General Business Law 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label or

other thing, containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article, which to their knowledge is falsely described or indicated upon any such package, or vessel containing the same, or label thereupon, in any of the particulars specified.

169.    Defendants' unlawful conduct as described in this complaint allowed Defendants to knowingly realize substantial revenues from selling their Product at the expense, and to the detriment and/or impoverishment, of the Plaintiff and Class Members, and to Defendants' benefit and enrichment. Defendants have thereby violated fundamental principles of justice, equity, and good conscience.

170.    Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendants for Products that were not as Defendants represented.

171.    Under common law principles of unjust enrichment, it is inequitable for Defendants to retain the benefits conferred by Plaintiff and Class Members' overpayments.

172.    Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

JURY DEMAND

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment as follows:

1. Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

2. Entering preliminary and permanent injunctive relief against defendants, directing defendants to correct their practices and to comply with the law;

3. Awarding monetary damages, including treble damages, pursuant to GBL § 349 and GBL § 350, and punitive damages;

4. Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff s attorneys and experts, and reimbursement of Plaintiff s expenses; and

5. Granting such other and further relief as the Court may deem just and proper.

Dated: December 27, 2016

Respectfully Submitted,

Levin Epstein & Associates, P.C.

By:     /s Joshua Levin Epstein
Joshua Levin-Epstein, Esq.
Spencer Sheehan, Esq.
1 Penn Plaza
Suite 2527
New York, NY  10119
New York, NY  10119
Tel: (212) 792-0046
Fax: (212) 563-7108
Joshua@levinepstein.com

*Counsel for Plaintiff*

Sheehan & Associates, P.C.

By:     /s Spencer Sheehan
Spencer Sheehan, Esq.
891 Northern Blvd
Suite 201
Great Neck, NY  11021

New York, NY  10119
Tel: (516) 303-0552
Fax: (516) 234-7800
Spencer@spencersheehan.com

*Counsel for Plaintiff*