UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

GERARD CAMPBELL, individually on behalf of
himself and all others similarly situated,

          :

     Plaintiff,     :  Civ. Action No. 1:16-cv-07119 (FB)

          :

   - against -    :  **ORAL ARGUMENT REQUESTED**

          :

FRESHBEV LLC and WHOLE FOODS MARKET :
GROUP, INC.,

          :

     Defendants.

          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

GREENBERG TRAURIG, LLP
Met Life Building
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

*Attorneys for Defendants*
*Freshbev LLC and*
*Whole Foods Market Group, Inc.*

## TABLE OF CONTENTS

Page

Preliminary Statement ................................................................................................... 1

STATEMENT OF RELEVANT FACTS .......................................................................... 4

    A.    Procedural Background .......................................................................... 4

    B.    Plaintiff's Third Amended Complaint ................................................... 5

ARGUMENT ................................................................................................................... 7

THE APPLICABLE LEGAL STANDARD ...................................................................... 7

POINT I:    PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF ............ 8

    A.    The Required Elements for Plaintiff's Fraud Claims ............................ 8

    B.    Plaintiff Does Not Plausibly Allege that the Products are Pasteurized ............... 10

    C.    Plaintiff Does Not Plausibly Allege that the Representation
of "Cold Pressed" on the Products is False or Deceptive ...................... 12

    D.    Plaintiff Does Not Plausibly Allege that the Use of
"Fresh" on the Products is Deceptive and Misleading ......................... 14

    E.    Plaintiff Does Not Plausibly Allege that Defendants Misrepresented
Northeast Blend Cranberry Apple  As "Predominantly Cranberry Juice" ........... 15

    F.    Plaintiff Does Not Plausibly Allege that the
Purported Misrepresentations Caused Him Actual Harm ...................... 17

    G.    Plaintiff's Fraud Claims Fail to State a Claim ..................................... 18

POINT II:    THE COURT LACKS PERSONAL JURISDICTION OVER
DEFENDANTS WITH RESPECT TO THE CLAIMS OF ABSENT
CLASS MEMBERS WHO HAVE NO CONNECTION TO NEW YORK ........ 20

POINT III:    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER
PLAINTIFF'S CLAIMS DUE TO LACK OF STANDING ............................... 21

    A.    Plaintiff's Nationwide Class Action Allegations Should Be Stricken ................. 21

    B.    Plaintiff Lacks Article III Standing to Assert
His Fraud-Based Claims Against Whole Foods ................................... 22

POINT IV:    PLAINTIFF'S "PASTEURIZATION" CLAIMS
ARE PREEMPTED BY FEDERAL LAW ......................................................... 23

CONCLUSION ............................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### Federal Cases

*5-Star Management, Inc. v. Rogers*,
  940 F. Supp. 512 (E.D.N.Y. 1996) ..................................................................2, 10

*Abraham v. American Home Mortgage Serv., Inc.*,
  947 F. Supp. 2d 222 (E.D.N.Y. 2013) ...................................................................18

*Arar v. Ashcroft*,
  532 F.3d 157 (2d Cir. 2008)..................................................................................21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................................7, 8

*B&M Linen, Corp. v. Kannegiesser, USA, Corp.*,
  679 F. Supp. 2d 474 (S.D.N.Y. 2010)................................................................9-10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................................................7, 8

*Bildstein v. MasterCard Int'l Inc.*,
  329 F. Supp. 2d 410 (S.D.N.Y. 2004).....................................................................9

*Bowring v. Sapporo U.S.A., Inc.*,
  16-CV-1858, 2017 WL 902151 (E.D.N.Y. Feb. 10, 2017) ...................... 7, 12-13, 16

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cty.*,
  137 S. Ct. 1773 (June 19, 2017)......................................................................20-21

*Capital Cities Cable, Inc. v. Crisp*,
  467 U.S. 691 (1984)............................................................................................24

*Coca-Cola Co. v. Tropicana Prods., Inc.*,
  690 F.2d 312 (2d Cir. 1982), *superseded by statute on other grounds, as
  recognized in Johnson & Johnson v. GAC Int'l, Inc.*,
  862 F.2d 975 (2d Cir. 1988)................................................................................24

*Cohen v. Hertz Corp.*,
  No. 13 Civ. 1205, 2013 WL 9450421 (S.D.N.Y. Nov. 26, 2013) ...........................17

*Degelmann v. Advanced Med. Optics, Inc.*,
  659 F.3d 835 (9th Cir. 2011), *vacated pursuant to settlement
  and voluntary dismissal of appeal*, 699 F.3d 1103 (9th Cir. 2012) ........................24

*Dimond v. Darden Rests., Inc.*,
    No. 13 Civ. 5244, 2014 WL 3377105 (S.D.N.Y. Jul. 9, 2014) ..................................9

*Ellis v. Tribune Television Co.*,
    443 F.3d 71 (2d Cir. 2006)..................................................................................25

*Fermin v. Pfizer Inc.*,
    No. 15 CV 2133, 2016 WL 6208291 (E.D.N.Y. Oct. 18, 2016 ) ....................16-17

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*,
    458 U.S. 141 (1982)............................................................................................23

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013)..........................................................................15, 18

*Fink v. Time Warner Cable*,
    810 F. Supp. 2d 633 (S.D.N.Y. 2011)................................................................14

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
    528 U.S. 167 (2000)............................................................................................22

*Grocery Mfrs. of Am., Inc. v. Gerace*,
    755 F.2d 993 (2d Cir. 1985)..........................................................................23-24

*Ibarrola v. Kind, LLC*,
    83 F. Supp. 3d 751 (N.D. Ill. 2015) ...................................................................13

*Lewis v. Casey*,
    518 U.S. 343 (1997)............................................................................................21

*Lipton v. Nature Co.*,
    71 F.3d 464 (2d Cir. 1995).................................................................................14

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)......................................................................................21, 22

*Manchouck v. Mondelez Int'l Inc.*,
    No. 13-02148, 2013 WL 5400285 (N.D. Cal. Sept. 26, 2013),
    *aff'd*, 603 Fed. App'x 632 (9th Cir. 2015) ...................................................13-14

*McKinniss v. Sunny Delight Beverages Co.*,
    No. 07-02034, 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) .........................13, 16

*Nasik Breeding & Res. Farm, Ltd. v. Merck & Co.*,
    165 F. Supp. 2d 514 (S.D.N.Y. 2001)............................................................14-15

*Nelson v. MillerCoors, LLC*,
    15-CV-7082, 2017 WL 1403343 (E.D.N.Y. Mar. 31, 2017)...........................8, 9, 12

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016)..............................................................23

*Nomination Di Antonio E Paolo Gensini, S.N.C. v. H.E.R. Accessories Ltd.*,
  No. 07 Civ. 6959, 2010 WL 4968072 (S.D.N.Y. Dec. 6, 2010).....................8

*NRDC v. Johnson*,
  461 F.3d 164 (2d Cir. 2006)..............................................................21

*Orlander v. Staples*,
  802 F.3d 289 (2d Cir. 2015)................................................................8

*Oscar v. BMW North Am., LLC*,
  No. 09 Civ. 11, 2012 WL 2359964 (S.D.N.Y. June 19, 2012)......................17

*In re Packaged Ice Antitrust Litig.*,
  779 F. Supp. 2d 642 (E.D. Mich. 2011)................................................22

*Parks v. Dick's Sporting Goods, Inc.*,
  No. 05-CV-6590, 2006 WL 170447 (W.D.N.Y. June 15, 2006).....................22

*Pelman v. McDonalds Corp.*,
  237 F. Supp. 2d 512 (S.D.N.Y. 2003)....................................................9

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*,
  653 F.3d 241 (3d Cir. 2011)..........................................................13, 16

*Raines v. Byrd*,
  521 U.S. 811 (1997).......................................................................21

*Richardson-Holness v. Alexander*,
  161 F. Supp. 3d 170 (E.D.N.Y. 2015) ................................................7-8

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004)..............................................................10

*Rothman v. Gregor*,
  220 F.3d 81 (2d Cir. 2000).............................................................2, 10

*S.Q.K.F.C. v. Bell Atlantic Triton Leasing Corp.*,
  84 F.3d 629 (2d Cir. 1996).................................................................9

*Serrano v. Cablevision Sys. Corp.*,
  863 F. Supp. 2d 157 (E.D.N.Y. 2012) ..............................................16-17

*Shipping Fin. Servs. Corp. v. Drakos*,
  140 F.3d 129 (2d Cir. 1998)..............................................................21

iv

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ................................................................22

*Veal v. Citrus World, Inc.*,
  No. 12-801, 2013 WL 120761 (N.D. Ala. Jan. 8, 2013).......................13

*Wisconsin Elec. Power Co. v. Reilly*,
  893 F.2d 901 (7th Cir. 1990) .........................................................24

*Workman v. Plum, Inc.*,
  141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015) ..................................16

**State Cases**

*Andre Strishak & Assoc., P.C. v. Hewlett Packard Co.*,
  300 A.D.2d 608, 752 N.Y.S.2d 400 (2d Dep't 2002) .......................9, 19

*Baron v. Pfizer, Inc.*,
  42 A.D.3d 627, 840 N.Y.S.2d 445 (2007) ....................................18-19

*Donahue v. Ferolito, Vultaggio & Sons*,
  13 A.D.3d 77, 786 N.Y.S.2d 153 (1st Dep't 2004) ........................17, 19

*Gale v. IBM Corp.*,
  781 N.Y.S.2d 45, 9 A.D.3d 446 (2d Dep't 2004) ..............................17

*Gershon v. Hertz Corp.*,
  215 A.D.2d 202, 626 N.Y.S.2d 80 (1st Dep't 1995) ..........................17

*Gomez-Jimenez v. New York Law School*,
  956 N.Y.S.2d 54 (2012)................................................................13

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
  85 N.Y.2d 20 (1995) ...................................................................18

*Small v. Lorillard Tobacco Co.*,
  679 N.Y.S.2d 593 (1st Dep't 1998), *aff'd*, 94 N.Y.2d 43 (1999) ....................................13, 19

**Statutes**

21 C.F.R. § 101.95 ........................................................................14

21 C.F.R. § 101.95(a) ....................................................................14

21 C.F.R. § 131.3(b) ......................................................................11

21 C.F.R. § 133.3(d) ......................................................................11

21 C.F.R. § 146.140 .......................................................................11

v

Fed. R. Civ. P. 9(b) ..................................................................................................10

Fed. R. Civ. P. 12(b)(1)..........................................................................................1, 21

Fed. R. Civ. P. 12(b)(2)........................................................................................1, 4, 21

Fed. R. Civ. P. 12(b)(6)........................................................................................1, 4, 18

N.Y. Gen. Bus. L. § 349 ..................................................................................... passim

N.Y. Gen. Bus. L. § 350 ..................................................................................... passim

## Other Authorities

Collins English Dictionary (2017 ed.) (accessed July 21, 2017), *available at*
    https://www.collinsdictionary.com/dictionary/english/pasteurization ....................................11

FDA Juice HACCP Guidance............................................................................... 10-11

1 McLaughlin on Class Actions § 4:28 (13th ed. 2016) ..........................................21-22

Merriam-Webster Dictionary (accessed July 21, 2017), *available at*
    https://www.merriam-webster.com/dictionary/pasteurization...................................11

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
GERARD CAMPBELL, individually on behalf of
himself and all others similarly situated,                            :

                    Plaintiff,          :          Civ. Action No. 1:16-cv-07119 (FB)

                           :

        - against -                             :          **ORAL ARGUMENT REQUESTED**

                           :

FRESHBEV LLC and WHOLE FOODS MARKET    :
GROUP, INC.,
                           :

               Defendants.          :

                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

Defendants Freshbev LLC ("Freshbev") and Whole Foods Market Group, Inc. ( "Whole

Foods") (collectively, the "Defendants"), by their attorneys, Greenberg Traurig, LLP,

respectfully submit this memorandum of law in support of their motion, pursuant to Rules

12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiff's

Third Amended Complaint (the "TAC") for lack of subject matter jurisdiction, lack of personal

jurisdiction, and failure to state a claim upon which relief can be granted.[1]

### Preliminary Statement

Plaintiff Gerald Campbell ("Plaintiff") is a serial plaintiff who in late December 2016

filed this and two similar federal actions against other juice manufacturers, alleging, in all three

cases, that he was misled by the defendants' labeling statements on juice products treated by high

---

[1] A true and correct copy of the TAC is annexed as Exhibit ("Ex.") A to the accompanying Declaration of Timothy
E. Di Domenico, dated August 14, 2017 (the "Di Domenico Decl.").

pressure processing ("HPP") that the products were "unpasteurized" and/or "never heated."[2]  In all three cases, Plaintiff claimed that he paid a "premium" for the products and would not have purchased them absent the alleged misrepresentations.  In each action, Plaintiff alleged violations of Sections 349 and 350 of New York's General Business Law ("GBL") and common law fraud, among other claims.

Here, Plaintiff alleges he was misled by deceptive labeling statements in exactly the same way that he allegedly was misled two months earlier by some of the same labeling statements on other juice products made by different manufacturers and purchased at other stores.  Plaintiff's claims thus would require the inference that he was unaware of the "truth" about HPP, pasteurization, or cold-pressing when he purchased the juice beverages at issue two months later, and that he purchased them unknowingly. Simply put, this is implausible.

Adding a further layer of implausibility to Plaintiff's claims is the fact that in each of four successive pleadings, Plaintiff has expanded on his list of labeling statements that he claims were "misleading" and upon which he purportedly "relied." In the TAC, Plaintiff alleges that he purchased three Freshbev juices at a Whole Foods store and was misled by false and deceptive labels stating that the Freshbev juices were "unpasteurized," "never heated," "fresh," and "cold-pressed."  In addition, he alleges for the first time in his fourth at-bat in this case that he was misled by the appearance of the word "Cranberry" before "Apple" on the Ripe Craft 12.2 "Northeast Blend Cranberry Apple" juice blend product that he purchased.  According to Plaintiff, the placement of those two words falsely suggested to him that cranberry juice is the

---

[2] The Court can take judicial notice of two other cases filed by Plaintiff, captioned *Campbell v. Drink Daily Greens, LLC*, No. 16-cv-07176 (E.D.N.Y.) (the "DDG Action") and *Campbell v. Jamba Juice, Inc. and Jamba Juice Co.*, No. 16-cv-09993-VM (S.D.N.Y.) (the "Jamba Juice Action") (collectively, the "Other Campbell Juice Actions"). *See Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of complaint as public record); *5-Star Management, Inc. v. Rogers*, 940 F. Supp. 512, 518 (E.D.N.Y. 1996) (taking judicial notice of pleadings in other lawsuits attached to defendants' motion to dismiss). True and correct copies of Plaintiff's complaints in the Other Campbell Juice Actions are annexed as Exhibits B-C, respectively, to the Di Domenico Declaration.

predominant juice in Northeast Blend Cranberry Apple, even though the ingredient statement on the same label states that apple juice is the predominant juice. Plaintiff also claims that, but for that alleged misrepresentation, he would not have paid the price he paid for this product.

The TAC must be dismissed for several reasons. *First*, Plaintiff's claims are implausible because, as with the allegation of reliance, they are based on alleged misrepresentations that are not misrepresentations at all. As shown below, the Freshbev juices at issue are <u>not</u> pasteurized or heat-treated. To the contrary, Defendants' statements that they are unpasteurized and "never heated" are truthful and accurate. Plaintiff's description of HPP (a high pressure pathogen treatment process) as "pasteurization" is out of whole cloth and in conflict with the U.S. Food and Drug Administration's ("FDA") guidelines and regulations, which clearly define pasteurization as a <u>thermal</u> process. Similarly, Plaintiff's claim that he did not understand that the juices at issue were treated by HPP, in addition to being cold-pressed, is belied by the product labels, which expressly state that the products are subjected to "high pressure." This was clear to any reasonable consumer of ordinary intelligence. Plaintiff's claim regarding the use on the labels of the term "fresh" is also implausible because this term complies with federal regulations, does not describe the products in a way suggesting that they are unprocessed or untreated, and is, at most, mere puffery, which is not actionable. Finally, Plaintiff cannot plausibly claim that he was misled by the brand name "Northeast Blend Cranberry Apple." Indeed, it is telling that Plaintiff did not assert this claim in any of his three prior pleadings in this case. Regardless, a reasonable consumer of ordinary intelligence could not have been misled by the product name, which includes the words "Blend" and "Apple," or by the label, which, as Plaintiff concedes, lists "apple juice" as the predominant juice in the ingredient list. For all of

these reasons, Plaintiff's theories are implausible, and they fail to state a claim as a matter of law pursuant to Rule 12(b)(6).

*Second,* the Court lacks specific personal jurisdiction over the claims asserted on behalf of purchasers in other states, and those claims therefore should be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction.

*Third*, the Court lacks subject matter jurisdiction over Whole Foods because Plaintiff lacks Article III standing as he fails to allege any specific wrongdoing by Whole Foods. Plaintiff also lacks standing to seek injunctive relief because, given his allegations in this case, he now knows the purported "truth" regarding Defendants' representations on the labels and is in no danger of future injury.

*Fourth,* Plaintiff's inventive definition of pasteurization conflicts with FDA guidelines and regulations, and Plaintiff's claims in that regard are, accordingly, pre-empted by federal law. Alternatively, the Court should stay or dismiss those claims pursuant to the doctrine of primary jurisdiction.

## STATEMENT OF RELEVANT FACTS

### A.   Procedural Background

Plaintiff's initial complaint alleged ten causes of action against Defendants and former defendant Whole Foods Market, Inc. ("WFMI"), including several claims brought under GBL Sections 349 and 350, and claims for unjust enrichment, breach of express warranty, breach of the implied warranty of merchantability, and common law fraud based on Defendants' alleged misrepresentations that the juice products at issue were unpasteurized and "not heated" (the "Initial Complaint"). The Initial Complaint contained no allegation that Defendants misrepresented the terms "fresh" or "cold-pressed," nor did it allege that Plaintiff ever saw or

4

relied upon the brand name of Northeast Blend Cranberry Apple, or that the label on that product was in any way misleading or deceptive.[3] As noted above, the Initial Complaint was one of three federal-court complaints filed by Plaintiff in December 2017. In the other cases, Plaintiff similarly complained he was defrauded two months earlier by other manufacturers' statements that their juice products were unpasteurized or unheated.

Plaintiff's First Amended Complaint ("FAC") expanded upon the allegations regarding purported misrepresentations regarding the use of the terms "unpasteurized" and "never heated" but was otherwise similar to the Initial Complaint.[4]

Plaintiff's Second Amended Complaint (the "SAC"), a mammoth pleading comprising no less than 249 separate paragraphs, alleged that Plaintiff was misled by the terms "cold-pressed" and "fresh" on the juice products, as well as the terms "unpasteurized" and "never heated."[5] Tellingly, Plaintiff once again did not claim that he ever saw or relied upon Defendants' purported representation of cranberry juice as the predominant juice in Northeast Blend Cranberry Apple, or that such labeling was misleading or deceptive.

**B.    Plaintiff's Third Amended Complaint**

The TAC alleges the following, which must be taken as true for purposes of this motion to dismiss:

Plaintiff alleges that he purchased three Products at a Whole Foods store in Brooklyn: Ripe Craft Juice 12 Cranberry Unsweetened for $3.50, Ripe Craft 12.2 Northeast Blend Cranberry Apple for $4.99, and Fresh Juice Pineapple for $7.99 (all excluding tax) (collectively,

---

[3] *See, e.g.*, Initial Complaint, ¶¶ 52, 53, 90-95, 103-108.

[4] *See, e.g.*, FAC ¶¶ 38-43, 110-115, 132-141.

[5] SAC ¶¶ 87, 89, 94, 96, 102, 103.

the "Products").[6]   The TAC's core allegation regarding Defendants' alleged misrepresentations

is found in paragraph 23, which alleges that Defendants misled him by:

> [I]dentifying the Products as cold-pressed juice, misleading with respect to the presence of cranberries, not providing accurate, truthful and/or complete information pertaining to the effects of cold-pressing and high pressure on the composition of the Products, including the reduction of microorganisms, enzymatic and cellular activity and nutrients, representing the Products as fresh, not being heated or experiencing an increase in temperature and not having been subjected to a process of pasteurization.

TAC ¶¶ 23 (collectively, the "Purported Misrepresentations"). Plaintiff claims he paid a

premium for the Products because he allegedly saw and relied upon Defendants' representations

that they were: "cold-pressed juice," a process he understood to "involve the use of significant

pressure"; "unpasteurized"; "never heated"; and "fresh."[7]   In addition, Plaintiff alleges that he

saw and relied upon Defendants' purported misrepresentation on the label of Northeast Blend

Cranberry Apple that the juice blend was "predominantly cranberry juice."[8]   Finally, Plaintiff

claims that as a result of the Purported Misrepresentations, he "opted against buying less

expensive, unidentified juice products that were not represented like defendants'."[9]

The TAC alleges three causes of action based upon the Purported Misrepresentations:

two consumer fraud claims pursuant to GBL Sections 349 and 350 and a common law fraud

---

[6] *Id.* ¶ 62.

[7] TAC ¶¶ 63, 64.

[8] *Id.* Plaintiff alleges that the labels on Ripe Craft Juice 12 Cranberry Apple and Whole Cranberry Apple, and Ripe Craft Juice 12.2 Northeast Blend Cranberry Apple and Whole Milled Cranberry Apple (collectively, the "Cranberry Apple Products") are also "deceptive and misleading" for the same reasons. *Id.* ¶ 26. The only Cranberry Apple Product that Plaintiff purchased, however, is Northeast Blend Cranberry Apple. *Id.* ¶ 62.

[9] TAC ¶ 65.

claim limited to Defendants' alleged use of the term "unpasteurized" on the Products.[10] The TAC

seeks unstated money damages, treble and punitive damages, injunctive relief, and restitution.[11]

Plaintiff asserts claims on behalf of a putative nature-wide class of "all consumers, in all

states, who purchased any of the Products, at any time during the period within the applicable

statute of limitations."[12] However, Plaintiff does not allege that he purchased any Products

outside the State of New York.  The purported class claims include products which Plaintiff does

not claim to have purchased himself.

## ARGUMENT

## THE APPLICABLE LEGAL STANDARD

In order to survive a motion to dismiss, a complaint "must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is ***plausible on its face.***'" *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)); *Bowring v. Sapporo U.S.A., Inc.*, 16-CV-1858, 2017 WL 902151, *2

(E.D.N.Y. Feb. 10, 2017) (same).  "Facial plausibility" means that the factual pleadings "allow[]

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678.  A complaint that pleads facts that are "merely consistent with"

a defendant's liability is not plausible. *Id.*

Conclusory allegations that a defendant violated legal standards do not satisfy the need

for plausible factual allegations. *Twombly*, 550 U.S. at 555 (recognizing that courts are not

bound to accept as true legal conclusion couched as a factual allegation) (internal quotation

marks and citation omitted); *Richardson-Holness v. Alexander*, 161 F. Supp. 3d 170, 179

---

[10] TAC ¶¶ 78-83, 85-89, 91.

[11] TAC ¶ 99.

[12] TAC ¶ 67.

(E.D.N.Y. 2015) ("Naked assertions . . . pleaded without factual adornment, are not entitled to a presumption of truth."). Thus, a court will not draw inferences favorable to a plaintiff based on allegations without a factual basis and will dismiss claims premised on conclusory allegations that do not "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Nomination Di Antonio E Paolo Gensini, S.N.C. v. H.E.R. Accessories Ltd.*, No. 07 Civ. 6959, 2010 WL 4968072, at *2 (S.D.N.Y. Dec. 6, 2010) (plaintiff's obligation to provide grounds of his entitlement to relief requires "more than labels and conclusions" or "formulaic recitation of the elements of a cause of action") (quoting *Twombly*, 550 U.S. at 555). In reaching this "context-specific" determination, the Court must "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## POINT I

### PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF

#### A.     The Required Elements for Plaintiff's Fraud Claims

In order to state a claim under GBL Sections 349 and 350, Plaintiff must allege facts to show that Defendants engaged in (1) consumer-related conduct that is (2) materially misleading and that (3) he suffered an injury as a result of the allegedly deceptive act or practice. *Orlander v. Staples*, 802 F.3d 289, 300 (2d Cir. 2015). In order to show that a practice or advertisement is deceptive or misleading, Plaintiff must show objectively that a "reasonable consumer" would have been misled by the defendant's conduct. *Orlander*, 802 F.3d at 301; *Nelson v. MillerCoors, LLC*, 15-CV-7082, 2017 WL 1403343, *4 (E.D.N.Y. Mar. 31, 2017) (stating that "deceptive act" is one "likely to mislead a reasonable consumer acting reasonably under the circumstances") (citations omitted). To be "material," the alleged misconduct must concern information that is "important to consumers" and "likely to affect their choice of, or conduct regarding, a product."

*Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004) (citations omitted). The alleged injury must derive from the claimed consumer-oriented, deceptive acts or practices, and the defendant's conduct must have caused "actual, although not necessarily pecuniary, harm directly to plaintiff." *Id.* (internal quotations and citations omitted); *see also Pelman v. McDonalds Corp.*, 237 F. Supp. 2d 512, 525 (S.D.N.Y. 2003) (stating that GBL Section 349 requires showing that alleged deception <u>caused</u> alleged harm).

A court may decide, based on the particular facts and circumstances, whether a given practice is or is not deceptive as a matter of law. *S.Q.K.F.C. v. Bell Atlantic Triton Leasing Corp.*, 84 F.3d 629, 636-37 (2d Cir. 1996) (holding based on the complaint and attached exhibits that reasonable consumer would not have been misled by defendant's conduct); *Pelman*, 237 F. Supp. 2d at 527-29 (dismissing GBL §§ 349 and 350 claims after finding that Complaint "does not identify a single instance of deceptive acts"). In doing so, it applies an objective standard. *Dimond v. Darden Rests., Inc.*, No. 13 Civ. 5244, 2014 WL 3377105, *4 (S.D.N.Y. Jul. 9, 2014).

To state a claim under GBL Section 350, the above standards apply, and Plaintiff also must allege that he reasonably relied on the allegedly misleading advertisement. *Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.*, 300 A.D.2d 608, 610, 752 N.Y.S.2d 400, 403 (2d Dep't 2002) (dismissing complaint because plaintiffs failed to show that they relied upon, or even were aware of, allegedly false representation.).

Similarly, in order to assert a common law fraud claim, Plaintiff must assert facts to show that Defendants (1) made a material false statement or omission; (2) with the intent to defraud Plaintiff; (3) Plaintiff justifiably relied upon the representation or omission; and (4) Plaintiff suffered damage as a result of such reliance. *Nelson*, 2017 WL 1403343, at *8 (citations omitted); *B&M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 480 (S.D.N.Y.

2010).   Finally, Rule 9(b) requires Plaintiff to allege his common law fraud claim with particularity. *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004).

As shown below, the TAC fails to state a plausible claim for relief because the Purported Misrepresentations at the core of each of his claims are implausible and thus fail to satisfy the requirements of *Iqbal* and *Twombly*.

## B.   Plaintiff Does Not Plausibly Allege that the Products are Pasteurized

Plaintiff's allegation that the Products are pasteurized is implausible because Plaintiff's definition of "pasteurization" conflicts with FDA regulations and guidance that clearly define "pasteurization."   Plaintiff concedes that HPP involves "the use of high pressure" to destroy pathogens, however, he claims that HPP is the same as "pasteurization" because both processes achieve the same "food safety effect" – the destruction of pathogens.[13]   Contrary to Plaintiff's contention, FDA regulations and guidance clearly state that pasteurization and HPP are ***different means of treatment to control the presence of microorganisms in juice beverages***: pasteurization is a heat/thermal treatment; HPP is a pressure treatment.[14] According to the FDA, it is HPP's application of "pressure," not heat, which destroys pathogens in juice beverages like the Products at issue.[15]

---

[13] TAC ¶ 37 (emphasis added).

[14] *See supra* at 2 n.2; *see also* FDA Juice HACCP Guidance, Section II, Terms and Definitions, located at https://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/Juice/ucm072557.htm (Mar. 3, 2004) (the "FDA Guidance") (defining pasteurization as "heat treatment sufficient to destroy vegetative cells of pathogens") to Section V.C.4.5 (describing HPP as "Non-Thermal Treatment[] for Juice" along with use of UV irradiation, pulsed light, chemical agents) and Section V.C.5.33 (referring to HPP as technology in which pressure "is the principal anti-microbial agent").   A true and correct copy of the FDA Guidance, of which the Court may take judicial notice, is annexed as Exhibit D to the Di Domenico Declaration. *See Rothman*, 220 F.3d at 92; *5-Star Management, Inc.*, 940 F. Supp. at 518.

[15] In the validated pasteurization treatments for juice, the FDA Guidance does not discuss HPP. Instead, all pasteurization processes for controlling pathogens focus on applying heat to juice to bring it to a certain temperature (usually around 160 degrees Fahrenheit) for a certain amount of time. Di Domenico Decl., Ex. D at Part V.C.5.2. Moreover, in the FDA Guidance section discussing equipment and system considerations, pasteurization (part V.C.5.31) and HPP (part V.C.5.33) are discussed as two distinct processing systems. Further, "the temperature during the [HPP] process may not be monitored as a critical limit." *Id.* at Part V.C.5.33 (emphasis added). This is

FDA regulations similarly refer to pasteurization as a <u>thermal</u> process. *See* 21 C.F.R. § 131.3(b) (stating that "pasteurized" in reference to dairy products means that "every particle of such product" shall be <u>heated</u> to at least 145 degrees for 30 minutes "and held continuously at or above that temperature for the specified time (or other time/temperature relationship which has been demonstrated to be equivalent thereto in microbial destruction")) (emphasis added); 21 C.F.R. § 133.3(d) (Cheese and Related Cheese Products) (same); 21 C.F.R. § 146.140 (Pasteurized Orange Juice) ("The orange juice is so treated <u>by heat</u> as to reduce substantially the enzymatic activity and the number of viable microorganisms.") (emphasis added). These regulatory definitions of pasteurization as a thermal process are consistent with dictionary definitions which make clear their pasteurization is a thermal process.[16] Plaintiff ignores these critical distinctions between HPP and pasteurization, and he cites no facts, science, federal guideline or regulation, or even a contemporary dictionary definition to support his invented definition of "pasteurization."[17]

The same is true for Plaintiff's allegation that the phrase "never heated" is deceptive because the temperature of the Products allegedly increases in some amount, however marginal, through HPP.[18] The TAC does not claim that Defendants *apply* heat to the Products or that the *temperature increase* in HPP creates the same "food safety effect" as pasteurization.[19] In short,

---

very different than pasteurization in which the FDA recommends that manufacturers "designate the juice temperature and juice heating time as critical limits." *Id.* at Part V.C.5.31.

[16] *See, e.g.,* Collins English Dictionary (2017 ed.) (accessed July 21, 2017), *available at* https://www.collinsdictionary.com/dictionary/english/pasteurization (defining pasteurization as "the process of <u>heating</u> beverages, such as milk, beer, wine, or cider, or solid foods, such as cheese or crab meat, to destroy harmful or undesirable microorganisms or to limit the rate of fermentation by the application of <u>controlled heat</u>") (emphasis added); Merriam-Webster Dictionary (accessed July 21, 2017), *available at* https://www.merriam-webster.com/dictionary/pasteurization (defining pasteurization as "a process in which a liquid (such as milk or cream) is <u>heated to a temperature</u> that kills harmful germs and then cooled quickly") (emphasis added).

[17] TAC ¶¶ 23, 36-42.

[18] TAC ¶¶ 20, 23, 64.

[19] TAC ¶¶ 37, 39, 40.

11

the TAC's core allegation is based upon an invented and entirely unsupported conclusion that HPP is a form of pasteurization, which it is not.

### C.   Plaintiff Does Not Plausibly Allege that the Representation of "Cold Pressed" on the Products is False or Deceptive

Plaintiff also does not plausibly allege that the use of the term "cold-pressed" on the Products is false, deceptive, or misleading to a reasonable consumer.[20] Plaintiff contends that the HPP process, involving pressure, renders the Products "distinct" from cold-pressed juice that is not subject to HPP and that those changes are "material" to "reasonable consumers."[21] First, Plaintiff's contention that the use of HPP reduces the "overall nutrient content" of the Products rendering them "distinct" from juices that are only cold-pressed is conclusory and unsupported with any facts.[22]

Second, Plaintiff cannot plausibly allege that he was misled in this regard because the Product labels clearly state that the Products are subjected to "high pressure."   On the Ripe Craft Products, the words "Cold-Pressed" appear in bold *above* the words "High Pressure," and the words "cold-pressed perfection, kissed with the immense power of pressure" appear in smaller lettering on the label.[23]   Similarly, on the Fresh Juice Products, the labels say, in addition to "Cold-Pressed," that they are "Made Safe With the Power of Pressure."[24]   *Nelson*, 2017 WL 1403343, at *4, *6 (holding that "no reasonable consumer" would be deceived by advertisements where beer label clearly indicated Foster's Beer was brewed in United States); *Bowring*, 2017 WL 9021521, at *3-4 (dismissing GBL Section 349 and 350 and common law fraud claims and

---

[20] TAC ¶ 32.

[21] TAC ¶ 41.

[22] *Id.* ¶ 41.

[23] True and correct copies of the Product labels at issue are annexed as Exhibit E to the Di Domenico Declaration (emphasis added).

[24] Di Domenico Decl., Ex. E.

holding that plaintiff could not have been misled about Sapporo beer's origin where beer labels disclosed that beer's place of origin was Canada, not Japan); *see Gomez-Jimenez v. New York Law School*, 956 N.Y.S.2d 54, 59 (2012) ("[A] party does not violate GBL 349 by simply publishing truthful information and allowing consumers to make their own assumptions about the nature of the information.").

Moreover, Plaintiff concedes he understood when he purchased the Products at issue in October 2016 that they were subjected to "significant pressure."[25] Whether this "significant pressure" occurred through one process or two, any reasonable consumer would understand from the Product labels that the Products were subject to a high pressure process. *Bowring*, 2017 WL 9021521, at *3 ("Courts routinely conclude that the presence of a disclaimer, considered in context, precludes the finding that a reasonable consumer would be deceived by the defendant's conduct."); *Small v. Lorillard Tobacco Co.*, 679 N.Y.S.2d 593, 600 (1st Dep't 1998) ("Reliance on defendants' misrepresentations will not be presumed where plaintiffs had a reasonable opportunity to discover the facts about the transaction beforehand by using ordinary intelligence."), *aff'd*, 94 N.Y.2d 43 (1999); *see also Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 246, 252-53 (3d Cir. 2011) (dismissing claim that Havanna Club rum label was misleading where label stated contents of bottle to be "Puerto Rican Rum" that was "distilled and crafted in Puerto Rico").[26]

---

[25] *Id.* ¶ 63.)

[26] *See also Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756-59 (N.D. Ill. 2015) (rejecting plaintiff's claim that "No Refined Sugars" label misled her to believe product contained only natural occurring sugars or had not been refined at all where ingredients panel listed type of refined sugar as ingredient); *McKinniss v. Sunny Delight Beverages Co.*, No. 07-02034, 2007 WL 4766525, at *4 (C.D. Cal. Sept. 4, 2007) (dismissing false advertising claim where any ambiguity about fruit content of defendant's products could "readily and accurately be resolved "by reading the front and back of the label"); *Veal v. Citrus World, Inc.*, No. 12-801, 2013 WL 120761, *4 n.7 (N.D. Ala. Jan. 8, 2013) (relying on "common sense" and dismissing claim that label "100% orange juice" was misleading because plaintiff "paid for orange juice mass produced and supplied to grocery stores all over the country, and that is exactly what he received"); *Manchouck v. Mondelez Int'l Inc.*, No. 13-02148, 2013 WL 5400285, *3 (N.D. Cal. Sept. 26,

13

For the foregoing reasons, Plaintiff's claims regarding "cold-pressing" – *i.e.*, that the HPP process was undisclosed to consumers, or somehow meant that the Products were not really cold-pressed – are simply implausible.

**D.    Plaintiff Does Not Plausibly Allege that the Use of "Fresh" on the Products is Deceptive and Misleading**

Similarly implausible are Plaintiff's allegations that the terms "Get fresh and get quenching"; "Beyond Fresh"; and "Fresh Juice" are deceptive or misleading.[27]   FDA regulations provide that the term "fresh," when used on food labels "in a <u>manner that suggests or implies that the food is unprocessed</u>," means that the food is "in its raw state and has not been frozen <u>or subjected to any form of thermal processing</u> or any other form of preservation. . . ." 21 C.F.R. § 101.95(a) (emphasis added).   Section 101.95 further provides, however, that the term "fresh" may be used if the term "<u>does not suggest or imply that a food is unprocessed or unpreserved</u>." 21 C.F.R. § 101.95 (emphasis added).

On their face, none of the above terms suggest or imply that the Products are "unprocessed" or "unpreserved."   Therefore, there is no plausible basis to conclude they are misleading.   In addition, at most, "Get fresh and get quenching" and "Beyond Fresh" are mere puffery, which is not actionable. *See Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995) ("Subjective claims about products, which cannot be proven true or false, are not actionable under the Lanham Act.") (citations omitted); *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 644 (S.D.N.Y. 2011) (holding that defendant's advertising terms of "blazing fast" and "fastest, easiest" were nonactionable puffery and dismissing GBL § 349 claim); *Nasik Breeding & Res. Farm, Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 530 (S.D.N.Y. 2001) ("Terms like 'very high

---

2013), *aff'd*, 603 Fed. App'x 632 (9th Cir. 2015) (holding that "Made with Real Fruit" label on Newton cookies was factually true because cookies contained raspberry and strawberry puree).

[27] TAC ¶ 29.

productive traits,'" which "do not set forth a concrete representation," are puffery and not actionable as fraud claim).

Likewise, nothing in the use of "Fresh Juice" in the brand name by itself suggests or implies that the Products are unprocessed or unpreserved. For the same reasons stated above, a reasonable consumer would not confuse the name "Fresh Juice" with a juice that is "unprocessed" or "unpreserved," particularly given that the terms "cold-pressed" and "high pressure" also appear on the product label. *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) (stating that "context is crucial" in determining whether reasonable consumer would have been misled by advertisement; disclaimer or "similar clarifying language" may defeat claim of deception).

### E.   Plaintiff Does Not Plausibly Allege that Defendants Misrepresented Northeast Blend Cranberry Apple As "Predominantly Cranberry Juice"

Plaintiff's claim that Defendants misrepresented Northeast Blend Cranberry Apple as being "predominantly cranberry juice"[28] is equally implausible. First, Plaintiff's artful cropping of the Product labels in paragraph 17 of the TAC is misleading in that it selectively omits critical ingredient information, which appears immediately below in the cropped-out portions of the ingredient panel. The label in its entirety is shown below and expressly lists apple juice as an ingredient.

---

[28] TAC ¶¶ 62, 64. Plaintiff lacks standing to complain about cranberry-related Products he did not purchase and Product labels upon which he did not rely. *See infra* at 21-22.

 

Further, the attack alleges that the ingredient panel on the Northeast Blend Cranberry Apple juice blend product indicates that "apple juice is the predominant juice." (TAC ¶ 27.) There is simply nothing misleading about this label. *Bowring*, 2017 WL 9021521, at *3-4; *Small*, 679 N.Y.S.2d at 600; *Pernod Ricard*, 653 F.3d at 252-53; *see also McKinnis*, 2007 WL 4766525, at *4 (dismissing false advertising claim where any ambiguity about fruit content of defendant's products was "readily and accurately" resolved by "reading the front and back of the label"). Plaintiff admits that he understood apple juice was the predominant juice because the label told him so, and his failure to heed or accept the ingredient panel does not give rise to a claim. [29] *See Workman v. Plum, Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015) (recognizing that "reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.") (quotation and citation omitted); *Serrano v. Cablevision Sys. Corp.*, 863 F. Supp. 2d 157, 167 (E.D.N.Y. 2012) (dismissing claims where terms of service were "fully disclosed" to consumers); *see also Fermin*

---

[29]TAC ¶ 27. Additionally, as stated above, despite having had three prior opportunities to assert this baseless claim, Plaintiff did not do so until he filed the TAC, his <u>fourth</u> pleading in this action. Surely, if he had been deceived by this purported misrepresentation, he would have asserted it earlier.

*v. Pfizer Inc.*, No. 15 CV 2133, 2016 WL 6208291 ,at \*2 (E.D.N.Y. Oct. 18, 2016 ) (dismissing claim that size of pill package was misleading as to content when label disclosed total pill-count to consumers).

For these reasons, the label on the Northeast Blend Cranberry Apple juice is not objectively misleading, and Plaintiff's consumer fraud claims based on that label is implausible.

### F.   Plaintiff Does Not Plausibly Allege that the Purported Misrepresentations Caused Him Actual Harm

Plaintiff also fails to show plausibly that he relied upon the at-issue statements on the labels or that they *caused* him actual harm.  *Oscar v. BMW North Am., LLC*, No. 09 Civ. 11, 2012 WL 2359964, \*3 (S.D.N.Y. June 19, 2012) (stating that although GBL Section 349 does not require proof of justifiable reliance, plaintiff must show that defendant engaged in material deceptive act or practice that "*caused* actual, although not necessarily pecuniary, harm") (emphasis in original) (citations omitted); *Cohen v. Hertz Corp.*, No. 13 Civ. 1205, 2013 WL 9450421, \*5 (S.D.N.Y. Nov. 26, 2013) (dismissing Section 349 and 350 claims because plaintiff failed to allege that customer service representatives' statements "misled or deceived him personally"); *Gale v. IBM Corp.*, 781 N.Y.S.2d 45, 47, 9 A.D.3d 446, 447 (2d Dep't 2004) (dismissing Section 349 claim where plaintiff failed to show that alleged misleading statements by IBM regarding reliability of hard disk drive caused his injury); *Gershon v. Hertz Corp.*, 215 A.D.2d 203, 626 N.Y.S.2d 80, 81 (1st Dep't 1995) (plaintiff's claim for false advertising under GBL § 350 was legally deficient absent allegation that he relied upon or even knew about defendant's advertising); *Donahue v. Ferolito, Vultaggio & Sons*, 13 A.D.3d 77, 78, 786 N.Y.S.2d 153, 154-55 (1st Dep't 2004) (common law fraud claim was properly dismissed because plaintiffs failed to show justifiable reliance upon alleged misrepresentations on beverage labels in light of product involved and disclaimers on labels).  Further, beyond unsubstantiated

17

conclusory allegations, the TAC is bereft of any facts demonstrating that the Purported Misrepresentations, by themselves, caused Plaintiff to pay a higher sum or "premium" for the Products than he otherwise would have paid without the alleged deception. *See infra* at 19 n. 31.

### G.   Plaintiff's Fraud Claims Fail to State a Claim

Under the settled *Twombly/Iqbal* standard, and for the foregoing reasons, each of Plaintiff's causes of action fails to state a claim and should be dismissed pursuant to Rule 12(b)(6).

Plaintiff's Section 349 claim fails as a matter of law because he does not satisfy any of the above requirements for stating such a claim. *See supra* at 8-10. Plaintiff fails to allege any facts to show that the Purported Misrepresentations were "material" to, or likely to mislead, a reasonable consumer "acting reasonably under the circumstances." *Fink*, 714 F.3d at 741 (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995)). Plaintiff's allegations in this regard are entirely conclusory and insufficient as a matter of law. Nor has Plaintiff shown that the challenged statements <u>caused</u> him to purchase the Products. *See Abraham v. American Home Mortgage Serv., Inc.*, 947 F. Supp. 2d 222, 234-35 (E.D.N.Y. 2013) (dismissing Section 349 claim where plaintiff failed to plead causation *i.e.*, that she was injured as result of any defendant's actions); *see* cases cited *supra* at 17. Finally, Plaintiff alleges no facts to show that he suffered an "actual injury" deriving from the alleged deceptive conduct. Plaintiff's allegation that he paid a "premium" for the Products, and would not have purchased them absent the alleged fraud, fails to allege an actual injury as a matter of law.[30] *Baron v. Pfizer, Inc.*, 42 A.D.3d 627, 629, 840 N.Y.S.2d 445, 448 (2007) (holding

---

[30] Plaintiff's unsubstantiated theory that consumers pay a premium for juice that contains more pathogens is unsupported with any facts. (TAC ¶ 42.) Plaintiff avers that unpasteurized and unheated juices contain a greater number of pathogenic microorganisms, however, he alleges no additional benefit resulting from such juice products or any injury resulting from consuming a product with fewer pathogens. (TAC ¶¶ 38, 43.)

plaintiff's claims that she would not have purchased drug absent defendant's deceptive practices failed to allege actual harm or a pecuniary injury); *Donahue v. Ferolito, Vultaggio & Sons*, 13 A.D.3d 77, 786 N.Y.S.2d 153 (2004) (dismissing claims under GBL §§ 349 and 350, where plaintiffs failed to establish that defendants' alleged deceptive beverage labels and false advertising caused them actual damages); *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56, 698 N.Y.S.2d 615, 621 (1999) (holding plaintiff alleged no pecuniary or actual harm where they did not allege that cost of cigarettes was affected by alleged misrepresentation and did not seek recovery for injury to their health as result of addiction).[31]

Plaintiff's Section 350 claim, which alleges the same misrepresentations and omissions as his Section 349 claim, fails for the same reasons, as well as the lack of any facts in the TAC demonstrating that he justifiably relied upon the Purported Misrepresentations. *Small*, 94 N.Y.2d at 56, 698 N.Y.S.2d at 621; *Andre Strishak & Assoc.*, 300 A.D.2d at 610, 752 N.Y.S.2d at 403.

Finally, Plaintiff's common law fraud claim, which is expressly limited to Defendants' purported misrepresentation of the Products as "unpasteurized," fails as a matter of law for the same reasons stated above. *See supra* at 10-12.

---

[31] Although allegations of inflated prices may, in some circumstances, be sufficient to state a claim, here Plaintiff pleads only naked conclusions, not facts, as purported evidence that he paid a "premium" for the Products. (TAC ¶¶ 42, 62.) Among other things, Plaintiff alleges no facts to show that the retail price of the Products correlates to the claims on their labels or fetches a price materially different from other juices based solely upon the Purported Misrepresentations, as opposed to other qualities or the sizes of the Products. He also fails to explain non-conclusorily whether and, if so, how he is comparing the same types of juice products. In addition, despite his claim that the ($2.99-$5.99) prices of HPP/cold-pressed juices sold by other manufacturers are "*significantly less* than defendants' products," according to the TAC, those prices are actually within the range of the prices Plaintiff paid for the Products. TAC ¶¶ 34, 44-47, 52 (emphasis added). Finally, since (according to the TAC) there are "up to several hundred companies" that produce juice through cold-pressing and HPP, Plaintiff's mention of *only two* comparable juice products undercuts the plausibility of his price-premium claim. (TAC ¶¶ 46, 52) (emphasis added).

## POINT II

## THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS WITH RESPECT TO THE CLAIMS OF ABSENT CLASS MEMBERS WHO HAVE NO CONNECTION TO NEW YORK

Under the Supreme Court's recent decision in *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cty.*, 137 S. Ct. 1773 (June 19, 2017), the Court lacks personal jurisdiction over Defendants for putative class members who have no connection to New York. *Id.* at 1778, 1782, 1783. In that case, over 600 named plaintiffs sued a non-resident drug manufacturer in California for alleged defects in a prescription drug. *Id.* at 1778. However, only 86 of the 600 plaintiffs were actually California residents or alleged any jurisdictional facts relating to California. The remaining plaintiffs did not allege that their injuries were connected to California, nor did any party allege that the defendant developed or coordinated the nationwide marketing of the drug from California. *Id.* at 1778, 1782. Thus, although the defendant conceded that California had specific jurisdiction to hear the California plaintiff's claims, the Court held that the non-residents claims needed to be brought in either (a) states with "general jurisdiction over" the defendant; or (b) the plaintiffs "who are residents of a particular state . . . could probably sue together in their home state" *Id.* at 1783.

Here, Plaintiff, who alleges that he is a New York resident who purchased the Products in New York, seeks to bring a nationwide class action on behalf of a putative class that includes non-residents of New York State. (TAC ¶ 67.) None of the non-resident absent class members could allege that he or she suffered any injury in the State of New York. Thus, the TAC alleges no facts to support specific personal jurisdiction over Defendants with respect to claims by the non-resident putative class members. *Bristol-Myers Squibb*, 137 S. Ct. at 1784 (dismissing only

non-resident plaintiffs' claims because California lacked personal jurisdiction over them). Those claims should be dismissed pursuant to Rule 12 (b)(2).

**POINT III**

**THE COURT LACKS SUBJECT MATTER JURISDICTION
OVER PLAINTIFF'S CLAIMS DUE TO LACK OF STANDING**

A federal court must dismiss a claim for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) if the court lacks the statutory or constitutional power to hear the claim. *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008). To establish standing, a plaintiff must show, among other things, that he has suffered an injury in fact, which is a harm to a "legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). While the Court must take all facts alleged in the TAC as true for purposes of a motion to dismiss for lack of subject matter jurisdiction, *NRDC v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006), "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (citation omitted).

**A.    Plaintiff's Nationwide Class Action Allegations Should Be Stricken**

The standing inquiry "focuses on whether the plaintiff is the proper party to bring this suit." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). As a matter of law, named plaintiffs who represent a class must allege and show that "they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1997) (citation and internal quotations omitted). Named plaintiffs have no standing to assert claims under the laws of states where they do not reside or did not purchase the products at issue. *See* 1 McLaughlin on Class

21

Actions § 4:28 (13th ed. 2016) ("The named plaintiffs in a putative class action lack standing to assert claims under the laws of states in which they do not reside or in which they suffered no injury."); *Parks v. Dick's Sporting Goods, Inc.*, No. 05-CV-6590, 2006 WL 1704477, at \*2-\*3 (W.D.N.Y. June 15, 2006) (holding that plaintiff lacked standing to assert state law claims under laws of states other than New York because he was only employed by defendant in New York").[32]

As stated above, Plaintiff purports to assert claims on behalf of a nationwide class even though he personally only alleges injuries relating to Product purchases he made in New York.[33] Plaintiff's nationwide class claims therefore should be stricken based on lack of standing to the extent that the proposed class includes consumers who did not reside in New York or purchase any of the Products at issue in New York.

### B.     Plaintiff Lacks Article III Standing to Assert His Fraud-Based Claims Against Whole Foods

As noted above, Plaintiff bears the burden to establish Article III standing, which includes demonstrating an injury in fact that is fairly traceable to the challenged actions of Defendants and which is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000); *Lujan*, 504 U.S. at 560-61. Plaintiff lacks Article III standing vis-à-vis Whole Foods because he alleges no injury that is "fairly traceable" to any specific fraudulent, deceptive, or misleading action by Whole Foods. Plaintiff alleges that Freshbev manufactures and sells the Products under its own brand names and for third parties who sell it

---

[32] *See also In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657 (E.D. Mich. 2011) (limiting claims to states where named plaintiffs actually made purchases allegedly giving rise to injuries) (collecting cases).

[33] TAC, ¶¶ 62, 67.

under their own brand names.[34]   Significantly, however, the TAC does not allege that **Whole Foods** manufactures the Products, packages the Products, or places labels on the Products. Rather, it merely alleges in boilerplate fashion that Whole Foods operates grocery stores that distribute and sell Products that Freshbev manufactured and labeled pursuant to FDA Guidance and regulations, and which allegedly contain misleading labels.[35]   Plaintiff alleges no facts establishing Article III standing to assert any fraud-based claims against Whole Foods, and the TAC should therefore be dismissed as against Whole Foods.[36]

**POINT IV**

<u>**PLAINTIFF'S "PASTEURIZATION" CLAIMS ARE PREEMPTED BY FEDERAL LAW**</u>

Plaintiff's state law claims regarding the labeling statements with respect to pasteurization are preempted because they seek to impose requirements that conflict with the federal definition of "pasteurization." Although preemption typically relates to federal statutes, informal federal policies, regulations, and guidelines can also pre-empt state law claims that impose additional or different requirements than the federal policy. *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982) ("Federal regulations have no less pre-emptive effect than federal statutes."); *Grocery Mfrs. of Am., Inc. v. Gerace*, 755 F.2d 993, 1002 (2d Cir.

---

[34] TAC ¶¶ 3, 4, 9, 10. In addition, Plaintiff alleges that the Purported Misrepresentations on the labels, packaging, and advertising of the Products is false, deceptive and misleading.

[35] TAC ¶¶ 5, 6, 10, 94, 96.

[36] Although the TAC lacks a separate claim for injunctive relief, Plaintiff seeks "injunctive relief" on each of his three claims, in addition to other relief. *Past* injuries are insufficient to confer Article III standing to seek injunctive relief, however, "unless the plaintiff can demonstrate that she is <u>likely to be harmed again in the future</u> in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983)) (emphasis added). Here, the TAC and the Other Campbell Juice Actions clearly show that Plaintiff now understands the purported "truth" regarding the Purported Misrepresentations, and there is no danger that Plaintiff will be misled in the future by the challenged labels. Therefore, he lacks standing to seek injunctive relief and his request for such relief should be dismissed.

1985) (holding that USDA's definition of "imitation" is given pre-emptive effect "[e]ven if it [is] . . . a statement of general policy").[37]

Here, Plaintiff's "pasteurization" claims are preempted because they seek to impose requirements that conflict with the FDA guidance and regulations, discussed above, that define "pasteurization" as a thermal process and HPP as a process involving the application of "high pressure" to kill pathogens. *See supra* at 10-12.[38]  The FDA treats HPP and pasteurization as separate and distinct <u>alternatives</u>, not the same, or even similar, processes, as Plaintiff claims.[39] Under the federal regulatory definition of "pasteurization," it is clear that the Products are not pasteurized; therefore, they can be described as "unpasteurized."   Further, Plaintiff's claims would prohibit Freshbev from labeling and marketing the Products as "unpasteurized" if they undergo <u>any</u> treatment process that "causes structural changes to cell membranes, inactivates enzyme systems . . . and reduces the overall nutrient content" of the Products.[40]

Plaintiff's pasteurization-based claims are thus preempted as a matter of law because they would impose additional or different requirements than the federal policy with respect to the

---

[37] *See also Degelmann v. Advanced Med. Optics, Inc.*, 659 F.3d 835, 841-42 (9th Cir. 2011) (holding that informal FDA guidelines can preempt state law claims and UCL claims were preempted despite fact that FDA guidance "does not . . . bind FDA or the public"), *vacated pursuant to settlement and voluntary dismissal of appeal*, 699 F.3d 1103 (9th Cir. 2012). Courts routinely defer to a federal agency's interpretation of its own regulations. *Wisconsin Elec. Power Co. v. Reilly*, 893 F.2d 901, 907 (7th Cir. 1990).

[38] *See Coca-Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 318 (2d Cir. 1982) ("Pasteurization entails heating the juice to approximately 200 [degrees] Fahrenheit to kill certain natural enzymes and microorganisms which cause spoilage."), *superseded by statute on other grounds, as recognized in Johnson & Johnson v. GAC Int'l, Inc.*, 862 F.2d 975, 978 (2d Cir. 1988).

[39] In fact, the FDA has stated that it would be "misleading" to label a juice product treated with UV light as "pasteurized" because pasteurization is a particular form of "heat treatment" that destroys pathogens, not simply a treatment that results in the control of pathogens.  Di Domenico Decl., Ex. D.  The use of UV light, like the use of HPP and pasteurization, control and treat pathogens and bacteria, and the FDA clearly does <u>not</u> view them as one and the same.

[40] TAC ¶ 40.

use of the term "unpasteurized". *See Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 704-705, 716 (1984).[41]

## CONCLUSION

For the foregoing reasons, Defendants Freshbev and Whole Foods respectfully request that the Court dismiss the TAC in its entirety, with prejudice.

Dated: New York, New York
      August 14, 2017

                        GREENBERG TRAURIG, LLP

                        By: /s/ David E. Sellinger
                            David E. Sellinger (DS- 8805)

                        Met Life Building
                        200 Park Avenue
                        New York, New York 10166
                        Telephone: (212) 801-9200
                        Facsimile: (212) 801-6400
                        sellingerd@gtlaw.com

                        Timothy E. Di Domenico (TD-4900)
                        445 Hamilton Avenue, 9th Floor
                        White Plains, NY  10601
                        Tel.:  (212) 801-2127
                        Fax.:  (212) 224-6104
                        didomenicot@gtlaw.com

                        *Attorneys for Defendants*
                        *Freshbev LLC and*
                        *Whole Foods Market Group, Inc.*

---

[41] Alternatively, if the Court determines that Plaintiff's "pasteurization" claims are not preempted, the Court should stay or dismiss this litigation pursuant to the primary jurisdiction doctrine to give the FDA an opportunity to decide the issue of whether HPP treatment can be described as "unpasteurized" and "not being heated" regarding the Products. *Ellis v. Tribune Television Co.*, 443 F.3d 71, 83 (2d Cir. 2006) (holding district court erred in not referring issue of waiver extension of cross-ownership rule to FCC pursuant to primary jurisdiction doctrine).

TO:    Joshua Levin-Epstein, Esq.
Levin Epstein & Associates, P.C.
1 Penn Plaza, Suite 2527
New York, NY  10119

Spencer Sheehan, Esq.
Sheehan & Associates, P.C.
891 Northern Boulevard, Suite 201
Great Neck, NY  11021

*Attorneys for Plaintiff Gerard Campbell
individually on behalf of himself and all
others similarly situated*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
GERARD CAMPBELL, individually on behalf of
himself and all others similarly situated,

                          Plaintiff,        :        Civ. Action No. 1:16-cv-07119 (FB)

                         - against -      :

FRESHBEV LLC and WHOLE FOODS MARKET  :
GROUP, INC.,

                       Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## CERTIFICATE OF SERVICE

    I, Timothy E. Di Domenico, counsel for Defendants in the above-captioned matter, hereby certify that I caused to be served a true and correct copy of the foregoing Defendants' Memorandum of Law in Support of Motion to Dismiss the Third Amended Complaint this 14th day of August 2017, by UPS overnight delivery on:

Joshua Levin-Epstein, Esq.
Levin Espstein & Associates, P.C.
1 Penn Plaza, Suite 2527
New York, NY  10119

*Attorneys for Plaintiff*

Dated: White Plains, New York
       August 14, 2017

                                          Timothy E. Di Domenico