**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

1:16-cv-07119 (FB)(ST)

GERARD CAMPBELL, individually and on behalf
of himself and all others similarly situated,

Plaintiff,

- against -

FRESHBEV LLC and WHOLE FOODS MARKET
GROUP, INC.,

Defendants.

MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS THE THIRD AMENDED COMPLAINT

Levin-Epstein & Associates, P.C.
1 Penn Plaza, Suite 2527
New York, NY 10119
Tel: (212) 792-0046

Sheehan & Associates, P.C.
891 Northern Blvd., Suite 201
Great Neck, NY 11021
Tel: (516) 303-0552

Counsel for Plaintiff

Table of Contents

TABLE OF AUTHORITIES ..........................................................................................II

INTRODUCTION ........................................................................................................ 1

I.   COLD-PRESSED AND FRESH ARE MISLEADING BECAUSE THEY
     GIVE THE IMPRESSION THE PRODUCTS UNDERGO A SINGLE
     PRODUCTION STEP ........................................................................................ 2

II.  DEFENDANTS' CLAIM THE PRODUCTS ARE UNPASTEURIZED
     CONTRIBUTES TO FALSE IMPRESSION THEY ARE NOT TREATED
     AFTER EXTRACTION ...................................................................................... 4

            A.  Pasteurization Lacks a Universal Definition ......................................... 5

            B.  Fraud-Based Pasteurization Claims are Viable ...................................... 9

III. CONSUMERS PURCHASED CRANBERRY APPLE RIPE PRODUCTS
     SEEKING JUICE WHICH WAS MOSTLY CRANBERRY ............................... 11

IV.  DISCLAIMERS CANNOT CURE DEFENDANTS' MISLEADING
     STATEMENTS ................................................................................................ 12

V.   PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF ................... 19

CONCLUSION .......................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Ackerman v. Coca-Cola Co.*,
No. 09-cv-395, 2013 WL 7044866 (E.D.N.Y. July 18, 2013) .................................... 20

*Albert v. Blue Diamond Growers*,
No. 15-cv-4087, 2015 WL 9450579 (S.D.N.Y. Oct. 21, 2015) ............................... 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................ 1

*Bear Stearns Mortg. Pass-Through Certificates Litig., In re*,
851 F.Supp.2d 746, 763 (S.D.N.Y. 2012) ............................................. 12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................. 1

*Bowring v. Sapporo U.S.A., Inc.*,
No. 16-cv-1858, 2017 WL 902151 (E.D.N.Y. Feb. 10, 2017) ........................ 14

*Cohen v. Hertz Corp.*,
No. 13-cv-1205, 2013 WL 9450421 (S.D.N.Y. Nov. 26, 2013) ...................... 18

*Delgado v. Ocwen Loan Servicing, LLC*,
No. 13-cv-4427, 2014 WL 4773991 (E.D.N.Y. Sept. 24, 2014) ..................... 18

*Donahue v. Ferolito, Vultaggio & Sons*,
13 A.D.3d 77, 786 N.Y.S.2d 153
(App. Div. 1st Dep't 2004) ................................................................ 18

*Ebin v. Kangadis Food Inc.*,
No. 13-cv-2311, 2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013) ...................... 19

*Fink v. Time Warner Cable*,
714 F.3d 739 (2d Cir. 2013) ............................................................... 14

*Foman v. Davis*,
371 U.S. 178 (1962) .......................................................................... 20

*Gale v. IBM Corp.*,
9 A.D.3d 446, 781 N.Y.S.2d 45
(App. Div. 2d Dep't 2004) ................................................................ 18

*Gershon v. Hertz Corp.*,
215 A.D.2d 203, 626 N.Y.S.2d 80
(1st Dep't 1995) ................................................................................ 18

*Global Network Communs., Inc. v. City of New York*,
458 F.3d 150 (2d Cir. 2006) ............................................................... 1

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
  8 F.Supp.3d 467 (S.D.N.Y. 2014) ........................................................... 16

*Gomez-Jimenez v. New York Law School*,
  103 A.D.3d 13, 956 N.Y.S.2d 54 (App. Div. 1st Dep't 2012) .................. 15

*Ibarrola v. KIND, LLC*,
  83 F.Supp.3d 751 (N.D. Ill. 2015) ........................................................... 17

*Izquierdo v. Mondelez Int'l, Inc.*,
  No. 16-cv-4697, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ................ 19

*Kacocha v. Nestle Purina Petcare Co.*,
  No. 15-cv-5489, 2016 WL 4367991 (S.D.N.Y. Aug. 12, 2016) .......... 15, 17

*Koch v. Greenberg*,
  14 F.Supp.3d 247 (S.D.N.Y. 2014) ........................................................ 13

*Koehler v. Litehouse, Inc.*,
  No. 12-cv-04055, 2012 WL 6217635 (N.D. Cal. Dec. 13, 2012) ............ 20

*Langan v. Johnson & Johnson Consumer Companies*,
  95 F.Supp.3d 284 (D. Conn. 2015) ........................................................... 3

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015) ............................................................. 20, 21

*Manchouck v. Mondelez Int'l Inc.*,
  No. 13-cv 02148, 2013 WL 5400285
  (N.D. Cal. Sept. 26, 2013), *aff'd*, 603 F. App'x 632 (9th Cir. 2015) ........ 15

*McKinniss v. Sunny Delight Beverages Co.*,
  No. 07-cv-02034, 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) ............. 13

*Oscar v. BMW North Am., LLC*,
  No. 09-cv-11, 2012 WL 2359964 (S.D.N.Y. June 19, 2012) ................... 18

*Pelayo v. Nestle USA, Inc.*,
  989 F.Supp.2d 973 (C.D. Cal.2013) ....................................................... 17

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*,
  653 F.3d 241 (3d Cir. 2011) .................................................................... 15

*Red v. Kraft Foods, Inc.*,
  No. 10-cv-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) .............. 16

*Serrano v. Cablevision Sys. Corp.*,
  863 F.Supp.2d 157 (E.D.N.Y. 2012) .................................................. 15, 18

*Waldman v. New Chapter, Inc.*,
   714 F.Supp.2d 398 (E.D.N.Y. 2010) ................................................................................ 1

*Williams v. Gerber Products Co.*,
   552 F.3d 934 (9th Cir. 2008) ....................................................................................... 13

*Workman v. Plum Inc.*,
   141 F.Supp.3d 1032 (N.D. Cal. 2015) ......................................................................... 12

**Other Authorities**

CPG Sec. 562.450,
   Identity of Foods - Use of Terms Such as
   Fresh, Frozen, Dried, Canned, Etc. .............................................................................. 2

H.R. Rep. No. 107-424,
   Conference Report and Joint Explanatory Statement to H.R. 2646 (2002) .................. 8

NACMCF, Requisite Scientific Parameters for Establishing the Equivalence of Alternative
   Methods of Pasteurization, (Aug. 27, 2004) ............................................................... 8

**Regulations**

21 C.F.R. § 101.17(g)(2)(ii) ............................................................................................ 11

21 C.F.R. § 101.17(g)(7)(i) ............................................................................................. 11

21 C.F.R. § 101.95 .......................................................................................................... 4

21 C.F.R. § 101.95(a) ...................................................................................................... 3

21 C.F.R. § 101.95(c) ...................................................................................................... 4

21 C.F.R. § 102.33 .......................................................................................................... 2

21 C.F.R. § 102.33(b) .................................................................................................... 12

21 C.F.R. § 120.1(a) ........................................................................................................ 3

21 C.F.R. § 131.3(b) ........................................................................................................ 5

21 C.F.R. § 133.3(d) ........................................................................................................ 5

21 C.F.R. § 146.114 ......................................................................................................... 5

21 C.F.R. § 146.140 ......................................................................................................... 5

21 C.F.R. Part 120 ........................................................................................................... 5

21 C.F.R. Part 146, Subpart B ........................................................................................ 5

**Federal Register**

58 Fed. Reg. 3, 2401,
   Terms that Describe Other Aspects of Food: "Fresh" and
   Related Terms (Jan. 3, 1993) (21 C.F.R. § 101.95) ..................................................... 4

58 Fed. Reg. 3, 2918,
   Identity of Multiple-Juice Beverages (Jan. 3, 1993) (21 C.F.R. § 102.33) ............................ 12

63 Fed. Reg. 79, 20450,
   HAACP; Procedures for the Safe and Sanitary Processing
   and Importing of Juice (Apr. 24, 1998) (21 C.F.R. Part 120) ...................................... 7

65 Fed. Reg. 128, 41029,
   Use of the Term "Fresh" for Foods Processed With Alternative Nonthermal Technologies
   (July 3, 2000) (21 C.F.R. § 101.95) ......................................................................... 4

66 Fed. Reg. 13, 6138,
   HAACP; Procedures for the Safe and Sanitary Processing
   and Importing of Juice (Jan. 19, 2001) (21 C.F.R. Part 120) ....................................... 6

**Statutes**

N.Y. Gen. Bus. Law § 349 ........................................................................................ 2, 19

N.Y. Gen. Bus. Law § 350 ........................................................................................ 2, 18, 19

Public Law 107-171 (2002) ........................................................................................ 7

## INTRODUCTION

Plaintiff Gerard Campbell ("Plaintiff") respectfully submits this memorandum of law in opposition to the motion of Defendant Freshbev LLC ("Defendant Freshbev") and Whole Foods Market Group, Inc. ("Defendant Whole Foods") (collectively, "Defendants"), to dismiss the Third Amended Complaint ("TAC") pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). See Defendants' Motion to Dismiss ("Mot."), Aff. in Support of Di Domenico ("Di Domenico Aff. in Supp.) and Mem. in Supp. ("Mem."). "The purpose of a Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *Global Network Communs., Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006).

"To survive a motion to dismiss, a complaint must contain factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. 544 at 570.

Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. *See Waldman v. New Chapter, Inc.*, 714 F.Supp.2d 398, 401 (E.D.N.Y. 2010).

1

The TAC asserts that the Products' representations violate Sections 349 and 350, respectively, of the New York General Business Law ("GBL"), prohibiting "[d]eceptive acts or practices" and "[f]alse advertising." TAC, ¶¶ 78-89.

The misleading representations include identifying the Products as cold-pressed juice (Ripe) and fresh juice (Whole Foods), representing the Products as unpasteurized and that a subset of the Products are predominantly cranberry juice. TAC, ¶ 23.

## I.   COLD-PRESSED AND FRESH ARE MISLEADING BECAUSE THEY GIVE THE IMPRESSION THE PRODUCTS UNDERGO A SINGLE PRODUCTION STEP

The TAC alleged that Defendants add the misleading descriptive or modifying terms – "Cold-Pressed" (defendant Freshbev) and "Fresh" (defendant Whole Foods) to identify the Products on the principal display panels. TAC, ¶ 31.

Since representing a product as merely "juice" does not convey significant information to consumers, companies further identify their products by indicating the type of juice (i.e., apple, orange, multiple-juice blend, etc.) and the manner in which it was prepared. *See* 21 C.F.R. § 102.33; Compliance Policy Guide ("CPG") Sec. 562.450, Identity of Foods - Use of Terms Such as Fresh, Frozen, Dried, Canned, Etc. ("To avoid misrepresentation and provide information needed to assure proper storage, food labels should include in the name or statement of identity appropriate descriptive terms such as pasteurized, canned, frozen, or dried.").

This common-sense CPG reflects what everyone takes for granted: a food is named and described as it exists at the end of the production process, not in the middle, since food products exist along a continuum where each production step modifies what came before it. For instance, the crushing of grapes results in grape juice, which when left unattended, will ferment and become

2

a rudimentary wine.  Once the now fermented juice, or wine, is exposed to air, it will transition to vinegar. Yet vinegar, wine and grapes are three distinct foods and their names reflect that.

To obtain juice, aqueous liquid must be expressed or extracted from fruits and vegetables. 21 C.F.R. § 120.1(a) (defining "juice").  "Cold-press[ing]" is one such method, based upon the "expression" of the juice.

The use of "cold-pressed" by defendant Freshbev in this way is misleading because (1) it does not describe the Products in their final consumable form as opposed to their condition at an intermediate stage of production and (2) by centering on the first production step – "cold-pressed" – reasonable consumers get the impression that the Products do not undergo a second manufacturing step, known as high pressure processing.  *TAC*, ¶¶ 31-32 (Cold-pressed "is not an appropriate descriptive and modifying term for this juice since cold-pressing is only an intermediate production step."); *Langan v. Johnson & Johnson Consumer Companies*, 95 F.Supp.3d 284, 289 (D. Conn. 2015) (concluding that "it seems perfectly reasonable to me that a typical consumer might interpret the phrase '100% naturally-sourced sunscreen ingredients' on a sunscreen product label to mean that the whole product was natural.  After all, the entire product — everything in the container — is applied by a consumer as a sunscreen.").

Defendant Whole Foods' use of "Fresh" is misleading because reasonable consumers associate this term with a food which has not been processed or treated after being *expressed* from fruits and vegetables.  21 C.F.R. § 101.95(a) (describing fresh as when "food is in its raw state and has not been frozen or subjected to any form of thermal processing or any other form of preservation, except as provided in paragraph (c) of this section[1].").

---

[1] Defendants omit the last clause from this regulation, beginning from "except."  Mem. at 14.

This means that if the preservation method is not indicated at 21 C.F.R. § 101.95(c) (approved waxes or coatings, pesticides, chlorine washing or ionizing radiation), it would be misleading to represent the product as fresh.

The definition of "fresh" has "particular applicability where there are processed and unprocessed forms of the food available" because "use of the term 'fresh' would imply that the food is the unprocessed form." 58 Fed. Reg. 3, 2401 at 2402-403, Terms that Describe Other Aspects of Food: "Fresh" and Related Terms (Jan. 3, 1993) (21 C.F.R. § 101.95) (juice which exists immediately following expression (extraction) of aqueous liquid from fruits and vegetables is properly designated as "fresh").

The TAC stated that when plaintiff and reasonable consumers see juice products designated "fresh" and "cold-pressed," "they will pay a price premium for such products, believing they have not been treated after being cold pressed" because they do not expect it to have been subjected to any treatment or processing *after* it is extracted via cold-press.

Though the FDA considered an exemption so products treated with high pressure processing could still be designated as "fresh," it ultimately decided against changing the regulations. 65 Fed. Reg. 128, 41029 at 41030, Use of the Term "Fresh" for Foods Processed With Alternative Nonthermal Technologies; Public Meeting (July 3, 2000) (21 C.F.R. § 101.95) (soliciting opinions regarding consumer perception of foods which are *processed*); *see* identical 2017 and 1999 versions of 21 C.F.R. § 101.95.[2]

## II.   DEFENDANTS' CLAIM THE PRODUCTS ARE UNPASTEURIZED CONTRIBUTES TO FALSE IMPRESSION THEY ARE NOT TREATED AFTER EXTRACTION

---

[2] https://www.gpo.gov/fdsys/pkg/CFR-2017-title21-vol2/pdf/CFR-2017-title21-vol2-sec101-95.pdf and https://www.gpo.gov/fdsys/pkg/CFR-1999-title21-vol2/pdf/CFR-1999-title21-vol2-sec101-95.pdf (accessed September 23, 2017).

4

A.  Pasteurization Lacks a Universal Definition

Defendants have boldly invoked a "federal regulatory definition of 'pasteurization'" and professes "it is clear that the Products are not pasteurized; therefore, they can be described as 'unpasteurized.'"

Defendants argue that the TAC description of high pressure processing "as 'pasteurization' is out of whole cloth and in conflict with the U.S. Food and Drug Administration's ('FDA') guidelines and regulations, which clearly define pasteurization as a thermal process." Mem. at 3, 11 (claiming Plaintiff "cites no facts, science, federal guideline or regulation, or even a contemporary dictionary definition to support his invented definition of 'pasteurization.'").

Defendants overlook that guidelines and regulations, cannot, as a fundamental tenet of administrative law, establish definitions.  Nevertheless, Defendants offer a potpourri of options, which would be afforded relevance *if* the foods at issue in the TAC were dairy (21 C.F.R. § 131.3(b)), cheese (21 C.F.R. § 133.3(d)), or the numerous definitions for standardized juice products at 21 C.F.R. Part 146, Subpart B ("Canned Fruit Juices"), including Pasteurized Orange Juice (21 C.F.R. § 146.140) and Lemon Juice (21 C.F.R. § 146.114).

Defendants next turn towards the relevant section, 21 C.F.R. Part 120 (Hazard Analysis and Critical Control Point (HAACP) Systems) but again miss the mark by failing to go beyond non-binding guidance documents.  Defendants declare:

> FDA regulations and guidance clearly state that pasteurization and HPP are ***different* means of treatment to control the presence of microorganisms in juice beverages:** pasteurization is a heat/thermal treatment; HPP is a pressure treatment.

5

Mem. at 10 (emphasis in original).

The source for this definitive statement is cited as "FDA [Juice HACCP] Guidance," described by Defendants in footnote fourteen as "defining pasteurization as 'heat treatment sufficient to destroy vegetative cells of pathogens.'" Mem. at 10. Though this phrase comes from the "Terms and Definitions" section of the FDA Guidance, the header text clarifies:

> This section lists definitions of several terms as they appear in FDA's juice HACCP regulation. Following many of the definitions below, you will find *Additional helpful information* about the defined term. Although not formally defined in the juice HACCP regulation, this section also describes the terms "fallen fruit," "hazard analysis," "HACCP," "HACCP plan," "HACCP team," "juice concentrate," "pasteurization," "process authority," and "retail establishment."

(emphasis in original).[3]

Contrary to Defendants' claims and consistent with the "Terms and Definitions" above, the FDA stated clearly it "has not defined what pasteurization means in terms of juice and juice products because of the unique characteristics of the many various types of juice and juice products." 66 Fed. Reg. 13, 6138 at 6145, HAACP; Procedures for the Safe and Sanitary Processing and Importing of Juice (Jan. 19, 2001) (21 C.F.R. Part 120).

At the time of establishing HACCP, the FDA decided against adopting pasteurization guidelines for other products, like milk and noted, "While there may be some fundamental principles, such as basic sanitation procedures, that apply to both the production of milk and juice, the products are vulnerable to different hazards." 66 Fed. Reg. 13, 6138 at 6141.

---

[3] *See* Defendants' true and correct copy of the FDA Juice HACCP Guidance, annexed as Exhibit "D" to the Di Domenico Declaration. Plaintiff joins in defendants' request for judicial notice of this document.

Because the FDA's purpose was to "the safe and sanitary processing" of juice, it established "safety performance criteria instead of mandating the use of a specific intervention technology," or labels such as "pasteurized" and "unpasteurized." 63 Fed. Reg. 79, 20450 at 20453, 20455, 20477, HAACP; Procedures for the Safe and Sanitary Processing and Importing of Juice (Apr. 24, 1998) (21 C.F.R. Part 120).

The Agency recognized that despite not requiring a designation of pasteurized or unpasteurized, manufacturers could voluntarily use such a term "provided that these terms are used in a truthful and nonmisleading manner." 63 Fed. Reg. 79, 20486 at 20488-89, Food Labeling: Warning and Notice Statements; Labeling of Juice Products (Apr. 24, 1998) (21 C.F.R. § 101.17(g); 63 Fed. Reg. 79, 37030 at 37034, Food Labeling: Warning and Notice Statements; Labeling of Juice Products (July 8, 1998) (21 C.F.R. § 101.17(g) ("manufacturers who choose to make a statement, on the product label or in labeling, that describes a juice product as 'pasteurized' or 'unpasteurized' may do so as long as the statement is factually accurate and is not presented in a manner that would cause the statement to be misleading.").

Several years after the FDA adopted a 5-log reduction standard for pathogens in juice, Following the regulations which adopted a 5-log reduction standard for pathogens in juice, the 107th Congress expanded the definition of pasteurization in the Farm Security and Rural Investment Act of 2002 ("2002 Farm Bill"). Public Law 107-171 (2002), H.R. 2646, Sec. 10808.

The Conference Report and the Join Explanatory Statement of the Committee of Conference indicates these changes were made "to facilitate the use of effective food safety technologies":

> the term "pasteurization or "pasteurized" may be uniformly
> used to advise consumers that a treatment or process, including
> a series of treatments or controls, may be used if it achieves the

7

same food safety effect as currently recognized pasteurization methods. The intent of this provision is to make explicit that the term "pasteurization" is available to describe a food safety effect, regardless of the technology or process employed to achieve that result.

H.R. Rep. No. 107-424 at 403, 680-81, Conference Report and Joint Explanatory Statement of the Committee of Conference to Accompany H.R. 2646 (2002) ("technologies other than thermal treatment may achieve a food safety effect equivalent to pasteurization."); *see* TAC ¶ 37 ("Today, the term pasteurization or pasteurized is used to advise consumers that a treatment or process may be described or referred to as pasteurization, if that treatment or process obtains the same food safety effect as currently understood traditional thermal treatment.").

Acting on the instruction of Congress, the FDA began to implement the 2002 Farm Bill by instructing the National Advisory Committee on Microbiological Criteria for Foods (NACMCF) to define parameters for equivalent pasteurization processes.[4]  NACMCF, Requisite Scientific Parameters for Establishing the Equivalence of Alternative Methods of Pasteurization ("NACMCF Report"), (Aug. 27, 2004).

The NACMCF, like Congress and the FDA before it, understood that "in addition to traditional thermal pasteurization, other technologies can satisfy the definition of pasteurization" because, contrary to the crux of defendants' argument, "the term pasteurization has no universally recognized definition that applies to all foods."  NACMF Report at 1192; TAC, ¶ 36 ("The representations of the Products as unpasteurized is false or misleading because no relevant regulation defines pasteurization for this type of juice product.").

---

[4] https://www.fsis.usda.gov/wps/wcm/connect/71289a75-d356-4ee6-be6e-f69aded2f153/NACMCF_JFP_Manuscript_05-702.pdf?MOD=AJPERES

8

Plaintiff alleged that because "Reasonable consumers, including plaintiff, are not aware defendants' products can be pasteurized without heat," so "that when they see labels stating 'cold-pressed,' 'never heated' and 'fresh,' they will pay a price premium for such products, believing they have not been treated after being cold pressed." TAC, ¶ 42.

This is because the cold-pressed and fresh claims describe a juice product which has not been treated following its extraction. A typical consumer is unlikely to be aware of treatment methods which did not involve the application of heat, such as high pressure processing. As a result, he will be misled by the claims that the Products are unpasteurized, especially in light of defendants other representations with respect to cold-pressed and fresh.

Though plaintiff and reasonable consumers "intended to purchase products which had not been subjected to a process which is the equivalent of pasteurization," the misleading statements caused them to buy Products that were subjected to a sterilization process tantamount to pasteurization. TAC, ¶ 43.

B. Fraud-Based Pasteurization Claims are Viable

The TAC satisfies Rule 9(b) because it is defendant Whole Foods who states its Fresh Juice Products are unpasteurized, despite knowing that this statement was untrue. The TAC alleged this knowledge because of the presence of on-premises juice production in defendant Whole Foods' stores. After these products are made, defendant Whole Foods affixes "a sticker with a warning label to the product, indicating it had not been pasteurized. These juices have a shelf-life of several days." ¶ 95.

9

An example of this practice is contained in the images below, which represents a juice product purchase by the undersigned law firm on September 1, 2017 at a store of defendant Whole Foods within this district.




The right-side label panel states:

> Warning - This Product Has Not Been Pasteurized And, Therefore, May Contain Harmful Bacteria That Can Cause Serious Illness In Children, The Elderly And Persons With Weakened Immune Systems.

10

This warning label is required by 21 C.F.R. § 101.17(g)(2)(ii) where a juice product has not been "processed in a manner that will produce, at a minimum, a reduction in the pertinent microorganism" on the order of a "5-log (i.e., 100,000-fold) reduction."   21 C.F.R. § 101.17(g)(7)(i).

It is incongruent for both the Products in this action and the above-referenced product to be labeled as "Unpasteurized" yet only the latter contains a warning label.  The reason why the Products in this action do not bear such a designation is because they are processed in a way that achieves the requisite 5-log reduction.

Surely, if both products are unpasteurized, they would both be required to have such a label.  But they are *not* both "unpasteurized" which is why Defendant Whole Foods' claims are fraudulent and misleading.

## III.   CONSUMERS PURCHASED CRANBERRY APPLE RIPE PRODUCTS SEEKING JUICE WHICH WAS MOSTLY CRANBERRY

Four of the ten Products of Defendant Freshbev "represent that cranberry juice is the predominant juice in the products through its being named prior to 'Apple.'"  *TAC*, ¶ 26 ("the 'Cranberry Apple Ripe Products'").[5]

Defendant Freshbev heavily promotes the presence of cranberries in all of the Ripe Products, as indicated by their labels which proclaim "(i) Crafted with Ocean Spray Cranberries, (ii) 'America's Native Super Fruit,' (iii) 'From Bog to Bottle' and (iv) 'Cleansing and Purifying Power of the Cranberry'" and designates them by names which "contribute[s] to an erroneous impression that cranberry juice is present in an amount greater than is actually the case."

---

[5] Ripe Juice 12 Cranberry Apple, Ripe Juice 12 Whole Cranberry Apple, Ripe Juice 12.2 Whole Milled Cranberry Apple and Ripe Juice 12.2 Northeast Blend Cranberry Apple

TAC, ¶¶ 26-27

However, "the ingredient statements all indicate that apple juice is the predominant juice." TAC, ¶¶ 64, 81, 88; *see* 58 Fed. Reg. 3, 2918 at 2920, Identity of Multiple-Juice Beverages (Jan. 3, 1993) (21 C.F.R. § 102.33).  It was this kind of consumer deception that the FDA sought to prevent when it established 21 C.F.R. § 102.33(b), applicable here:

> If the product is a diluted multiple-juice beverage or blend of single-strength juices and names, other than in the ingredient statement, more than one juice, then the names of those juices, except in the ingredient statement, must be in descending order of predominance by volume unless the name specifically shows that the juice with the represented flavor is used as a flavor (e.g., raspberry-flavored apple and pear juice drink).

## IV. DISCLAIMERS CANNOT CURE DEFENDANTS' MISLEADING STATEMENTS

Defendants first claim that because Plaintiff purchased products pertaining to other actions in August 2016 and *these* Products in October 2016, the two months in between purchases makes it implausible that Plaintiff "was unaware of the 'truth'" with respect to the their Products, and "purchased them unknowingly." Mem. at 2. Defendants even admit Plaintiff did not purchase the Products relevant to this action *after* filing suit in another action, rendering this argument meritless.

When plaintiff learned the "truth" about the products in this action relative to the other actions is a fact-intensive inquiry, "ill-suited for resolution at the motion to dismiss stage." *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 851 F.Supp.2d 746, 763 (S.D.N.Y. 2012).

According to defendants, plaintiff's "failure to heed or accept the ingredient panel" is fatal to this claim.  Mem. at citing *Workman v. Plum Inc.*, 141 F.Supp.3d 1032, 1035 (N.D. Cal. 2015) ("reasonable consumers expect that the ingredient list contains *more detailed information about the product that confirms other representations* on the packaging" quoting *Williams v. Gerber*

*Products Co.*, 552 F.3d 934, 939 (9th Cir. 2008) (emphasis added) and *McKinniss v. Sunny Delight Beverages Co.*, No. 07-cv-02034, 2007 WL 4766525, at *4 (C.D. Cal. Sept. 4, 2007) ("no reasonable consumer" would be misled as to the "quantities of fruit or fruit juice, particularly when the label identifies the product as fruit 'flavored' and indicates the exact fruit content of each product.").

*Workman* dealt with involved oversized vignettes of desirable ingredients, which consumers have come to expect from product labels, in part due to this activity being permitted by the FDA. *McKinniss*, 2007 WL 4766525, at *4 ("In fact, the depiction of fruit on a product label is not a specific affirmation that a product[s] contains *any fruit at all*. FDA regulations permit illustrations of fruit on product labels to indicate that product's 'characterizing flavor,' even where the product contains no ingredients derived from the depicted fruit. See 21 C.F.R. § 101.22(i)(1)(i-iii)." (emphasis in original).

In contrast, reasonable consumers do not expect that the name of a product be exaggerated or not accurately represent its contents.  Moreover, unlike *Workman*, the ingredient list on the Cranberry Apple Products does not "confirm[s] other representations on the packaging," but rather, refutes it. *TAC*, ¶¶ 13-14.

Though Defendants had no duty to disclose anything related to the production method, once it represented the products as "cold-pressed," it was required not to "give only half of the truth." *Koch v. Greenberg*, 14 F.Supp.3d 247, 258 (S.D.N.Y. 2014) ("Under New York law, silence or omission with respect to a material fact can serve as the equivalent of an affirmative misrepresentation where…the party has made a partial or ambiguous statement, on the theory that once a party has undertaken to mention a relevant fact to the other party it cannot give only half of the truth" citing *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

13

To the extent Defendants provided "clarifying language" with respect to the cold-pressed representations – "High Pressure," "cold-pressed perfection, kissed with <u>the immense power of pressure</u>" and "Made Safe With the Power of Pressure," they contribute to, and reinforce the initial deception since consumers are already aware that the products are produced through "significant pressure." TAC, ¶ 63; Mem. at 12, 15 ("disclaimer or 'similar clarifying language' may defeat claim of deception" <u>quoting</u> *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013)).

Defendants claim it is implausible for a reasonable consumer to have been misled as to the representations the products are fresh and *only* cold-pressed, since the labels do not indicate the juice is "unprocessed or unpreserved." Mem. at 15. However, because reasonable consumers interpret a product's name as referring to it in a final consumable form, the representation *as* "cold-pressed" is equivalent to claiming the Products are neither processed or preserved.

Though Defendants assert a reasonable consumer would not "confuse the name 'Fresh Juice' with a juice that is 'unprocessed' or 'unpreserved,' particularly given that the terms 'cold-pressed' and 'high pressure' also appear on the product label," this overlooks again that cold-pressed implies the application of high, or significant pressure and is the extraction step. Mem. at 15.

Defendants' authorities consider labels where a representation is mutually exclusive. *See* Mem. at 12-13 *Nelson v. MillerCoors, LLC*, No. 15-cv-7082, 2017 WL 1403343, *3 (E.D.N.Y. Mar. 31, 2017) ("no reasonable consumer" would be deceived as to where Foster's was brewed based on the "explicit disclaimer as to the place of production" on every bottle); *Bowring v. Sapporo U.S.A., Inc.,* No. 16-cv-1858, 2017 WL 902151, at *6 (E.D.N.Y. Feb. 10, 2017) ("Sapporo labels do not include the word 'Japan' and contain "clear language where the product is

14

produced."); *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 253 (3d Cir. 2011) ("reasonable consumer who is told in no uncertain terms that 'Havana Club' is a brand of rum made in Puerto Rico."); *Serrano v. Cablevision Sys. Corp.*, 863 F.Supp.2d 157, 164-65 (E.D.N.Y. 2012) (plaintiff acknowledged and agreed to defendants' representations through "click-wrap" agreement).

Whether the products were made in a specific foreign country or if a plaintiff was aware of certain representations is a question subject to a clear answer. Taking Foster's as an example, the product does not claim "malted in Australia, fermented in Chicago," malting and fermenting be two of the steps involved in transformation of malted barley into beer.

Plaintiff does not argue the Products are *not* cold-pressed or lack cranberry juice. Rather, the TAC contends these are not the central and characterizing aspects of the Products as Defendants represent. *Kacocha v. Nestle Purina Petcare Co.*, No. 15-cv-5489, 2016 WL 4367991, at *38-39 (S.D.N.Y. Aug. 12, 2016) (To accept plaintiff's argument "would be to conclude not that no reasonable consumer would believe there was bacon in the product (there was), but, with far more nuance, that no reasonable consumer would believe there to be quite so much.").

Defendants' reliance on cases where the challenged statements, though truthful, were peripheral to transaction is at odds with the centrality of plaintiff's "cold-pressed" and fresh claims. Mem. at 13 relying on *Gomez-Jimenez v. New York Law School*, 103 A.D.3d 13, 956 N.Y.S.2d 54 (App. Div. 1st Dep't 2012) (affirming dismissal of claims against law school where plaintiffs' reliance was based upon website employment data); *Manchouck v. Mondelez Int'l Inc.*, No. 13-cv 02148, 2013 WL 5400285, *3 (N.D. Cal. Sept. 26, 2013), *aff'd*, 603 F. App'x 632 (9th Cir. 2015) (holding that "Made with Real Fruit" label on Newton cookies was factually true because cookies contained raspberry and strawberry puree); *Red v. Kraft Foods, Inc.*, No. 10-cv-1028, 2012 WL

15

5504011, at *3 (C.D. Cal. Oct. 25, 2012) (granting dismissal because "a reasonable consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables"); *Atik*, 2016 WL 5678474, *4 ("Plaintiffs allege that the Products do not contain *enough* fruit as compared to the amount of fruit a reasonable consumer could expect it to contain based on the Products' labeling.") (emphasis in original) (citation omitted); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F.Supp.3d 467, 474-475, 477 (S.D.N.Y. 2014) (rejecting dismissal based on misleading product names where "Plaintiff does not dispute that at least one ingredient in each Aveeno product is arguably natural, the case turns on whether the fact that most of the ingredients are synthetic means using the term 'natural' is deceptive.").

As to defendants' assertions that plaintiff suffered no "actual harm," defendants miscast the TAC's allegations to arrive at the baseless conclusion that "Plaintiff admits that he understood apple juice was the predominant juice because the label told him so." Mem. at 16, fn 29 citing TAC, ¶ 27, "The labels for these products are false, deceptive and misleading since the ingredient statements all indicate that apple juice is the predominant juice," which is a statement supported by facts and does not even contain the word "plaintiff."

Nowhere does the TAC allege that Plaintiff, at the time of purchase, knew of FDA regulations requiring that ingredients in food packages bear a list of ingredients and be in descending order of predominance, by weight.  21 C.F.R. § 101.4; *see* TAC ¶¶ 26, 64 (plaintiff relied on the "representation that Ripe Craft Juice 12.2 Northeast Blend Cranberry Apple was predominantly cranberry juice" based on "its being named prior to 'Apple'" in the product name, "Northeast Blend **Cranberry** Apple." (emphasis added)).

Likely, only a handful of consumers knows what the labeling requirements mean and

16

It is implausible to suggest a reasonable consumer knows what the labeling requirements are with respect to the amount of ingredients in a product, especially where those products disproportionally tout ingredients of lesser predominance. *Kacocha v. Nestle Purina Petcare Co.*, No. 15-cv-5489, 2016 WL 4367991, at *38-39 (S.D.N.Y. Aug. 12, 2016) (declining to find it implausible for plaintiff to believe products named "Beggin' Strips," were "'predominantly made out of real pork bacon,' when, in fact, 'bacon and bacon fat a[re] the tenth and twelfth ingredients,' out of nearly two-dozen ingredients," as a result of being "marketed under a heavily branded bacon-oriented theme." (citations omitted)); *Albert v. Blue Diamond Growers*, No. 15-cv-4087, 2015 WL 9450579, at *5 (S.D.N.Y. Oct. 21, 2015) (finding plaintiff adequately stated claims against almond-milk company for alleging more than the two-percent almonds actually contained).

It is not implausible that if a reasonable consumer even read the ingredient list, they would interpret it as saying both juices are merely present, and assume "apple" is named before "cranberry" due to alphabetical order or believe the products contain an <u>equal</u> amount of each juice.

Defendants misrepresentations are all the more significant because, unlike "unrefined sugars" or the mythical "Ravioli trees and Tortellini bushes," juice which is only cold-pressed, fresh and predominantly cranberry juice is a readily available products, which plaintiff and reasonable consumers thought they were purchasing here. *Ibarrola v. KIND, LLC*, 83 F.Supp.3d 751, 759 (N.D. Ill. 2015) (finding implausible plaintiff's claim to expect a product to contain unprocessed sugar since "sugar cane in its natural, unprocessed state is indigestible"); *Pelayo v. Nestle USA, Inc.*, 989 F.Supp.2d 973, 978 (C.D. Cal.2013) (similarly implausible to expect pasta varieties to "spring from the earth" obviously manufactured products not "all natural").

This is "not a case where there is no ambiguity" that the products were processed *after* being cold-pressed, making it more plausible for a consumer to have been misled. *Serrano*, 863 F.Supp.2d at 164-65; *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-cv-4427, 2014 WL 4773991, at *18 (E.D.N.Y. Sept. 24, 2014) (finding a reasonable consumer could be misled where the disclaimers were contradictory).

Defendants challenge to Plaintiff's reliance on the misrepresentations and the harm attributed to them is undermined by the relevant precedents and the express allegations of the TAC. Mem. at 17. ("Plaintiff also fails to show plausibly that he relied upon the at-issue statements on the labels or that they caused him actual harm.").

Defendants' authorities are inapposite for a variety of reasons. Mem. at 17 citing *Gale v. IBM Corp.*, 9 A.D.3d 446, 447, 781 N.Y.S.2d 45 (App. Div. 2d Dep't 2004) ("Although the plaintiff cites particular misleading statements by IBM…he nowhere states in his complaint that he saw any of these statements before he purchased or came into possession of his hard drive."); *Gershon v. Hertz Corp.*, 215 A.D.2d 203, 626 N.Y.S.2d 80, 81 (1st Dep't 1995) (GBL § 350 cause of action was "legally insufficient absent an allegation that he relied upon or even knew of defendant's advertising."); *Cohen v. Hertz Corp.*, No. 13-cv-1205, 2013 WL 9450421, at *5 (S.D.N.Y. Nov. 26, 2013) (plaintiff "does not present any facts, aside from conclusory allegations, suggesting that he had personal knowledge of the statements" at issue.); *Donahue v. Ferolito, Vultaggio & Sons*, 13 A.D.3d 77, 79, 786 N.Y.S.2d 153 (App. Div. 1st Dep't 2004) (plaintiff "never alleged, however, that the cost of the beverages was inflated by these misrepresentations"); *Oscar v. BMW North Am., LLC*, No. 09-cv-11, 2012 WL 2359964, at *4 (S.D.N.Y. June 19, 2012) (plaintiff's failure to put forward an acceptable methodology to calculate price premium at *certification stage*, such that plaintiff could not demonstrate common harm.)

18

Here, Plaintiff has directly and expressly alleged that he was deceived by the falsehoods and misrepresentations contained on the Products' labels which he has viewed and suffered actual injury from his purchases. *See* TAC at ¶ 17 (providing labels of purchased products plaintiff "acted in reliance upon"); ¶ 42 (When "Reasonable consumers, including plaintiff…see labels stating 'cold-pressed,' 'never heated' and 'fresh,' they will pay a price premium for such products, believing they have not been treated after being cold pressed."), ¶¶ 63-64 (plaintiff saw and relied upon their representations of "cold-pressed juice," "fresh" and "unpasteurized") and ¶¶ 81-82 ("plaintiff and class members paid more for the Products than they would have paid" in reliance on "representations that its Cranberry Apple products were predominantly made with cranberry juice.").

These allegations are consistent with the standards related to claims based on GBL sections 349 and 350. *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-4697, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016) ("An actual injury claim under [s]ection 349 typically requires a plaintiff to 'allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase.'"); *Ebin v. Kangadis Food Inc.*, No. 13-cv-2311, 2013 WL 6504547, at *4-5 (S.D.N.Y. Dec. 11, 2013) (deeming the plaintiff's allegations sufficient to state a claim under GBL 349 where "[t]he deception is the false and misleading label, and the injury is the purchase price").

## V.   PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF

Defendants argue "there is no threat of future injury to Plaintiff" because he stopped buying the Products and lacks standing to seek an injunction. Mem. 23.  Although "[i]t is true that a plaintiff seeking prospective relief must show that he or she is 'likely to suffer future injury' from

19

the defendant's conduct," "courts have consistently held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer." *Ackerman v. Coca-Cola Co.*, No. 09-cv-395, 2013 WL 7044866, at *15 n.23 (E.D.N.Y. July 18, 2013). As that court explained, "[t]o hold otherwise would 'effectively bar any consumer who avoids the offending product from seeking injunctive relief.'" *Ackerman*, 2013 WL 7044866, at *15 n.23.

Plaintiff seeks to be relieved from Defendants' continuing misleading and deceptive practices in the future, which is no more truthful today than when plaintiff first discovered the alleged deception. 2013 WL 7044866, at *15 n.23; *see also, e.g., Koehler v. Litehouse, Inc.*, No. 12-cv-04055, 2012 WL 6217635, at *6–7 (N.D. Cal. Dec. 13, 2012) (plaintiff had standing for injunctive relief claim even though he did not intend to purchase the product as advertised).

For all of the foregoing reasons, Plaintiff has standing to pursue injunctive relief.

## CONCLUSION

Though "a party may amend its pleading only with the opposing party's written consent or the court's leave" after the expiration of time for amendment as a matter of course, the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). "[T]he 'permissive standard' of Rule 15 'is consistent with [the Second Circuit's] strong preference for resolving disputes on the merits.'" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015).

Plaintiff has not yet had an opportunity to amend his pleading in response to a Court order evaluating the sufficiency of his allegations. As the Second Circuit has observed, "[w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to

weigh the practicality and possible means of curing specific deficiencies." *Loreley*, 797 F.3d at 190.

 For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss in its entirety or in the alternative, grant leave to amend or dismiss without prejudice.

Dated: September 28, 2017

<div style="margin-left:40%">

Respectfully submitted,

Levin-Epstein & Associates, P.C.

By: <u>/s/ Joshua Levin-Epstein</u>
  Joshua Levin-Epstein
  1 Penn Plaza, Suite 2527
  New York, NY 10119
  Tel: (212) 792-0046
  Fax: (212) 563-7108
  joshua@levinepstein.com
  Sheehan & Associates, P.C.

By: <u>/s/ Spencer Sheehan</u>
  Spencer Sheehan
  891 Northern Blvd., Suite 201
  Great Neck, NY 11021
  Tel: (516) 303-0552
  Fax: (516) 234-7800
  spencer@spencersheehan.com

Counsel for Plaintiff

</div>

1:16-cv-07119 (FB)(ST)
United States District Court
Eastern District of New York

Gerard Campbell, individually on behalf of himself and all others similarly situated,

        Plaintiff,

  - against -

Freshbev LLC and Whole Foods Market Group, Inc.,

        Defendants.

# Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Third Amended Complaint

**Levin-Epstein & Associates, P.C.**
**1 Penn Plaza**
**Suite 2527**
**New York, NY 10119**
**Tel: (212) 792-0046**
**Fax: (212) 563-7108**
**joshua@levinepstein.com**

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  September 28, 2017
      New York, NY

                       /s/ Joshua Levin-Epstein
                       Joshua Levin-Epstein