UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------x
GERARD CAMPBELL, individually on
behalf of himself and all others similarly
situated,

                Plaintiff,        **MEMORANDUM AND ORDER**
                                1:16-cv-7119(FB)(ST)

    -against-

FRESHBEV LLC, and WHOLE FOODS
MARKET GROUP, INC.,

                Defendants.
--------------------------------------------------x

*Appearances:*
*For the Plaintiff*                *For the Defendants*
JOSHUA LEVIN-EPSTEIN     DAVID E. SELLINGER
Levin-Epstein & Associates, P.C.   Greenberg Traurig
1 Penn Plaza, Suite 2527       200 Park Avenue
New York, NY 10119           New York, New York 10166

SPENCER SHEEHAN         TIMOTHY E. DI DOMENICO
Sheehan & Associates, P.C.      Greenberg Traurig
891 Northern Blvd., Suite 201    445 Hamilton Avenue, 9th Floor
Great Neck, NY 11021        White Plains, NY 10601

**BLOCK, Senior District Judge:**

     Plaintiff Gerard Campbell brings this class action based on diversity jurisdiction

under the Class Action Fairness Act[1] pursuant to New York General Business Law

("GBL") §§ 349 and 350 and common law fraud, alleging defendants Freshbev LLC

---

[1] Plaintiff is a citizen of New York, and defendant Whole Foods is a
Delaware corporation. Plaintiff alleges thousands of potential class members. The
amount in controversy is over $5 million. *See* 28 U.S.C. § 1332(d)(1)-(5).

("Freshbev") and Whole Foods Market Group, Inc. ("Whole Foods") sell several juice products with misleading labels. Defendants move to dismiss Campbell's Third Amended Complaint ("TAC") under Federal Rules of Civil Procedure 12(b)(1), (2) and (6), alleging lack of subject matter and personal jurisdiction and failure to state a claim upon which relief can be granted. Defendants' motion is granted in part and denied in part.

## I

Plaintiff allegedly bought several juices manufactured and sold by Freshbev at a store operated by Whole Foods,[2] including bottles of Ripe Craft Juice 12.2 Northeast Blend Cranberry Apple ("Cranberry Apple juice"), Ripe Craft Juice 12 Cranberry Unsweetened ("Cranberry juice") and Fresh Juice Pineapple ("Pineapple juice") for $4.99, $3.50 and $7.99, respectively.[3] Plaintiff claims these prices represented a

---

[2] Plaintiff brings this complaint against Whole Foods under a "private label" theory, alleging that at least one of the juice brands, the Fresh Juice line, was created exclusively for Whole Foods. Though it could have been better pleaded, the essence of this argument is that Whole Foods exercises control over its private label products sufficient to support a cause of action. *See Cohn v. Kind, LLC*, 2015 WL 9703527, at *3 (S.D.N.Y. Jan. 14, 2015) (false and misleading advertising claim required "control" or "authority" over advertising). This is sufficient, at least for pleading purposes, to allege liability against Whole Foods; whether and to what extent Whole Foods actually exercised control over the disputed labels can be explored in discovery.

[3] Plaintiff also sporadically complains about other Freshbev juices; however, these are the only three juice products he claims he purchased. *See* TAC at 62.

2

premium based on several purported misrepresentations: (1) that the juices were unpasteurized; (2) that the juices were cold-pressed; (3) that the juices were fresh; and (4) that the Cranberry Apple juice had more cranberry juice than apple juice.

The labels are as follows:[4]




_____

[4] At oral argument, there was considerable confusion on the part of the defendants as to which labels were implicated by plaintiff's complaint. In particular, defendants' counsel appeared unaware that plaintiff alleged claims related to the Ripe Juice 12 Cranberry Unsweetened product (i.e. the "Cranberry juice"). Plaintiff's allegations regarding this product were made in ¶¶ 4, 12, 13, 17, 26, 29, 31, and 62 of the TAC.









## II

### A.    Out-of-State Class Members

Defendants argue that this Court lacks personal jurisdiction over plaintiff's proposed out-of-state class members following the holding in *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 137 S. Ct. 1773, 1781-82 (2017). In *Bristol-Myer*s, the Supreme Court held that under the Fourteenth Amendment, *state courts* lacked personal jurisdiction for claims by out-of-state plaintiffs against an out-of-state defendant that had no connection to the forum state. 137 S. Ct. at 1781-82. However, the Court explicitly left open whether the same logic would extend to *federal courts* under the Fifth Amendment. *Id.* at 1783-84. Furthermore, as Justice Sotomayor's dissent points out, the Court also left open whether its holding applied to nationwide class actions. *Id.* at 1789 n.4 (dissenting).

Some district courts have declined to extend the logic of *Bristol-Myers*. *See Sloan v. General Motors LLC*, 287 F. Supp. 3d 840, 858-59 (N.D. Cal. 2018) (holding *Bristol-Myers* does not preclude federal jurisdiction over out-of-state claims); *Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prods., Inc.*, 2018 WL 1377608, at *5 (E.D. La. Mar. 18, 2018) (holding *Bristol-Myers* does not preclude personal jurisdiction over nationwide class actions); *Molock v. Whole Foods Market, Inc.*, 297 F. Supp. 3d 114, 124-27 (D.C. Cir. 2018) (holding *Bristol-Myers* precluded federal jurisdiction over out-of-state mass tort claims but *not* nationwide class actions).

5

In any event, plaintiff has not yet brought a motion to certify a nationwide class. Until he does so, the issue is not squarely before the Court. Given the unsettled nature of the law following *Bristol-Myers*, the Court will defer on this question until the plaintiff brings a motion for class certification, if he chooses to do so.[5]

## B.  Standing for Injunctive Relief

Defendants argue plaintiff lacks standing for injunctive relief because he now knows the truth about the juice and therefore cannot be fooled again. For plaintiff to have Article III standing, he "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016). Plaintiffs have standing to pursue injunctive or declaratory relief only where they are able "to establish a 'real or immediate threat' of injury." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983)). Past injuries are insufficient "unless the plaintiff

---

[5] The Court similarly defers on defendants' other challenges to plaintiff's purported class until the issue of class certification is squarely presented. The viability of plaintiff's proposed out-of-state class members does not necessarily affect subject matter jurisdiction because the minimal diversity between the named plaintiff and out-of-state defendants will not be affected. *See* 28 U.S.C. § 1332(d)(2); *cf. Gold v. N.Y. Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013) (explaining home state exception to CAFA requires both more than 2/3 of plaintiffs *and* primary defendants to be citizens of the forum state). However, if the Court ultimately dismisses the out-of-state class, plaintiffs will have to demonstrate that the $5 million damages threshold could be met with just in-state plaintiffs. *See* 28 U.S.C. § 1332(d)(3)-(4).

can demonstrate that she is likely to be harmed again in the future in a similar way." *Id.* While the alleged harm must be "certainly impending," *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990), "it is not the materialization of the feared risk itself that must be 'certainly impending,'" *Baur v. Veneman*, 352 F.3d 625, 641 (2d Cir. 2003) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564, n.2 (1992)). Rather, "only the exposure must be imminent . . . ." *Id.*

"The Second Circuit has not directly addressed whether plaintiffs alleging claims of false or misleading advertising have standing to seek injunctive relief where the action the plaintiffs seek to enjoin is still ongoing." *Sitt v. Nature's Bounty, Inc.*, 2016 WL 5372794, at *6 (E.D.N.Y. Sept. 26, 2016). Some district courts have reasoned that plaintiffs lack standing for injunctive relief in these cases because they have "necessarily become aware of the alleged misrepresentations, [and] 'there is no danger that they will again be deceived by them.'" *Davis v. Hain Celestial Group, Inc.*, 297 F. Supp. 3d 327, 338 (E.D.N.Y. 2018) (Ross, J.) (quoting *Elkind v. Revlon Consumer Prods. Corp.*, 2015 WL 2344134, at *3 (E.D.N.Y. May 14, 2015)). Others have found plaintiffs have standing in such cases because "[t]o hold otherwise would 'effectively bar any consumer who avoids the offending product from seeking injunctive relief.'" *Ackerman v. Coca-Cola Co.*, 2013 WL 7044866, at *15 n.23 (E.D.N.Y. July 18, 2013) (quoting *Koehler v. Litehouse, Inc.*, 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2012)).

7

However, the Ninth Circuit recently held plaintiffs do have standing so long as they plead a future desire to buy the product. In *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018), the Ninth Circuit held that a consumer who purchased a wrongfully labeled product had standing for injunctive relief because that consumer faced an ongoing injury: the inability to rely on the truth of the inaccurate label. 889 F.3d at 969-70. This injury is actual and imminent, not conjectural or hypothetical, because as long as the mislabeled product is sold, the consumer is "unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Id.* at 970.

The Court finds *Davidson* persuasive. The parties provide no Second Circuit cases on point,[6] and the Court's research reveals only one, *Kommer v. Bayer Consumer Health, a division of Bayer AG*, 710 F. App'x 43 (2d Cir. 2018), a nonprecedential summary order. Notwithstanding that it was not of precedential value, in *Kommer*, the court found the plaintiff had no standing for injunctive relief because he claimed he would never purchase defendant's product again. 710 Fed. App'x at 44. Therefore, the plaintiff did not allege the future injury deemed sufficient in *Davidson*.

However, plaintiff has not pleaded such an injury. He alleges only that he has purchased the product in the past and, even in his TAC, does not plead that he intends or

---

[6] *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016) is inapposite. There, the defendant stopped selling the disputed product, so there was no risk of future injury. 834 F.3d at 239.

desires to purchase FreshBev's juices in the future.[7] Therefore, plaintiff has not pleaded future injury, and his injunctive relief claims are dismissed.

## C.    Defendants' 12(b)(6) Motions

## 1.    GBL 349 and 350

Plaintiff challenges four claims on the labels of defendants' juices: that the juices are (1) unpasteurized; (2) cold-pressed; (3) fresh; and, (4) for the Cranberry Apple juice, that the name "Cranberry Apple" implies that there is more cranberry juice than apple in the blend. Defendants argue that federal law preempts plaintiff's claims and that the statements on the labels are accurate.

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive, the complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In the case of deceptive advertising claims under GBL §§ 349 and 350, a plaintiff must show that "defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly

---

[7] At oral argument, plaintiff's counsel acknowledged he has not alleged future injury.

deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015).[8]
Here, plaintiff challenges consumer-directed advertising and alleges that he suffered
injury: He bought the products relying on the false advertising, and they did not live up
to expectations.

Defendants challenge the second element, arguing that their label claims are not
"materially misleading." This element is "objective," meaning "the alleged act must be
'likely to mislead a reasonable consumer acting reasonably under the circumstances.'"
*Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (quoting *Oswego
Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (N.Y.
1995)). Courts should make this determination on a motion to dismiss. *See S.Q.K.F.C.,
Inc. v. Bell Atlantic TriCon Leasing Corp.*, 84 F.3d 629, 637 (2d Cir. 1996) (holding
district court should have dismissed § 349 claim at 12(b)(6) stage on grounds that "a
reasonable consumer would not have been misled by [defendant's] conduct.").

a.     **"Unpasteurized"**

Plaintiff first alleges that the claim "unpasteurized" on defendants' labels is
misleading because the juices are treated with high pressure processing ("HPP"), which
plaintiff characterizes as equivalent to pasteurization. Defendants counter that Food and
Drug Administration ("FDA") regulations treat pasteurization and HPP as two separate

---

[8] For § 350 claims, plaintiffs must also plead reliance. *See Ackerman v.
Coca-Cola. Co.*, 2010 WL 2925955, at *22 (E.D.N.Y. July 21, 2010). Plaintiff did
so here. TAC ¶¶ 63-64.

treatments, and the FDA allows the "unpasteurized" label on juice treated with HPP, thereby preempting plaintiff's claims.

Under the Supremacy Clause, state laws are invalid if they "interfere with, or are contrary to the laws of Congress . . . ." *Gibbons v. Ogden*, 22 U.S. 1 (1824). Federal regulations also have preemptive effect. *Grocery Mfrs. of Am., Inc. v. Gerace*, 755 F.2d 993, 1001-02 (2d Cir.1985).

The Federal Food, Drug, and Cosmetic Act ("FDCA") grants the FDA power to regulate food and expressly bans mislabeled food in interstate commerce. *Koenig*, 995 F. Supp. 2d at 278. The Nutrition Labeling and Education Act ("NLEA") creates the regulatory framework in which the FDA regulates food labels. *Id.* The NLEA expressly preempts state laws that create a labeling requirement "not identical to" federal requirements. 21 U.S.C. § 343-1(a).

On March 3, 2004, the FDA passed nonbinding guidance for the juice industry on treating juice safely called the "Juice Hazard Analysis Critical Control Point ("HACCP") Hazard and Controls Guidance" (the "Guidance").[9] This Guidance interprets the FDA's January 19, 2001 Final Rule governing juice safety. *See* HACCP; Procedures for the Safe and Sanitary Processing and Importing of Juice, 66 Fed. Reg. 6138-01, 2001 WL 42228 (Jan. 19, 2001) ("Final Rule"). The Final Rule and Guidance

---

[9] Available at https://www.fda.gov/food/guidanceregulation/guidancedocumentsregulatoryinformation/juice/ucm072557.

created a process called HACCP for juice manufacturers to follow in order to ensure the safety of juice products on the market (in particular, to control pathogens). HACCP is a flexible framework that "require[s] the application of HACCP principles by processors and importers to ensure juice safety to the maximum extent practicable."[10] 66 Fed. Reg. at 6138.

Pasteurization is the primary method for preventing pathogen contamination of juice. The Guidance defines pasteurization as "a heat treatment sufficient to destroy vegetative cells of pathogens." Guidance, § II. Alternatively, high pressure processing, or "HPP," destroys pathogens via pressure. Guidance, § V.C.5.33. The Guidance describes HPP as a "Non-Thermal Treatment[] for Juice." Guidance, § V.C.4.5. In a chart describing "Possible control measures" for pathogens, the Guidance separately lists pasteurization and HPP. *Id.*

The FDA also issued a 1998 Proposed Rule that tentatively concluded that "[m]anufacturers who wish to label their products voluntarily with the term 'pasteurized' or with the term 'unpasteurized,' along with the warning statement, may do so under the proposed rule, provided that these terms are used in a truthful and nonmisleading manner." Food Labeling: Warning and Notice Statements; Labeling of

---

[10] FDA regulations often refer to effective pathogen control as achieving a 5-log reduction in pathogens.

Juice Products, 63 FR 20486-01, 20488 (Apr. 24, 1998).[11] It provides that:

> The agency . . . tentatively concludes that labeling a product as
> "unpasteurized" *may be misleading* in that the term does not distinguish
> between a product that may contain harmful pathogens that could result in
> serious disease and one that is treated using a method (*other than
> pasteurization*) that is capable of achieving a 5-log reduction in the target
> pathogen. A product that is processed by a means other than pasteurization to
> achieve a 5-log reduction in the target pathogen does not have the potential
> microbiological hazard, and thus, would not require a warning statement, yet
> that product could not be labeled "pasteurized." *Without additional
> information*, the consumer would not know how to interpret the label with the
> term "unpasteurized."

*Id.* (emphasis added).

In short, the FDA ruled that an unpasteurized label can be used in a "truthful and
nonmisleading fashion," *id.*, but also ruled that placing the unpasteurized label on a
product that was treated with an alternative to pasteurization could be misleading
"without additional information," *id.* This leaves open a question of fact as to whether
any specific "unpasteurized" label is misleading under the federal regulations and,
therefore, whether a state law claim for deceptive advertising is preempted.

Here, the labels of the Cranberry Apple and Pineapple juices purchased by
plaintiff explain that the juices were treated with pressure. This provides the consumer
with the requisite additional information. Therefore, the "unpasteurized" labels on the
juice products are not false or misleading, and plaintiff's claims regarding this term are

---

[11] The proposed rule was later adopted in a final rule issued on July 9, 1998.
Food Labeling: Warning and Notice Statement: Labeling of Juice Products, 63 FR
37030-01 (July 8, 1998).

preempted.

However, the Cranberry juice label, at least as presented in the TAC, does not explain that it is treated with pressure.[12] TAC ¶ 17. Thus, it does not provide the necessary "additional information," and a reasonable consumer may be misled by the label. Therefore, plaintiff has successfully pleaded his GBL §§ 349 and 350 claims with respect to the "unpasteurized" label on the Cranberry juice.

**b.    "Cold-Pressed"**

Plaintiff next alleges that the "cold-pressed" label on the three juice products is misleading because the juices are treated with HPP after being cold-pressed. Cold-pressing, as defined by plaintiff:

> entails the shredding of fruits and vegetables into a pulp, using a steel rotating disc. The fruits and vegetables are loaded into a large hopper feeding tube and falls [sic] into a filter bag. Multiple tons of hydraulic pressure are applied to the shredded produce. This causes juice and water from the produce to drip into a collection tray, while fiber and pulp remains in the filter bag. This liquid is bottled and labeled depending on the specific product type.

TAC ¶ 19.

---

[12] After oral argument, defendants submitted a graphic by letter that they claim represents the full label. This graphic includes a disclaimer regarding pressure. However, for the purpose of 12(b)(6), the Court can only consider the four corners of the complaint. *See Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (holding "a district court errs when it 'consider[s] affidavits and exhibits submitted by' defendants, or relies on factual allegations contained in legal briefs or memoranda in ruling on a Rule 12(b)(6) motion to dismiss.") (quoting *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991)). Defendants are free to introduce the full label on a motion for summary judgment.

14

Plaintiff argues a reasonable consumer would interpret a "cold-pressed" label to imply that nothing had been done to the juice except cold-pressing. Plaintiff's claim is implausible. There is no "only" or "exclusively" modifier before "cold-pressed" to indicate that the juice has been subjected to no other process.[13] A reasonable consumer would not mistake the cold-pressed claim to be a claim that pressure was never applied to the juice products.[14] Therefore, the claims regarding this statement are dismissed.

c.     **"Fresh"**

Plaintiff next challenges defendants' representation that the product is "fresh." The parties agree that 21 C.F.R. § 101.95 governs use of the word "fresh" on a label but disagree as to its implications.[15]

_____

[13] Plaintiff's convoluted analogy to grapes, vinegar, and wine does not aid him. Grapes, wine, and vinegar are three entirely different products. Cold-pressed juice and juice that is both cold-pressed and treated with HPP are the same product: juice.

[14] Furthermore, the Cranberry Apple and Pineapple labels also explain that the juice product was treated with pressure, which would instantly dispel any possible consumer confusion.

[15] At oral argument, defendants argued for the first time that the Court cannot consider FDA regulations because they do not create a private right of action. However, defendants' own briefs rely heavily on the FDA regulations, including 21 C.F.R. § 101.95(a), which defendants argued vigorously applies here and allows the above label. It is odd that defendants would rely so heavily on these regulations in their submitted papers, then argue at the hearing that the Court is foreclosed from considering them. Regardless, "New York law forbids the misbranding of food 'in language largely identical to that found in the FDCA.'" *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 280 (S.D.N.Y. 2014). "[S]tate laws that seek to impose labeling requirements identical to those required by federal regulations will not be preempted." *Id.* at 280. Therefore, the Court must consider those

21 C.F.R. § 101.95(a) states that "[t]he term 'fresh' [in labeling] in a manner that suggests or implies that the food is unprocessed, means that the food is in its raw state and has not been frozen or subjected to any form of thermal processing *or any other form of preservation* . . . ."[16]

HPP is a form of preservation. Therefore, at face value, 21 C.F.R. § 101.95(a) bars companies from advertising juice products treated with HPP as "fresh."

Defendants argue that the regulation provides an exception if "the term [fresh] does not suggest or imply that a food is unprocessed or unpreserved." 21 C.F.R. § 101.95. The regulation gives the example of a "fresh" label properly applied to pasteurized whole milk, which consumers understand to "nearly always" be pasteurized (and, therefore, "fresh" in that context does not imply the milk is unprocessed). *Id.* Conversely, "fresh" cannot be used to describe pasteurized pasta sauce because pasta sauce is not always pasteurized, so consumers would assume that "fresh" sauce is unprocessed. *Id.*

In this context, juice treated with HPP cannot be described as fresh because juice is sold both with and without processing, so the term "fresh" would imply that the juice is unprocessed. *See* Final Rule, 63 Fed. Reg. 37030-01, 37030 (allowing untreated juice

---

regulations, at the very least, to ensure that plaintiff's claims are not preempted. And if FDA regulations provide that a claim on a product's label is misleading, that is evidence that a reasonable consumer might be misled by the packaging.

[16] 21 C.F.R. § 101.95(c) provides a series of exceptions to this rule, but none apply here.

to be sold). Therefore, defendants' proposed exception does not apply.

Defendants also argue that the labels' inclusion of discussions of "pressure" would resolve any consumer confusion about the "fresh" claim. However, because the term "fresh" is misleading in isolation, it is not clear as a matter of law that confusion generated by the misuse of the term would be resolved by additional statements elsewhere on the label. *See Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 479-80 (S.D.N.Y. 2014) ("Although 'the presence of a disclaimer or other clarifying language *may* defeat a claim of deception,' the Court cannot hold as a matter of law that the product labels are not misleading to a reasonable consumer." (citation omitted)). And at the very least, the Cranberry label, which does not appear to contain the clarification regarding pressure, would not escape liability under this theory.[17]

Whether a reasonable consumer would be misled by the term "fresh" combined with additional language regarding the application of pressure is a question for the factfinder. Therefore, plaintiff has successfully stated a claim with regard to this term.

### d.    "Cranberry Apple"

Finally, plaintiff challenges the name "Cranberry Apple" as applied to

---

[17] This is different than the additional information provided in the pasteurization context because the FDA rule regarding pasteurization specifically states that "additional information" would dispel consumer confusion. 1998 Proposed Rule at 20488.

FreshBev's Cranberry Apple juice. According to plaintiff, this name implies that the product has more cranberry juice than apple, but the ingredient statement reveals that it actually contains more apple juice than cranberry. Defendants argue that the name of the product is not intended to be an expression of the proportionality of the juices, and regardless, any confusion could be resolved by reading the ingredients list.

The FDA has again provided guidance. 21 C.F.R. § 102.33(b) states:

> If the product is a diluted multiple-juice beverage or blend of single-strength juices and names, other than in the ingredient statement, more than one juice, then the names of those juices, except in the ingredient statement, *must be in descending order of predominance by volume* unless the name specifically shows that the juice with the represented flavor is used as a flavor (e.g., raspberry-flavored apple and pear juice drink).

21 C.F.R. § 102.33(b) (emphasis added).

Defendants' label violates this regulation because it does not list the predominant apple juice before cranberry. Nor does it contain the saving caveat "flavored." Because it violates FDA labeling requirements, a reasonable consumer may be misled into believing that Cranberry Apple juice has more cranberry juice than apple.[18]

---

[18] The ingredient list on the back is not sufficient to overcome this misleading statement on the front label. "[T]he FDA [does not] require[] an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misrepresentations and provide a shield for liability for the deception." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008).

**2.      Plaintiff's Fraud Claim**

Plaintiff also pleads a claim for common law fraud regarding defendants' unpasteurized claim only. Defendants argue plaintiff lacks standing, or alternatively, fails to state this claim against Whole Foods. However, both of defendants' arguments are essentially the same—they argue that plaintiff has not alleged that Whole Foods itself made a misleading statement, and therefore, there is no injury traceable to Whole Foods, nor can plaintiff satisfy the elements of the common law fraud test.

The Court must address the standing question first. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998). Defendants argue that plaintiff has not alleged any misleading conduct by Whole Foods, so plaintiff's injury cannot be traced back to Whole Foods' conduct. However, plaintiff alleges that Whole Foods failed to put an "unpasteurized" warning label on the disputed juice products, while putting the same label on their own unpasteurized juices.[19] This allegation is sufficient to confer standing. But the plaintiff nonetheless has failed to allege a cause of action for fraud.[20]

---

[19] Whole Foods sells a separate line of unpasteurized juices not at issue in this lawsuit. These juices are labeled with a sticker informing customers of the health hazards of drinking unpasteurized juices.

[20] "It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction . . . ." *Steel Co.*, 523 U.S. at 89. "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id.* (quoting *Oneida Indian Nation of N.Y. v. Cty. of Oneida*, 414 U.S. 661, 666 (1974)).

"To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402 (2d Cir. 2015). Fraud claims under New York law are "subject to the particularity pleading requirements of Federal Rule of Civil Procedure 9(b)." *Id.* at 402-03. Plaintiff is required to "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004).

Boiled down, plaintiff's argument is essentially that Whole Foods is fraudulently misrepresenting the juice as unpasteurized by failing to put an unpasteurized warning label on the juice. This is illogical. If anything, Whole Foods's decision not to place an unpastuerized sticker on the product shows it is not making such a representation.

And while plaintiffs can plead intent to defraud generally, "this leeway is not a 'license to base claims of fraud on speculation and conclusory allegations.'" *Id.* at 187 (quoting *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995)). Whole Foods has at least one obvious reason for not placing the unpasteurized sticker on the FreshBev juice: The juices do not need the warning label *because of* the HPP treatment,

which is an effective treatment for pathogens.

Therefore, plaintiff has not effectively pleaded that Whole Foods had an intent to defraud consumers, and his common law fraud claim is dismissed.[21]

### III

Plaintiff's claim for injunctive relief is dismissed. Plaintiff's claims with respect to the "cold-pressed" labels and the "unpasteurized" labels on the Cranberry Apple and Pineapple juices are dismissed. Plaintiff's common law fraud claim is dismissed. Plaintiff may pursue his GBL §§ 349 and 350 claims with respect to the "fresh" and "Cranberry Apple" labels and the "unpasteurized" label on the Cranberry juice.

**SO ORDERED**

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
July 2, 2018

---

[21] In the TAC, plaintiff also alleges FreshBev acted fraudulently based on statements made in a patent application, but plaintiff abandoned this argument in his opposition. Regardless, these statements, without more, fall far short of the Rule 9(b) requirement to plead fraud with particularity.

21